**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DARAIUS DUBASH, and DR. FARAZ HARSINI** | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION** **CASE NO. 4:23-cv-03556** |
| **v.** | § § | |
| **CITY OF HOUSTON, TEXAS; HOUSTON DOWNTOWN PARK CORPORATION; OFFICER ROBERT DOUGLAS (# 7943), in his Individual capacity; OFFICER VERN WHITWORTH (# 7595), in his individual capacity; DISCOVERY GREEN CONSERVANCY f/k/a HOUSTON DOWNTOWN PARK CONSERVANCY; and BARRY MANDEL, in his individual capacity,** | § § § § § § § § § § § | |
| **Defendants.** | § | |

**DEFENDANTS CITY OF HOUSTON, TEXAS, DISCOVERY GREEN CONSERVANCY,
OFFICER ROBERT DOUGLAS, OFFICER VERN WHITWORTH, BARRY MANDEL,
AND THE HOUSTON DOWNTOWN PARK COPRPORATION'S MEMORANDUM OF
LAW IN RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY
INJUNCTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ........................................1

SUMMARY OF THE ARGUMENT ...........................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.............................2

THE FACTS ....................................................................................2

ARGUMENT
POINT ONE
PLAINTIFFS HAVE FAILED TO SHOW ENTITLEMENT TO INJUNCTIVE
RELIEF AGAINST THE CONSERVANCY...................................................5

1.      PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS ...........................6

A.      Plaintiffs Fail To Submit The Videos That Are the Subject of Their Motion ...................6

B.      Discovery Green Should Be Construed As A Limited Public Forum ................................7

C.      Even If Discovery Green Is Construed As a Traditional Public Forum, Plaintiffs
        Were Engaged in Non-Expressive Conduct Entitled to No Constitutional Protection......10

D.      At Best, Plaintiffs' Actions Were Expressive Conduct Entitled To Lesser
        Scrutiny Than Speech, Even In a Traditional Public Forum ............................................13

E.      Even If Playing The Videos Inherently Amounted to Speech, the Conservancy's
        Directives Constituted a Legitimate Time, Place, and Manner Restriction.......................16

F.      Plaintiffs' Claims of Discrimination are Red Herrings....................................................19

G.      Plaintiff Dubash Cannot Prevail on His Texas RFRA or Free Exercise Claims ..............21

2.      PLAINTIFFS ARE NOT BEING IRREPARABLY HARMED, THE EQUITIES
        DO NOT BALANCE IN THEIR FAVOR, AND THE INJUNCTION WOULD
        NOT BE IN THE PUBLIC INTEREST ..........................................................................24

POINT TWO
PLAINTIFFS HAVE ASSERTED NO CLAIM FOR INJUNCTIVE RELIEF AGAINST
THE CITY DEFENDANTS, HDPC, OR BARRY MANDEL ....................................................24

i

CONCLUSION....................................................................................................................25

291203086v.1

## TABLE OF AUTHORITIES

CASES

Federal Cases

*Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) ...................................................................21, 22

*Anderson v. Jackson*, 556 F.3d 351 (5th Cir. 2009) ........................................................................6

*Bail Project, Inc. v. Comm'r, Ind. Dept. of Ins.*, 76 F.4th 569 (7th Cir. 2023)......................10, 12

*Benson, M.D. v. St. Joseph Regional Health Center*, 2007 U.S. Dist. LEXIS 99254
     (S.D.Tex. Aug. 22, 2007)................................................................................................12

*Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456 (5th Cir. 2021) .................................................5

*Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011) ..............................................................20

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (1993)......................................23

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S.Ct. 1464 (2022)............................15

*Cocke v. Lourdes Physician Group, LLC*, 2019 U.S. Dist. LEXIS 79640
     (W.D. La. May 9, 2019)..................................................................................................12

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788 (1985).....................................7, 17

*Darnaa, LLC v. Google, Inc.*, 2016 U.S. Dist. LEXIS 152126 (N.D. Cal. Nov. 2, 2016) ...........12

*Elrod v. Burns*, 427 U.S. 347 (1976) ............................................................................................24

*Employment Div. v. Smith*, 494 U.S. 872 (1990) .........................................................................23

*Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464
     (5th Cir. 1985)..................................................................................................................6

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ..............................................................20

*Frank v. Relin*, 1 F.3d 1317 (2d Cir. 1993)...................................................................................25

*Galena v. Leone*, 638 F.3d 186 (3d Cir. 2011) ............................................................................18

*Harrison v. Young*, 48 F.4th 331 (5th Cir. 2022)...........................................................................5

iii

*Heaney v. Roberts*, 846 F.3d 795 (5th Cir. 2017) ............................................................7

*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640 (1981) ......................15

*Hershey v. Multi-Purpose Civil Ctr. Facility Bd. For Pulaski County*,
    2020 U.S. Dist. LEXIS 146533 (E.D.Ark. Aug. 14, 2020) ................................9

*Hill v. Cruz*, 2006 U.S. Dist. LEXIS 69094 (S.D.Tex. Sep. 26, 2006) ..........................22

*Hotel Employees & Rest. Employees Union, Local 100 v. City of N.Y. Dep't of
Parks & Rec.*, 311 F.3d 534 (2d Cir. 2002) .........................................................7, 8, 9

*Iancu v. Brunetti*, 139 S.Ct. 2294 (2019) .......................................................................19

*Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672 (1992) ...............................7

*Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407 (2022) .............................................23

*Kovacs v. Cooper*, 336 U.S. 77 (1949) ...........................................................................18

*Lichtenstein v. Hargett*, 83 F.4th 575 (6th Cir. 2023) ...................................................13

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. 2006) .................................18

*Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011) ....................................15, 16

*Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632 (5th Cir. 2023) ................13

*Olmer v. City of Lincoln*, 192 F.3d 1176 (8th Cir. 1999) ..............................................14

*PCI Transp., Inc. v. Fort Worth & W.R. Co.*, 418 F.3d 535 (5th Cir. 2005) ...................5

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983) ................7, 17

*Phelps-Roper v. City of Manchester*, 697 F.3d 679 (8th Cir. 2012) .............................14

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ..............................................................14

*Rowan v. U.S. Post Office*, 397 U.S. 728 (1970) ...........................................................18

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) .....10

*San Jose Christian Coll v. City of Morgan Hill*, 360 F.3d 1024 (9th Cir. 2004) ..........22

*Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990) .............................................................25

*SEIU, Local 5 v. City of Houston*, 595 F.3d 588 (5th Cir. 2010)...................................................7

*Texas v. Johnson*, 491 U.S. 397 (1989) ..............................................................10, 11

*Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994).......................................................13

*U.S. ex rel. Miniex v. Houston Hous. Auth.*, ___ Fed.Appx. ___, 2023 U.S. App. LEXIS
25226 (5th Cir. Sep. 22, 2023) (unpub. order)................................................25

*U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114 (1981)..........................16

*U.S. v. Grace*, 461 U.S. 171 (1983) ...................................................................9

*U.S. v. O'Brien*, 391 U.S. 367 (1968) ..........................................................10, 13

*Vais Arms, Inc. v. Vais*, 383 F.3d 287 (5th Cir. 2004)................................................6

*Vincenty v. Bloomberg*, 476 F.3d 74 (2d Cir. 2007) ................................................18

*Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) .......................................10

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .............................................17, 18

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)...................................1, 5

State Cases

*Bar v. City of Sinton*, 295 S.W.3d 287 (Tex. 2009)....................................................21

*Sanchez v. Saghian*, 2009 Tex.App. LEXIS 7944 (1st Ct. Apps.—Houston, Oct. 8, 2009,
no pet.) ......................................................................................21

STATUTE

Tex. Civ. Prac. and Remedies Code § 110.003........................................................21

291203086v.1

## PRELIMINARY STATEMENT

Defendants Discovery Green Conservancy f/k/a Houston Downtown Park Conservancy (hereinafter "the Conservancy"), and Barry Mandel, in his individual capacity (collectively, "the Conservancy Defendants"), the City of Houston, Texas, Officer Robert Douglas (# 7943), and Officer Vern Whitworth (# 7595) (collectively, "the City Defendants"), and the Houston Downtown Park Corporation (hereinafter "HDPC"), submit this Memorandum of Law in response to Plaintiffs' motion for a preliminary injunction.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

Plaintiffs seek a preliminary injunction compelling the Conservancy to allow them to display videos depicting violence against animals at Discovery Green. A movant must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

## SUMMARY OF THE ARGUMENT

Plaintiffs apparently believe they are entitled to an unfettered right to show whatever videos they choose in any venue. Their argument fails basic constitutional standards. Plaintiffs are not entitled to injunctive relief for multiple reasons. First, they fail to attach the video at issue to their motion papers, making it impossible for the Court to grant them relief. Second, Discovery Green is a limited public forum based upon the express purpose for its formation and existence. Third, even if Discovery Green is deemed a traditional public forum, Plaintiffs' activities at issue constituted non-expressive conduct that is not entitled to First Amendment protection. Fourth, even if Plaintiffs' activities constituted expressive conduct, the Conservancy imposed reasonable time, place, and manner restrictions that satisfied intermediate scrutiny. Fifth, Plaintiffs fail to show

1

discriminatory intend. Sixth, Plaintiff Dubash's Texas RFRA claim is devoid of merit. Sixth, Plaintiffs' claims against the City, HDPC, and the individual defendants are procedurally meritless.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an action pursuant to 42 U.S.C. § 1983 alleging First Amendment violations, and pursuant to the Texas Religious Freedom Restoration Act. The Complaint has been filed and served. None of the Defendants have yet responded to the Complaint.

## THE FACTS

Discovery Green is a unique space within downtown Houston. It is not a typical public park. To the contrary, it is a specially designed urban green space that carries out the vision of the those who created it for the purpose of providing educational, cultural, and entertainment activities and events for its users. Discovery Green was conceptualized in 2004 as a downtown green space that would be different from just a public park, and would provide a variety of amenities intended to enrich the outdoor experience of the public (Mandel Dec. p. 2, ¶ 5). Discovery Green is operated by the Conservancy, a non-profit organization,[1] on land owned by the HDPC (Mandel Dec. p. 1, ¶ 4). HDPC owns the property that comprises Discovery Green, and through an Operating Agreement, engaged the Conservancy as an "independent contractor to operate and manage the Park…" (*See* Exh. C, Operating Agreement, p. 1, ¶ B).  HDPC does not have any control over the day-to-day operations of Discovery Green, which is operated and managed by the Conservancy[2].

Discovery Green's mission is to serve as "a village green for our city, a source of health and happiness for our citizens, and a window into the incredible diversity of arts and traditions that

---

[1] The Conservancy assumes, for purposes of this motion, that it was acting under color of state law for purposes of 42 U.S.C. § 1983.

[2] HDPC was not involved when Plaintiffs protested at Discovery Green and did not receive notice of any issues associated with those unknown protests until receipt of this lawsuit.

enrich life in Houston" (Lott Dec. p. 2, ¶ 3). In fulfilling that mission, Discovery Green offers a robust variety of amenities and activities, and hosts a continuous stream of programming and events. It includes a large performance stage, frequent public art installations, two restaurants, a large playground, water spray feature, a lake that previously offered water activities, a wintertime ice skating rink, staging areas for performances, and a lawn used for relaxing and playing sports (Lott Dec. p. 2, ¶ 4). Discovery Green hosts concerts, fundraisers, yoga classes, and movie nights, and has a place that can be reserved for children's birthday parties. (*Id.*). It likewise includes a "Speakers' Corner," a designated place for individuals to demonstrate and engage in speech (*Id.*).

Discovery Green has promulgated a set of rules and regulations governing its use ("the Rules"). These include provisions that prohibit the disruption of the use of Discovery Green by others, using any area of Discovery Green for purposes other than those for which it was designed, behavior that "reasonably can be expected to disturb others." (*Id.* at p. 3, ¶ 6). Consistent with the Rules, Discovery Green has a tradition of promoting freedom of expression, and provides individuals of all beliefs to use Discovery Green to speak their message in a manner and at times that would not be disruptive to the core function of Discovery Green. (*Id.* at p. 4, ¶ 8).

