IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARAIUS DUBASH, and DR. FARAZ HARSINI | § § § | |
| Plaintiffs, | § § | CIVIL ACTION |
| | § | CASE NO. 4:23-cv-03556 |
| v. | § § | |
| CITY OF HOUSTON, TEXAS; HOUSTON DOWNTOWN PARK CORPORATION; OFFICER ROBERT DOUGLAS (# 7943), in his Individual capacity; OFFICER VERN WHITWORTH (# 7595), in his individual capacity; DISCOVERY GREEN CONSERVANCY f/k/a HOUSTON DOWNTOWN PARK CONSERVANCY; and BARRY MANDEL, in his individual capacity, | § § § § § § § § § § § | |
| Defendants. | § | |

**DECLARATION OF FLOYD WILLIS IN RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

FLOYD WILLIS declares as follows pursuant to 28 U.S.C. § 1746:

1. I am over 18 years of age and am the Production Manager at Discovery Green, a position I have held since _____.

2. I submit this Declaration in response to Plaintiffs' motion for a preliminary injunction.

3. I am familiar with the allegations in this lawsuit based, in part, on my direct interactions with Plaintiffs and their fellow demonstrators, and multiple interactions with other patrons of Discovery Green. When I would see the demonstrators, they were always located in the a busy intersection along the main promenade through Discovery Green. The promenade traverses Discovery Green between the building that houses the public restrooms, and a restaurant. It follows a line that bisects Discovery Green. One intersection they frequently occupied was adjacent to the restrooms, and nearby (and visible) to the playgrounds. Thus, it was impossible for parents to completely avoid the protestors when their children would walk away from the playground and into, or past, the restrooms. This location can be found on the map attached as **Exhibit B** as the intersection of the Stedman West Veranda and the Andrea and Bill White Promenade, with the restrooms in the Alkek Building. Another location where I would find them would be at the intersection of the Brown Foundation Promenade and the Andrea and Bill White Promenade, which was at a major entrance to Discovery Green commonly frequented

by families with children. This location is also found on Exhibit B.

4. Discovery Green hosts multiple events and activities which draw sometimes thousands of patrons in a single day. The events crowd the property with people of all ages. Many events are intended for an audience that consists of, or includes, children. Discovery Green has a large playground area, sliding hill, and water feature for splash play. However, elsewhere, it has other amenities often geared toward children. There are movie nights, musical events, dance events, and cultural events that sometimes draw hundreds of children a day into Discovery Green.

5. The other intersection the demonstrators would occupy was at the other edge of the property, also on the promenade. This location was a busy entrance to Discovery Green, near another restaurant, and in close proximity to the water feature used by children.

6. The demonstrators would always locate themselves in or near the center of whichever intersection they occupied, and as they have alleged, they would have television screens facing in every direction, rendering it difficult to simply ignore them, particularly for children who were drawn to the unusual image of individuals standing in a square wearing masks and holding television screens showing violent imagery.

7. On multiple occasions, when Plaintiffs or their fellow demonstrators have shown the videos, I have fielded multiple complaints from Discovery Green patrons, particularly objecting to the fact that their children are being exposed to these videos in a manner and place where it is difficult, if not impossible, to shield their children from seeing them.

8. When the demonstrators would be in Discovery Green, if I was on duty, I would ask them to either stop playing the violent videos, or leave. I would never tell them that Discovery Green or I objected to their message. The concern was only with the public display of violent imagery of animals being slaughtered, which I understood scared children and worried their parents regarding the long-term impact of such imagery.

9. I conveyed to Plaintiffs and their fellow demonstrators, on multiple occasions, that they would be permitted to speak freely, and that Discovery Green would not censor their speech. I told them that they would have a sympathetic audience at Discovery Green to a message against animal cruelty, and I invited them to apply for a special use permit in order to reserve a location from which they could convey their message to a broader audience. I also encouraged them to participate in Discovery Green's Earth Day events. The only objection that Discovery Green had was the playing of videos depicting violence against animals.

10. It is my understanding that Plaintiffs have placed significance on my use of the word, "content," when I explained to them why they were being removed from Discovery Green. Discovery Green's attorneys have advised me that "content" has a legal connotation in First Amendment litigation, specifically referring to whether action is taken based upon the "content" of one's speech, whether such action is "content-neutral." The attorneys have advised me that Plaintiffs are construing my use of the word, "content," to mean that I was objecting to their message, or was ejecting them from Discovery Green because of their viewpoint or the message of their speech. This is not the case. My use of the word "content" was meant only to refer to the depicted footage contained on the television screens, similar to how the term would be used in the context employed by an audio-visual technician. "Content," in that sense, refers to the materials, sounds, graphics, etc., that the particular medium in question contains. I certainly have no objection to the message advocated by Plaintiffs against animal cruelty, and neither intended to, nor did, take action based on the message of their speech. Rather, there was no speech being conveyed from their videos because there was no sound. When I advised them that the "content" of the videos was objectionable, I was specifically referencing the display of disturbing violence against animals, not Plaintiffs' message, which, apart from the videos, involved discussions with patrons regarding cruelty to animals.

11. When I have spoken with Plaintiffs, they have noted to me the fact that there are often other protests and demonstrations at Discovery Green, and have insisted that their demonstrations are no different and that, therefore, they are entitled to play their videos anywhere within Discovery Green. However, to my knowledge, no other protestors/demonstrators have played violent videos as part of their protests. If they had sought to do so, it would not have been permitted. I understand that Plaintiffs also mention, in their motion papers, certain specific demonstrations: National Rifle Association, Black Lives Matter, Democratic Party rallies, and Republican Party rallies. However, those organizations were granted permission to demonstrate, and their permit would have been subject to placement at a part of Discovery Green that does not disrupt its operations. If those groups utilized silent videos

depicting graphic and violent imagery, they, too, would have been asked to leave or stop playing the videos.

12. Lastly, I understand that Plaintiff Dubash is claiming that Discovery Green violated the Texas Religious Freedom Restoration Act by discriminating against him because of his religion. Plaintiff Dubash has never discussed his religion with me, let alone asked for permission to discuss his religion. I have never discriminated against him because of his religion, and Plaintiff Dubash's religious beliefs have played no role in my instructions for Plaintiffs to stop playing the videos. Plaintiff Dubash would, of course, be free to discuss his religion at Discovery Green, just as he is free to discuss his advocacy against cruelty to animals.

13. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Houston, Texas, on December 26, 2023.

_____
FLOYD WILLIS

2

291147352v.1" "" 291147352v.1