The facts leading to this litigation arose through interactions that Plaintiffs had with, among others, Conservancy employees Brian Wilmer and Floyd Willis. Mr. Wilmer, the Park Manager, states that he has witnessed Plaintiffs engaged in their demonstrations, showing disturbing videos of violence against animals. He would find them in the center of one of two prominent pedestrian intersections, each of which was close to the playground and had significant foot traffic. The demonstrations would also frequently block foot traffic when Plaintiffs drew crowds. Mr. Wilmer also fielded complaints from patrons every time Plaintiffs would be in Discovery Green, including many who would complain that their children were scared by the videos (Wilmer Dec. pp. 2-4, ¶¶

3

8-12). Mr. Wilmer would advise Plaintiffs that they need to either stop showing the videos or must relocate to the sidewalk on the perimeter of Discovery Green, which would be a distance of fewer than 250 feet (*Id.* p. 4, ¶ 13). Mr. Wilmer would explain that they were free to continue speaking their message if they so chose, and he never told them that there was an objection to their message of viewpoint (*Id.*). When Mr. Wilmer advised Plaintiffs that parents were afraid that the videos would give children nightmares, one of the demonstrators replied, in sum and substance, "we want to give children nightmares." (*Id.*). Unfortunately, it was impossible to avoid Plaintiffs' demonstrations, since they always chose to set up in the center of one of the two most prominent pedestrian intersections in Discovery Green. (*Id.* at pp. 4-5, ¶ 14). Mr. Wilmer states that he has never seen other demonstrators use violent videos against animals, but that if he did, they would have been asked to stop showing the videos or move to the perimeter sidewalk (*Id.*).

Mr. Willis is consistent with Mr. Wilmer. Mr. Willis states that he approached Plaintiffs on multiple occasions during their demonstrations and asked them to stop showing their videos. He likewise advised that they were free to continue advocating for their viewpoint without censorship. (Willis Dec. p. 2, ¶¶ 8-9). In fact, Mr. Willis encouraged Plaintiffs to seek a special permit that would afford them a greater audience to whom to spread their message, and invited them to participate in Discovery Green's Earth Day activities (*Id*. p. 2, ¶ 9).

Barry Mandel, Discovery Green's President at the time, met with Plaintiffs to provide avenues for Plaintiffs to engage in their speech at Discovery Green without the use of their videos. Plaintiffs, however, refused, stating that they needed to show their videos (Mandel Dec. pp. 3-4, ¶ 13).

291203086v.1

**ARGUMENT**

**POINT ONE**

**PLAINTIFFS HAVE FAILED TO SHOW ENTITLEMENT
TO INJUNCTIVE RELIEF AGAINST THE
CONSERVANCY.**

Plaintiffs believe they are presently under a prior restraint of their First Amendment freedoms solely because they have been advised that they may not play graphic videos depicting cruelty and violence toward animals in Discovery Green. Their premise relies upon a fundamental misapprehension of the difference between the content of speech and the nature of conduct. Their argument likewise ignores the fact that even fully protected speech is subject to reasonable time, place, and manner restrictions. Regardless of what characteristics Plaintiffs might attribute to certain conduct, their own subjectively felt significance of that conduct does not transform it into protected speech. Because Discovery Green has a legitimate interest in preventing its patrons, including children, from being involuntarily exposed to graphic violent videos, and because Plaintiffs' speech is not being censored or curtailed, Plaintiffs are not entitled to an injunction.

To prevail on a motion for a preliminary injunction, a plaintiff must satisfy a four-pronged analysis: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 463-64 (5th Cir. 2021). "A 'preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has "clearly carried the burden of persuasion."'" *Harrison v. Young*, 48 F.4th 331, 342 (5th Cir. 2022) (quoting *PCI Transp., Inc. v. Fort Worth & W.R. Co.*, 418 F.3d 535, 545 [5th Cir. 2005]). "[I]f the movant does not succeed in carrying its burden on any one of the four prerequisites, a preliminary

5

injunction may not issue and, if issued, will be vacated on appeal." *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

### 1. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.

### A.   Plaintiffs Fail To Submit The Videos That Are the Subject of Their Motion.

Plaintiffs have attached multiple videos to their papers depicting their various interactions that underlie this lawsuit. Despite having availed themselves of the opportunity to rely on video evidence in support of this motion, Plaintiffs fail to attach the one video that is most important to their claim: the video that is the subject of their allegations. They provide a link for a full-length documentary from which they claim they have excerpted portions. (Doc. No. 15, Pl. Mem. of Law, p. 6 n.18). However, they fail to identify specifically what portions comprised their video. Plaintiffs have therefore failed, in the first instance, to meet their burden of showing that their conduct was protected. *See Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (injunctive relief "should only be granted when the movant has clearly carried the burden of persuasion").

Plaintiffs' refusal to put the actual video before the Court renders it impossible for the Court to even reach a determination as to whether it constituted protected speech. As will be discussed below, the analysis here turns on far more than simply whether the First Amendment grants Plaintiffs the unfettered ability to publicly display any video in any venue they choose. Therefore, the Court should summarily deny the motion for a preliminary injunction. If, however, Plaintiffs submit a copy of the video in their reply papers, and if the Court accepts it, Defendants respectfully request the opportunity to submit a sur-reply. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004).

**B.**     **Discovery Green Should Be Construed As A Limited Public Forum.**

Plaintiffs do not enjoy the unfettered right to engage in speech of any nature and in any location in Discovery Green because it is not a traditional public forum. Plaintiffs contend that Discovery Green should be viewed as a typical public park, which courts have customarily found to be traditional public fora. However, merely because Discovery Green is an open space does not, *ipso facto*, render it to be a traditional public forum, or curtail the promulgation of rules to ensure that its purpose and mission are preserved. Rather, courts consider whether the location is of the type that "by long tradition or by government fiat have been devoted to assembly and debate." *SEIU, Local 5 v. City of Houston*, 595 F.3d 588, 595 (5th Cir. 2010) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 [1983]). Traditional public fora are places where "a principal purpose . . . is the free exchange of ideas." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985). On the other hand, "[i]n cases where the principal function of the property would be disrupted by expressive activity, the Court is particularly reluctant to hold that the government intended to designate a public forum." *Cornelius*, 473 U.S. at 804.

Courts often look to such factors as the intended purpose for the property and whether there are physical characteristics of the property that "indicate that the separated property is a special enclave, subject to greater restriction." *See Int'l Soc'y for Krishna Consciousness v. Lee*, 505 U.S. 672, 680 (1992). "The government can restrict or regulate speech in a limited public forum 'as long as the regulation "(1) does not discriminate against speech on the basis of viewpoint and (2) is reasonable in light of the purpose served by the forum."'" *Heaney v. Roberts*, 846 F.3d 795, 801-02 (5th Cir. 2017).

The Second Circuit's decision in *Hotel Employees & Rest. Employees Union, Local 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534 (2d Cir. 2002) (hereinafter "*Hotel Employees*"),

involved similar facts, and ultimately found that a public plaza was a limited, not traditional, public forum. In *Hotel Employees*, the plaintiff labor union sued the City of New York after it denied the union a permit to leaflet at an outdoor plaza that was part of the Lincoln Center performing arts complex, and that was owned by the city. The plaintiff argued that the plaza should be viewed as a traditional public forum because it was "either a public park or a public place that is functionally equivalent to a park, sidewalk, or public thoroughfare." *Hotel Employees*, 311 F.3d at 547. The city, on the other hand, maintained that the plaza should be deemed a non-public or limited public forum because its "main purpose is to serve as the 'forecourt' for the performing arts halls at Lincoln Center, and, unlike a park or public thoroughfare, the Plaza has not traditionally served as a forum for debate or assembly." *Id.*

The Second Circuit examined the "forum's physical characteristics and the context of the property's use, including its location and purpose," but "[a]lso relevant is the government's intent in constructing the space and its need for controlling expressive activity on the property, as evidenced by its policies or regulations." *Id.* It was disputed whether the space was considered a "public park" by the city, but "whatever label is used, the City has affirmatively demonstrated an intent *not* to treat the Plaza as it would a typical city park," based on the intended purpose of the space as one "devoted to contemplation and celebration of the arts." *Id.* at 547, 552 (emphasis in original). As a result, the court held that the plaza was not a traditional public forum. *Id.* at 553.

In reaching its holding in *Hotel Employees*, the Second Circuit rejected arguments analogous to those asserted here by Plaintiffs, such as the fact that the plaza was used by members of the public not attending events, using it to traverse between streets, or to read or eat lunch by the fountain. *Id.* at 550. The court rejected the argument that this rendered the plaza no different from a public park, noting that the specific location and purpose reflected that it was not like a

traditional public forum, such as a park, and that the physical location of the plaza suggested to pedestrians that they have "entered some special type of enclave." *Id.* (quoting *U.S. v. Grace*, 461 U.S. 171, 180 [1983]); *see also Hershey v. Multi-Purpose Civic Ctr. Facility Bd. For Pulaski County*, 2020 U.S. Dist. LEXIS 146533, **6-7 (E.D.Ark. Aug. 14, 2020) (finding that public area outside arena was limited public forum based on physical appearance, traditional use, purpose and policy, despite that area had multiple traits of traditional public forum).

*Hotel Employees* disposes of each of Plaintiffs' arguments here as to why this Court should find that Discovery Green is a traditional public forum. Like the plaza there, Discovery Green bears all the hallmarks of a purpose-driven design and lacks the traits of a traditional public forum. As set forth in the Declarations of Kathryn Lott and Barry Mandel, Discovery Green was created as a location that provides artistic, cultural, and entertainment activities and events. It contains a large playground, an ice skating rink, two private restaurants, a small space designated for performing arts, and a large stage used for concerts, theatrical performances, and other organized events. Discovery Green has a code of conduct intended to maintain its purpose, and foster an atmosphere that is not disruptive for those who use it, including children.

Moreover, Discovery Green has a designated "Speaker's Corner," where individuals who wish to demonstrate or protest can do so. Because Discovery Green is not just a park, but, rather, represents an "enclave" specially designed to provide specific cultural and entertainment amenities separate from the rest of the City, it should be viewed as a limited public forum. In this light, the Conservancy was within its rights to prohibit the public playing of graphic videos to patrons of Discovery Green as being inconsistent with the purpose and mission of Discovery Green, particularly because it disrupted use of Discovery Green by other patrons, including children.

9

**C.**     **Even If Discovery Green Is Construed As A Traditional Public Forum, Plaintiffs Were Engaged In Non-Expressive Conduct Entitled To No Constitutional Protection.**

Plaintiffs do not factually assert that they were discriminated against based on viewpoint or the content of their actual speech. Rather, they allege that actions were taken against them based upon constitutionally unprotected non-expressive conduct. Plaintiffs lack a remedy for this claim. The Supreme Court has afforded First Amendment protection "only to conduct that is inherently expressive." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). Thus, the Supreme Court has "rejected the view that 'conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Rumsfeld*, 547 at 65-66 (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 [1968]).

Conduct will receive no First Amendment protection if it "does not convey a message without the aid of additional speech." *Bail Project, Inc., v. Comm'r, Ind. Dept. of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023). That is, "only conduct that is 'inherently expressive' is entitled to First Amendment protection." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (quoting *Rumsfeld*, 547 U.S. at 66). The Fifth Circuit has observed that "[t]o determine whether particular conduct possesses sufficient 'communicative elements' to be embraced by the First Amendment, courts look to whether the conduct shows an 'intent to convey a particular message' and whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (quoting *Texas v. Johnson*, 491 U.S. 397, 404 [1989]). The need for "explanatory speech" to convey the speaker's viewpoint is "strong evidence" that the conduct is not so "inherently expressive" as to be entitled to constitutional protection. *Rumsfeld*, 547 at 66.

Without seeing the videos that Plaintiffs allege they were not permitted to display, it is impossible for the Court to meaningfully ascertain whether Plaintiffs have satisfied any of the components of the analysis. However, the allegations in both the Complaint and Plaintiffs' motion

papers unambiguously reflect that the Plaintiffs' displaying of videos amounted to non-expressive conduct. By Plaintiffs' own allegations, their message is one of opposition to animal cruelty, not one supporting it. The videos, they claim, *depict* purported cruelty and violence against animals. When advocating a message against cruelty to animals, the silent video depiction of violence against animals—before any speech has taken place expressing Plaintiffs' message—hardly establishes "a great likelihood that their intended message will be understood by those who receive it." *Johnson*, 491 U.S. at 404.

Plaintiffs readily admit that the videos contain nothing inherently supportive of their message. Plaintiff Dubash states that the videos "portray images from a documentary film titled *Dominion* that shows behind-the-scenes footage of industrial meat production." (Dubash Dec., p. 7, ¶ 21). The purpose of the videos is for people to "see the cramped conditions where the animals live, the callous ways in which they are handled, and the inability of the animals to protect themselves." (Dubash Dec., p. 7, ¶ 22). Plaintiff Harsini states that his objective is for the videos to foment "uneasiness and discomfort." (Harsini Dec. pp. 8-9, ¶ 27).

The "'Outreach team' members stand aside and wait to be approached by those passing by" who show interest. (Dubash Dec. p. 6, ¶ 19). Only once an individual "show[s] interest or approach[es] the Cube of Truth" does Dubash ask, "'How does this make you feel?' or 'Do you want to know what we're doing here?'" (Dubash Dec. p. 8, ¶ 23). These admissions fatally undermine Plaintiffs' case. The fact that Plaintiffs must ask people whether they want to know "what we're doing here" strikingly cuts against any conceivable theory that the videos, themselves, are expressive. The Supreme Court is clear that conduct which requires further explanation is not subject to *any* First Amendment protection. Here, the underlying conduct is intended solely to draw an audience, and only those who show interest will then hear Plaintiffs actual speech.

Plaintiffs' actions are therefore the very essence of conduct that "does not convey a message without the aid of additional speech." *See Bail Project, Inc.*, 76 F.4th at 575.

Plaintiffs focus a great deal on Conservancy employee Floyd Willis's use of the term, "content," when describing Discovery Green's objection to the videos. This focus, however, is misplaced. Mr. Willis explains that his use of the word, "content," in speaking with Plaintiffs, was intended in the audiovisual context of the word. As Mr. Willis explains, it is common for the contents of videos to be referred to, broadly, as "content." (see Willis Dec. p. 2, ¶ 10). *See also Darnaa, LLC v. Google, Inc.*, 2016 U.S. Dist. LEXIS 152126, *27 (N.D. Cal. Nov. 2, 2016) (Definition of "Content" in YouTube's Terms of Service includes "the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials . . .").

Thus, while First Amendment jurisprudence considers whether government action is content-neutral, a layperson's use of the word "content" in a non-legal context is not controlling. *See*, *e.g.*, *Cocke v. Lourdes Physician Group, LLC*, 2019 U.S. Dist. LEXIS 79640, *12 (W.D. La. May 9, 2019) (recognizing that a party used a legally defined phrase "in a colloquial sense, rather than as a term of art defined by the ADA"). In fact, this very Court has considered it to be improper "word play" when a plaintiff points to a defendant's colloquial use of a term as proof of whether the defendant also intended for the use to apply to the word as a term of art. *See Benson, M.D. v. St. Joseph Regional Health Center*, 2007 U.S. Dist. LEXIS 99254, *11 (S.D.Tex. Aug. 22, 2007) (Defendant's admission that it did not conduct "investigation" was not dispositive because "the word 'investigation' as used in the by-laws is a term of art that does not necessarily have the same meaning as an investigation in the colloquial sense."). Regardless, the use of the word is inconsequential because Plaintiffs were engaged in unprotected non-expressive conduct.

**D.      At Best, Plaintiffs' Actions Were Expressive Conduct Entitled To Lesser Scrutiny Than Speech, Even In a Traditional Public Forum.**

Even if Plaintiffs' display of graphic videos could be construed as expressive conduct, which it decidedly is not, Discovery Green was nevertheless entitled to place narrowly tailored restrictions on the conduct by prohibiting Plaintiffs from showing the videos in the middle of Discovery Green walkways, especially while crowded with people. As the Sixth Circuit has recently observed, "[t]he Supreme Court has never applied exacting free-speech scrutiny to laws that bar conduct based on the harm that the conduct causes apart from the message it conveys. . . . That is true even if the ban on conduct imposes 'incidental burdens on speech. . . . And it is true even if the person engaging in the conduct 'intends thereby to express an idea.'" *Lichtenstein v. Hargett*, 83 F.4th 575, 583 (6th Cir. 2023) (internal citations omitted).

The Supreme Court applies intermediate scrutiny to laws that place non-content-based restrictions on expressive conduct. The Court has made clear that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968). Intermediate scrutiny is "the default level of scrutiny applicable to laws . . . which do not directly regulate the content of speech and which 'pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.'" *Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632, 651 (5th Cir. 2023). Under the intermediate scrutiny rubric, content-neutral action will be sustained if "it furthers an important or substantial governmental interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) (quoting *O'Brien*, 391 U.S. at 377).

13

Requiring Plaintiffs to either cease showing their videos or to move a short distance off the Discovery Green property easily passes muster under intermediate scrutiny. Initially, Discovery Green's directives were content neutral, as were the rules of conduct they were intended to promote. The Rules permit the Conservancy to prohibit conduct that disrupts other patrons' use of Discovery Green. That is precisely what the Conservancy was doing. Second, the Conservancy was acting in support of an important governmental interest in preventing children from being subjected to videos depicting violence against animals in a context where their parents could not avoid the videos and still use the amenities. *See Olmer v. City of Lincoln*, 192 F.3d 1176, 1180 (8th Cir. 1999), *overruled in part on other grounds*, *Phelps-Roper v. City of Manchester*, 697 F.3d 679, 692 (8th Cir. 2012) ("the city's interest in protecting very young children from frightening images is constitutionally important; that is, the interest is 'significant,' 'compelling,' and 'legitimate.'"). Third, Discovery Green was not intending to suppress free expression, and, to the contrary, encouraged Plaintiffs to continue their expression using speech without the silent videos of violence against animals. Fourth, the restriction was narrowly tailored insofar as Plaintiffs could either continue to show their videos on the public sidewalk less than 300 feet away, or could continue their advocacy in Discovery Green without the videos.

Plaintiffs contend that the directives are content-based because what is depicted in the videos is at issue. That is, they consider the use of videos, no matter what they depict, to constitute "speech" protected by the First Amendment. This, Plaintiffs contend, subjects the Conservancy's directives to strict scrutiny. This argument lacks merit, and again demonstrates a misconception of what the First Amendment does and does not protect. "Government regulation of speech is content based if a law applies to particular speech because of *the topic discussed or the idea or message expressed*." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (emphasis added). However, the

Supreme Court has expressly "reject[ed] the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern. Rather, it is regulations that discriminate based on 'the topic discussed or the idea or message expressed' that are content based." *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S.Ct. 1464, 1474 (2022) (emphasis in original). The Supreme Court considers it to be "common ground [ ] that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc' for Krishna Consciousness*, 452 U.S. 640, 647 (1981).

Again, Defendants are not discriminating against Plaintiffs. They have no quarrel with Plaintiffs' viewpoint, their message, or the content of their speech. Defendants do not desire to prevent Plaintiffs from conveying their message (the Conservancy has *encouraged* Plaintiffs to continue their advocacy at Discovery Green). Nor, for that matter, do the Conservancy's directives prohibit Plaintiffs from discussing or describing the industrial practices that are the subject of their video. Rather, they seeks solely to prevent patrons and their children from being forcibly exposed to violence in videos.

The Seventh Circuit's holding in *Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011), is instructive. There, the court upheld a code of conduct at a city-owned senior center that required patrons to "treat everyone with respect and courtesy," that prohibited "abusive, vulgar, or demeaning language," and that required patrons to "treat Center personnel with respect." *Milestone*, 665 F.3d at 783. The plaintiff contended that the rules were viewpoint-based because they allowed, in the plaintiff's view, for the ejection of "any person who disagrees with the director's decisions." *Id.* The Seventh Circuit disagreed, holding that the defendant's "mission statement and objectives make it clear that the purpose of the Code is completely unrelated to the content of any speaker's message. Rather than focusing on *what* the Center's patrons say, the Code

291203086v.1

focuses on *the manner* in which they say it. Nothing in the Code provides a basis for punishing patrons for disagreeing with other visitors or the Center Staff." *Id.* (emphasis in original)

*Milestone*'s holding applies here. Like there, Discovery Green seeks to further its core missions of providing a family-appropriate cultural and entertainment center for its patrons. It is likewise enforcing the Rules that prohibit people from disturbing other patrons' use of Discovery Green.[3]

Plaintiffs' arguments, taken to their logical extension, would allow all manner of objectionable conduct that has no inherent speech component. For instance, by their arguments, Plaintiffs would be permitted to stand in the center of the playground to force all of the children to watch their videos. It would also allow Plaintiffs to display a slaughtered animal carcass in Discovery Green to prove their point. For that matter, Plaintiffs' arguments need not be limited to the slaughter of animals. Their contentions would suggest that an individual has the right to silently display videos depicting the torture or murder of humans to protest gun violence, or to hold a television screen playing a violent "R"-Rated movie near the playground. As discussed, abundant case law supports the Conservancy's right to exclude any such conduct at Discovery Green.

### E.     Even If Playing The Videos Inherently Amounted to Speech, the Conservancy's Directives Constituted a Legitimate Time, Place, And Manner Restriction.

Even if the playing of disturbing, violent videos fell fully within the ambit of the Constitution, it is axiomatic that "the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). Similarly, "nothing in the Constitution

---

[3] The court in *Milestone* was explicitly unconcerned with the nature of the forum, finding that what was dispositive was "not the nature of the forum but the nature of the regulation in question," because if it was genuinely a content-neutral "time, place, or manner" restriction, then it can survive, "regardless of which speech-forum category applies." *Id.* at 783.

requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799 (1985). Also, "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983).

The Supreme Court permits narrowly tailored regulations of time, place, and manner of protected speech and holds that it "need not be the least restrictive or least intrusive means of doing so. . . . So long as the means chosen are not substantially broader than necessary to achieve the government's interest, [ ] the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward v. Rock Against Racism*, 491 U.S. 781, 798, 800 (1989). Here, there is no question that the Conservancy has narrowly tailored its restrictions. As discussed, and as Plaintiffs' own evidence demonstrates, the Discovery Green employees repeatedly advised Plaintiffs that they were free to speak their message at Discovery Green, with the sole caveat that they could not show the videos.

Plaintiffs contend that it is "imperative" for them to show violent videos in order to convey their message. (Dubash Dec. p. 7, ¶ 21). This self-serving statement is both baseless and disingenuous. Plaintiffs cannot credibly dispute that animal rights activists have been demonstrating and speaking their message without the use of body-worn televisions for decades. Indeed, the concept of wearing a television screen to show a graphic video is so novel that there appears to be no case law even addressing it. Plaintiffs have failed to show how normal methods of advocacy are not effective in advancing their cause. Moreover, Plaintiffs' own statements, and the allegations in the Complaint, reveal that they intend their video tactics not as an actual

17

component of their speech, but as a way to compel users of Discovery Green to watch footage of violence against animals in order to draw their attention for the purpose of later speaking to them.

While Plaintiffs may believe the videos cause enhanced reactions from the public, the First Amendment does not guarantee them the right to engage in methods that maximize their reach. That is, it does not guarantee demonstrators "the most effective means of communication" of their message. *Galena v. Leone*, 638 F.3d 186, 204 (3d Cir. 2011). Thus, "alternative channels of expression . . . need not 'be perfect substitutes for those channels denied to plaintiffs.'" *Vincenty v. Bloomberg*, 476 F.3d 74, 88 (2d Cir. 2007) (quoting *Mastrovincenzo v. City of New York*, 435 F.3d 78, 101 [2d Cir. 2006]). The channels of expression permitted will be adequate if they "leave open sufficient alternative avenues of communication to minimize the 'effect on the quantity or content of the expression." *Vincenty*, 476 F.3d at 88 (quoting *Ward*, 491 U.S. at 791).

Simultaneously, "no one has a right to press even 'good' ideas on an unwilling recipient." *Rowan v. U.S. Post Office*, 397 U.S. 728, 738 (1970). Thus, for instance, the Supreme Court has upheld bans on the use of loudspeakers when talking on the street, reasoning that "[t]he preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to comfort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself." *Kovacs v. Cooper*, 336 U.S. 77, 87-88 (1949). Plaintiffs have not shown that traditional means of advocacy would be ineffective and, again, they were offered multiple avenues of expression that have no detrimental impact on their ability to communicate their message against animal cruelty.

Plaintiffs attempt to distinguish their conduct here from the ban on amplified sound found in the Rules by noting that their videos contain no sound. As Brian Wilmer explains, one reason why the Rules prohibit amplified sounds is because it forces nearby patrons to listen to the sounds.

(Wilmer Dec. pp. 4-5, ¶ 14). The Rules, obviously, could not be expected to contemplate Plaintiffs'
unusual demonstration method of wearing a television monitor to play offensive videos in major
thoroughfares within Discovery Green. For all of these reasons, the Conservancy's reasonable
limitations on Plaintiffs' conduct fell well within the bounds of the Constitution.

**F.** **Plaintiffs' Claims of Discrimination are Red Herrings.**

It is important to note that Plaintiffs' entire motion (and lawsuit) relies upon a distortion of
not only the nature of their conduct, but also of the intent motivating the Conservancy's directives
to Plaintiffs. Ubiquitously throughout their motion, Plaintiffs baldly accuse Defendants of
engaging in viewpoint-based discrimination. They claim that Defendants have "distinguish[ed]
between offensive and non-offensive speech" (Doc. No. 15, Pl. Mem. of Law, p. 19), they cite to
a Supreme Court opinion addressing laws that disfavor "ideas that offend" (*Id.* quoting *Iancu v.
Brunetti*, 139 S.Ct. 2294, 2301 [2019]), and they lean on their often-used refrain that Defendants
are trying to "silence" their speech "because of the viewpoint it expresses." (Doc. No. 15, Pl. Mem.
of Law, p. 14). Plaintiffs' accusations are demonstrably false. It is unfortunately that Plaintiffs
have selected this tack because it has been made abundantly clear to them, *as shown in their own
video exhibits*, that the Conservancy is not discriminating against their viewpoint, but is only
concerned with their use of videos. Discovery Green is not a street corner or typical city park. It is
a public space that is specifically designed to provide a number of highly structured, programmed
activities that one would not find in a typical park.

Plaintiffs' comparisons with a voter registration drive and other protests in the park (*see*
Doc. No. 15, Pl. Mem. of Law, p. 14, p. 14 n.21), as evidence that they are being singled out,
likewise fall flat because they, too, ignore the fact that Plaintiffs' use of the videos was the
Conservancy's singular concern. Unsurprisingly, Plaintiffs offer nothing beyond empty

19

accusations of discrimination to make their point. Discovery Green's hosting of other demonstrations underscores its commitment to allowing divergent viewpoints. Plaintiffs also conflate rules that restrict conduct with content-based laws that are intended to prevent entire categories of speech. They compare, for instance, their videos with "NRA convention protests," that some people might find "objectionable." (Doc. No. 15, Pl. Mem. of Law, p. 20). Yet again, Plaintiffs disregard the fact that it is not the content of their speech, or its objectionability, that is at issue. Moreover, the Conservancy makes clear that any other protests would not be permitted to play videos like those Plaintiffs were publicly showing here.

Plaintiffs compare the Conservancy's restrictions to the laws that were invalidated by *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011), and *Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975). Plaintiffs' analogy, however, is misplaced because neither case addressed public display of videos. *Brown* involved a law that prohibited the sale of certain video games to minors to avoid their exposure to violence. The Court found the law to be overbroad and content-based because the video games, themselves, were the speech protected by the First Amendment, and the law placed a blanket proscription on the sale of the games. *Erznoznik* turned on the overbreadth of a city ordinance that placed a blanket restriction on playing of any videos with nudity at drive-in movie theaters. The Supreme Court found the ordinance "broader than permissible" because it was "not directed against sexually explicit nudity, nor is it otherwise limited," but, instead, it prohibited all forms of nudity, including a variety of innocent forms. *Erznoznik*, 422 U.S. at 213. Again, here, the restriction at issue is narrow, and only directed at videos in Discovery Green that depict violence.

20

**G.**     **Plaintiff Dubash Cannot Prevail on His Texas RFRA or Free Exercise Claims.**

Dubash claims that Defendants violated his rights under the Texas Religious Freedoms Restoration Act ("TRFRA") and the Free Exercise Clause of the First Amendment. The claims are meritless. The TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion," unless the "government agency demonstrates that the application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest." TEX. CIV. PRAC. AND REMEDIES CODE §§ 110.003(a) and (b). "Government agency" is defined in the statute as "(A) this state or a municipality or other political subdivision of this state; and (B) any agency of this state or a municipality or other political subdivision of this state, including a department, bureau, board, commission, office, agency, council, or public institution of higher education." *Id* at § 110.001(a)(2).

"Under TRFRA, the plaintiff bears the initial burden of showing that the government is substantially burdening his free exercise of religion." *Sanchez v. Saghian*, 2009 Tex.App. LEXIS 7944, *24 (1st Ct. Apps.—Houston, Oct. 8, 2009, no pet.). The Texas Supreme Court has adopted the analysis articulated in the Fifth Circuit's opinion in *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004), addressing the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), that "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009) (quoting *Adkins*, 393 F.3d at 570). "A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it 'merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally

21

allowed.'" *Hill v. Cruz*, 2006 U.S. Dist. LEXIS 69094, *4 (S.D.Tex. Sep. 26, 2006) (quoting *Adkins*, 393 F.3d at 570); *see also San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (in context of RLUIPA claim, "a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise."

Dubash does not even arguably articulate a TRFRA claim. First, the Conservancy does not fall within the definition of "Government Agency." Neither the City nor the HDPC, for their part, has any involvement with the operation of Discovery Green. Since the TRFRA explicitly delineates the class of government entities that can be subject to a TRFRA claim, and because there is no color-of-state-law component, unlike 42 U.S.C. § 1983, Plaintiff Dubash cannot prevail.

On the merits, Dubash fails to meet his burden of demonstrating that he is substantially burdened in the exercise of his religion. While Dubash claims to be a devout follower of a particular form of Hinduism, he fails to state how his religious convictions compel him to show violent videos of animal torture on body-worn television screens at Discovery Green. In fact, it would appear from his Declaration that that method is *not* a tenet of his religion. Dubash claims that his religion teaches that "each person is compelled to spread the truth to others" (Dubash Dec. p. 5, ¶ 15), but does not state that any particular methods are required. Rather, Dubash would *prefer* to use the videos because he believes they are "an especially effective way" to communicate, and are "more effective than limiting my conversations to conversations with people I already know." (Dubash Dec. p. 5, ¶ 16).

In fact, Dubash asserts that the "most effective" way to "practice [his] faith" is to have "personal interaction and conversations with people" (Dubash Dec. p. 6, ¶ 17). Plaintiffs' motion emphasizes that their conduct at Discovery Green requires the participants to remain silent. Further, Plaintiffs engage in their conduct as part of a secular "animal rights group," not a religious

22

organization. (Dubash Dec. p. 6 ¶ 17). Insofar as Dubash admits that it is the communicative element that he finds to be compelling, none of the Defendants has made any effort to prevent him from having conversations with people as he claims his faith requires.

Further still, even if the restrictions imposed on Plaintiffs' conduct arguably impacted Dubash's ability to practice his faith, it hardly amounts to a "substantial" burden. Dubash is not claiming that by being prohibited from broadcasting his videos, he is somehow violating the tenets of his religion. Nor does he claim that he is being pressured to "significantly modify his religious behavior." Thus, Plaintiff Dubash fails to show a substantial burden on his religious exercise.

Even if Plaintiff Dubash's allegations can somehow be construed as a significant burden on his religious practice, the Conservancy had a compelling government interest in preventing children from being exposed to disturbing videos of violence against animals, and the restrictions on Plaintiffs' conduct was the least restrictive means of accomplishing that goal. As discussed above, Plaintiffs were told they could move their demonstration off of Discovery Green property onto a public sidewalk a very short distance away. Alternatively, they could continue to advocate for their cause as much as they wished, but without the videos. By every interpretation, Plaintiff Dubash's claim that his rights under the TRFRA were violated is thoroughly devoid of merit.

Plaintiff's Free Exercise claim is even more baseless than the TRFRA claim. A plaintiff will not state a Free Exercise claim if the policy at issue is a "neutral and generally applicable rule." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2422 (2022). Such a policy is not neutral if it is "specifically directed at religious practice." *Id.* quoting *Employment Div. v. Smith*, 494 U.S. 872, 878 (1990) (internal ellipsis omitted). "A policy can fail this test if it 'discriminates on its face,' or if a religious exercise is otherwise its 'object.'" *Id.* quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993) (internal edits omitted).

As discussed, the Conservancy had no knowledge of Dubash's religion at the time of the demonstrations (Lott Dec. p. 7, ¶ 19; Mandel Dec. p. 4, ¶ 15). Moreover, the alleged conduct was related to conduct concerning animal cruelty, not religious exercise. Tellingly, Plaintiff Harsini makes no Free Exercise claim but alleges that the same conduct violated his free speech rights. Plaintiffs put forth no basis supporting a Free Exercise claim.

## 2. PLAINTIFFS ARE NOT BEING IRREPARABLY HARMED, THE EQUITIES DO NOT BALANCE IN THEIR FAVOR, AND THE INJUNCTION WOULD NOT BE IN THE PUBLIC INTEREST

Defendants do not dispute that the violation of First Amendment freedoms constitutes irreparable harm. *See Elrod v Burns*, 427 U.S. 347, 373 (1976). Thus, purely in terms of their basis of their lawsuit, Plaintiffs bring causes of action that satisfy the irreparable harm prong of the preliminary injunction analysis. However, because Plaintiffs have failed to demonstrate that their constitutional rights have been violated, they are not being irreparably harmed by having their conduct subjected to reasonable time, place, and manner restrictions. For the same reasons, the equities do not tip in Plaintiffs' favor because the reasonable restrictions placed on their conduct are intended to promote the purpose behind Discovery Green's existence and to prevent the public from being compelled to view disturbing footage of violence against animals.

## POINT TWO

## PLAINTIFFS HAVE ASSERTED NO CLAIM FOR INJUNCTIVE RELIEF AGAINST THE CITY DEFENDANTS, HDPC, OR BARRY MANDEL.

For the reasons discussed above, Plaintiffs have unquestionably failed, on the merits, to demonstrate their entitlement to a preliminary injunction against the Conservancy. However, their claims against the City Defendants, HDPC, and Barry Mandel must also be dismissed. As Kathryn Lott explains, neither the City nor HDPC has any role in the management of Discovery Green (Lott Dec. ¶ 20). Rather, HDPC owns the property on which Discovery Green sits. Plaintiffs bear

the burden to establish that they are entitled to relief against each defendant but have failed to articulate any involvement in the operation of Discovery Green. The Fifth Circuit recently rejected an attempt to assert a claim against the City of Houston on the theory that an agency relationship existed with the alleged tortfeasor, a city-created housing authority. *See U.S. ex rel. Miniex v. Houston Hous. Auth.*, ___ Fed.Appx. ___, 2023 U.S. App. LEXIS 25226, *8 (5th Cir. Sep. 22, 2023) (unpub. order). The court granted dismissal against the City in part because, assuming an agency relationship existed, the plaintiff "failed to plead facts to make it plausible that HHA was acting with actual authority [from the City] when violating" the applicable law. *Miniex*, at **9-10.

Likewise, here, Plaintiff fails to show that the City or HDPC had any involvement with the daily operation and management of Discovery Green. To the contrary, again, it is the Conservancy that has sole management responsibility over it, and, specifically, it was Barry Mandel, the Conservancy President, who had requested that Plaintiffs be asked to stop showing their videos.

Lastly, Plaintiffs are not entitled to injunctive relief against Officer Whitworth or Officer Douglas, or Mr. Mandel, because they are named in their individual capacities. Injunctive relief "can be obtained from the defendants only in their official capacity." *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990); *see also Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993). Moreover, Mr. Mandel is no longer President of the Conservancy, making it impossible to grant injunctive relief against him. Accordingly, to the extent Plaintiffs seek an injunction against the City Defendants, HDPC, or Mr. Mandel, the request must be denied.

## CONCLUSION

For the foregoing reasons, the Conservancy Defendants, the City Defendants, and HDPC respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

291203086v.1

Respectfully submitted,

s/ Andrew S. Holland
**Andrew S. Holland**
TX Bar No. 24134330
Fed. Bar No. 3860674
Andrew.holland@wilsonelser.com
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
909 Fannin St., Suite 3300
Houston, TX 77010
713-353-2000 tel
713-785-7780 fax

**Attorneys for Defendants City of Houston, Texas, Officer Robert Douglas (# 7943), Officer Vern Whitworth (# 7595), Discovery Green Conservancy, and Barry Mandel**

s/ Michael H. Wallis
**Michael H. Wallis**
State Bar No. 24033426
**Laura Flores Macom**
State Bar No. 24002512
Thornton, Biechlin, Reynolds & Guerra, L.C.
One International Center
100 N.E. Loop 410, Suite 500
San Antonio, TX 78216-4741
(210) 581-0294 tel
(210) 525-0666 fax

**Attorneys for Houston Downtown Park Corporation**

CERTIFICATE OF SERVICE

I, Andrew S. Holland, certify that today, December 27, 2023, I filed the within Response to Plaintiffs' motion for a preliminary injunction with CM/ECF, for filing and service upon all attorneys who have appeared.

s/ Andrew S. Holland
ANDREW S. HOLLAND

26