**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DARAIUS DUBASH, and DR. FARAZ HARSINI** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION** |
| | § | **CASE NO. 4:23-cv-03556** |
| **v.** | § | |
| | § | |
| **CITY OF HOUSTON, TEXAS;** | § | |
| **HOUSTON DOWNTOWN PARK** | § | |
| **CORPORATION; OFFICER ROBERT** | § | |
| **DOUGLAS (# 7943), in his Individual** | § | |
| **capacity; OFFICER VERN WHITWORTH** | § | |
| **(# 7595), in his individual capacity;** | § | |
| **DISCOVERY GREEN CONSERVANCY** | § | |
| **f/k/a HOUSTON DOWNTOWN PARK** | § | |
| **CONSERVANCY; and BARRY MANDEL,** | § | |
| **in his individual capacity,** | § | |
| | § | |
| **Defendants.** | § | |

**DEFENDANT CITY OF HOUSTON, TEXAS, OFFICER ROBERT DOUGLAS (# 7943),
OFFICER VERN WHITWORTH (# 7595), DISCOVERY GREEN CONSERVANCY,
AND BARY MANDEL'S MOTION TO DISMISS PURSUANT TO Fed.R.Civ.P. 12(b)(6)**

291407587v.1

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. iii

MEET AND CONFER CERTIFICATION ............................................................................1

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ..............................1

SUMMARY OF THE ARGUMENT ......................................................................................1

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ...............................3

RELEVANT FACTS ALLEGED IN THE COMPLAINT ..........................................................3

ARGUMENT
POINT ONE

THE COMPLAINT FAILS TO STATE A CLAIM .................................................................6

A.     The First Count seeking Injunctive and Declaratory Relief for an
       Alleged First Amendment Violation, Fails .......................................................7

Plaintiffs Were Engaged In Unprotected Non-Expressive Conduct ................................7

Even If Plaintiffs Were Engaged In Speech or Expressive Conduct, They Were Subject
To Reasonable Time, Place, and Manner Restrictions ...................................................10

B.     The Second Count Fails For The Same Reasons ...........................................14

C.     Count Three Fails to Plead A *Monell* Claim Against the City .........................14

D.     Count Four Against The Officers and Mr. Mandel Fails Because The Facts
       Fail To Articulate Retaliation ........................................................................16

E.     Count Five Fails Because There Is No Articulated Free Exercise Violation ...................19

F.     Count Six Fails Because Plaintiffs Fail To Allege A Claim Under Texas RFRA .............20

G.     Count Seven For False Arrest Fails ...............................................................21

H.     The Eighth Cause of Action, For Unlawful Delegation, Is Meritless ...............................22

POINT TWO

OFFICERS WHITWORTH AND DOUGLAS ARE ENTITLED TO QUALIFIED
IMMUNITY ..................................................................................................................24

291407587v.1

CONCLUSION....................................................................................................................28

291407587v.1

## **TABLE OF AUTHORITIES**

### FEDERAL CASES

*Adkins v. Kaspar,* 393 F.3d 559 (5th Cir. 2004) ......................................................................20

*Armstrong v. Ashley,* 60 F.4th 262 (5th Cir. 2023) .................................................................6

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) ...............................................................................24

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ...........................................................................6

*Babb v. Dorman,* 33 F.3d 472 (5th Cir. 1994) ........................................................................25

*Bail Project, Inc., v. Comm'r, Ind. Dept. of Ins.,* 76 F.4th 569 (7th Cir. 2023) ....................8

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) .....................................................1, 6, 27

*Bennett v. City of Grand Prairie,* 883 F.2d 400 (5th Cir. 1989) ............................................22

*Benson, M.D. v. St. Joseph Regional Health Center,* 2007 U.S. Dist. LEXIS 99254
   (S.D.Tex. Aug. 22, 2007) .....................................................................................................9

*Blair v. Bethel Sch. Dist.,* 608 F.3d 540 (9th Cir. 2010) .......................................................16

*Bodzin v. Dallas,* 768 F.2d 722 (5th Cir. 1985) .....................................................................26

*Calvi v. Knox County,* 470 F.3d 422 (1st Cir. 2006) .............................................................17

*Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U.S. 520 (1993) ...............................19

*Cinel v. Connick,* 15 F.3d 1338 (5th Cir. 1994) ................................................................7, 11

*City of Austin v. Reagan Nat'l Adver. of Austin, LLC,* 142 S.Ct. 1464 (2022) .....................11

*Clarkston v. White,* 943 F.3d 988 (5th Cir. 2019) ..................................................................24

*Cocke v. Lourdes Physician Group, LLC,* 2019 U.S. Dist. LEXIS 79640
   (W.D. La. May 9, 2019) ........................................................................................................9

*Connelly v. Comptroller of the Currency,* 876 F.2d 1212 (5th Cir. 1989) .............................24

*Connick v. Thompson,* 563 U.S. 51 (2011) .............................................................................15

*Cunningham v. Castloo,* 983 F.3d 185 (5th Cir. 2020) ..........................................................24

iii

*Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) ............................................7

*Employment Div. v. Smith,* 494 U.S. 872 (1990) ........................................................................19

*Ferrer v. Chevron Corp.,* 484 F.3d 776 (5th Cir. 2007) ..............................................................7

*Guillory v. Transwood Carriers,* 2013 U.S. Dist. LEXIS 58353
    (N.D.Tex. Apr. 24, 2013) ........................................................................................................15

*Harmon v. City of Arlington, Texas,* 16 F.4th 1159 (5th Cir. 2021) .............................................6

*Heffron v. Int'l Soc' for Krishna Consciousness,* 452 U.S. 640 (1981) .......................................12

*Henderson v. Harris County,* 51 F.4th 125 (5th Cir. 2022) ..........................................................16

*Hill v. Cruz,* 2006 U.S. Dist. LEXIS 69094 (S.D.Tex. Sep. 26, 2006) .........................................20

*Hunter v. Bryant,* 502 U.S. 224 (1991) .......................................................................................28

*Hutcheson v. Dallas County, Texas* 994 F.3d 477 (5th Cir. 2021) ...............................................14

*Jordan v. Brumfield,* 687 F. App'x 408 (5th Cir. 2017) ...............................................................22

*Keenan v. Tejeda,* 290 F.3d 252 (5th Cir. 2002) ..................................................................17, 19

*Kennedy v. Bremerton Sch. Dist.,* 142 S.Ct. 2407 (2022) ............................................................20

*Lichtenstein v. Hargett,* 83 F.4th 575 (6th Cir. 2023) ..................................................................11

*Lloyd Corp. v. Tanner,* 407 U.S. 551 (1972) ...............................................................................27

*Longoria v. San Benito Indep. Consol. Sch. Dist.,* 942 F.3d 258 (5th Cir. 2019) ........................24

*Lozano v. Smith,* 718 F.2d 756 (5th Cir. 1983) ..............................................................................7

*Manax v. McNamara,* 842 F.2d 808 (5th Cir. 1988) ......................................................................6

*Mangieri v. Clifton,* 29 F.3d 1012 (5th Cir. 1994) .......................................................................25

*McClendon v. City of Columbia,* 305 F.3d 314 (5th Cir. 2002)
    (en banc) (per curium) ........................................................................................................1, 25

*McLin v. Twenty-First Jud. Dist.,* 79 F.4th 411 (5th Cir. 2023) ..................................................24

*Milestone v. City of Monroe,* 665 F.3d 774 (7th Cir. 2011) .........................................................12

iv

*Mitchell v. Forsyth,* 472 U.S. 511 (1985) ...................................................................27

*Monell v. Dept. of Social Services,* 436 U.S. 658 (1978) ...............................14, 15, 20

*Moore v. LaSalle Mgmt. Co., L.L.C.,* 41 F.4th 493 (5th Cir. 2022)................................15

*Murphy v. Kellar,* 950 F.2d 290 (5th Cir. 1992).............................................................19

*Nat'l Press Photographers Ass'n v. McCraw,* 84 F.4th 632 (5th Cir. 2023) ...............10

*Nieves v. Bartlett,* 139 S.Ct. 1715 (2019) ......................................................................18

*Oliveria v. City of Jersey Vill.,* 2023 U.S. Dist. LEXIS 51257
    (S.D.Tex. Mar. 27, 2023) ...................................................................................17

*Pena v. City of Rio Grande City,* 879 F.3d 613 (5th Cir. 2018) ...................................16

*Perry v. Mendoza,* 83 F.4th 313 (5th Cir. 2023)............................................................26

*Piotrowski v. City of Houston,* 237 F.3d 567 (5th Cir. 2001) ......................................17

*U.S. ex rel. Miniex v. Houston Hous. Auth.,* ___ Fed.Appx. ___, 2023 U.S. App.
    LEXIS 25226 (5th Cir. Sep. 22, 2023) (unpub. order). ......................................13

*Reed v. Town of Gilbert,* 576 U.S. 155 (2015) ..............................................................12

*Reitz v. Woods,* 85 F.4th 780 (5th Cir. 2023).................................................................25

*Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244 (5th Cir. 2003)..............................14

*Rizzo v. Goode,* 423 U.S. 362 (1976)........................................................................17, 19

*Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406 (2d Cir. 1990)............................19

*Rosborough v. Management & Training Corp.,* 350 F.3d 459 (5th Cir. 2003)............23

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47 (2006).......8

*Saldana v. Garza,* 684 F.2d 1159 (5th Cir. 1982).........................................................26

*San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024 (9th Cir. 2004).........21

*Saucer v. Katz,* 533 U.S. 194 (2001).............................................................................25

*Scanlon v. Tex. A & M Univ.,* 343 F.3d 533 (5th Cir. 2003) ..........................................7

v

*Shadley v. Grimes,* 405 Fed. Appx. 813 (5th Cir. 2010) (per curiam)...........................................22

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004) ......................6

*Spivey v. Robertson,* 197 F.3d 772 (5th Cir. 1999)........................................................................7

*Sullivan v. Leor Energy, LLC,* 600 F.3d 542 (5th Cir. 2010) ...............................................7, 11, 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007) .................................................7

*Texas v. Johnson,* 491 U.S. 397 (1989) ..........................................................................................8

*Thomson v. Mercer,* 762 F.3d 433, 437 (5th Cir. 2014) ................................................................24

*Thompson v. Steele,* 709 F.2d 381 (5th Cir. 1983) ...........................................................6, 17, 18

*Turner Broad. Sys. v. FCC,* 512 U.S. 622 (1994)..........................................................................10

*U.S. v. Antone,* 753 F.2d 1301 (5th Cir. 1985) .............................................................................25

*U.S. v. Garcia,* 179 F.3d 265 (5th Cir. 1999) ...............................................................................25

*U.S. v. O'Brien*, 391 U.S. 367 (1968).......................................................................................8, 10

*Voting for Am., Inc. v. Steen,* 732 F.3d 382 (5th Cir. 2013) ...........................................................8

*Westfall v. Miller,* 77 F.3d 868 (5th Cir. 1996)...............................................................................6

*Williams v. Jaglowski,* 269 F.3d 778 (7th Cir. 2001) ....................................................................28

*Young v. Wells Fargo Bank, N.A.,* .717 F.3d 224 (1st Cir. 2013)...................................................14

*Zarnow v. City of Wichita Falls, Tex.,* 614 F.3d 161 (5th Cir. 2010).......................................14, 15

## STATE CASES

*Barr v. City of Sinton,* 295 S.W.3d 287 (Tex. 2009) ....................................................................20

*Sanchez v. Saghian,* 2009 Tex.App. LEXIS 7944
    (1st Ct. Apps.—Houston, Oct. 8, 2009, no pet.)...................................................................20

## STATUTES

TEX. CIV. PRAC. AND REMEDIES CODE § 110.001 ...........................................................................20

TEX. CIV. PRAC. AND REMEDIES CODE § 110.003...........................................................................20

Defendants City of Houston, Texas ("the City"), Officer Robert Douglas and Officer Bern Whitworth ("the Officers,"), Discovery Green Conservancy f/k/a Houston Downtown Park Conservancy ("the Conservancy"), and Barry Mandel move for an Order pursuant to Fed.R.Civ.P. 12(b)(6), dismissing the Complaint for failure to state a claim upon which relief may be granted.

## MEET AND CONFER CERTIFICATION

This certifies that in accordance with Rule 7(P) of Hon. Andrew S. Hanen, the undersigned, Andrew S. Holland, communicated with Plaintiffs' counsel by correspondence sent via email, notifying them of the issues being asserted in this motion to ascertain whether the pleading deficiencies could be cured in any part by a permissible amendment offered by Plaintiffs.

## STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

Defendants ask the Court to dismiss the Complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). The Complaint fails to allege violations of Plaintiffs' rights under the U.S. Constitution, or the Texas Religious Freedom Restoration Act ("TRFRA"). Moreover, as to Officer Whitworth and Douglas, the Complaint demonstrates that that they are entitled to qualified immunity. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must allege "enough facts to state a claim for relief that is plausible on its face"); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curium) (once defendant invokes qualified immunity, burden shifts to plaintiff to "demonstrate the inapplicability of the defense").

## SUMMARY OF THE ARGUMENT

Plaintiffs have the right, like anyone else, to speak against animal cruelty while within Discovery Green, a large urban greenspace in downtown Houston, Texas. They do not have the right, however, to wear television screens depicting killing and violence towards animals wherever they choose within Discovery Green. The arguments for dismissal are as follows:

1

1.      Count 1 – First Amendment Violation (Injunctive/Declaratory Relief). Discovery Green is a limited public forum entitling the Conservancy to restrict speech based on content. Even if it is seen as a traditional public forum, Plaintiffs were engaged in non-expressive conduct that is not constitutionally protected. If the Court interprets it to have been expressive conduct or speech, Discovery Green was entitled to impose reasonable time, place, and manner restrictions. Lastly, the City of Houston does not own Discovery Green and has no involvement in its operation.

2.      Count 2 – First Amendment Prior Restraint. This is subject to the same analysis as the first Count.

3.      Count 3 –  First Amendment (Monell Claim against City of Houston). Plaintiffs have failed to identify a policymaker, or articulate that there is a custom or policy sufficient to articulate a claim against the City.

4.      Count 4 – "Direct and Retaliatory" First Amendment (Damages). Because there was no First Amendment violation, this claim fails. As discussed below, the Officers are entitled to qualified immunity.

5.      Count 5 – Free Exercise (Damages) – Plaintiffs have not attempted to adequately plead a Free Exercise claim. In addition, the claim against the City fails to articulate a Monell claim. The damages claim against the Conservancy likewise fails a Monell analysis.

6.      Count 6 – Texas Religious Freedom Restoration Act Violation. Plaintiffs fail to show that Dubash was significantly prevented from adhering to the tenets of his religion.

7.      Count 7 – False Arrest and Unconstitutional Seizure. Plaintiff Dubash fails to articulate anything against Officer Whitworth, and the case against him should be dismissed and, as discussed, there was no First Amendment violation. Further, Dubash was arrested for trespassing, not his speech. Also, the Officers are entitled to qualified immunity.

8.      <u>Count 8 – Unlawful Private Delegation</u>. The City has no ownership interest in Discovery Green. Even if it did, it is entitled to delegate management to a private entity.

9.      <u>Qualified Immunity</u>. The Officers are entitled to qualified immunity. Dubash was arrested after being afforded numerous opportunities to leave on his own. The Conservancy employees advised the Officers that he was then trespassing. The Officers are entitled to rely on that representation rather than determine whether the property is private or public.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an action under 42 U.S.C. § 1983 alleging constitutional violations. This motion is filed in lieu of an Answer to the Complaint. No other party has answered the Complaint. Plaintiffs have also filed a motion for a preliminary injunction which is also pending before the Court.

## RELEVANT FACTS ALLEGED IN THE COMPLAINT

Plaintiffs are individuals who are members of "Anonymous for the Voiceless," an "animal rights advocacy group" that puts on performances called "Cubes of Truth" which Plaintiffs characterize as "public events." (Compl. pp. 4, 8, ¶¶ 12, 13, 32-33). These events involve multiple individuals standing in a square holding television screens outward, playing silent videos that depict such scenes as "macerating baby male chicks," "using farrowing or gestation crates," "pest-ridden duck living quarters," and "electrical prodding of cattle." (Compl. pp. 8-10, ¶¶ 35, 37, 39). The individuals holding the televisions do not speak with patrons; rather, a separate team, dubbed the "Outreach Team," "interacts" with patrons. (Compl. p. 8, ¶¶ 34, 36). Plaintiff Dubash claims that he engages in these performances because he is a follower of "the Vedantic stream of Hinduism," which advocates for non-violence (Compl. p. 4, ¶ 12). Dubash believes that his beliefs "impel him to proselytize on behalf of animals." (Compl. p. 6, ¶ 24). He believes "the most effective" way to do that is "by having personal interactions with others" about his views. (Compl.

p. 6, ¶ 25). He believes that his religion requires him to be "effective" in his proselytizing, and he feels that his Cubes of Truth events are "the most effective way" to do so. (Compl. p. 39, ¶ 251).

The Complaint alleges that Plaintiffs' First Amendment rights were being violated when they were asked to stop showing their videos during their performances. The Complaint relies on a narrative of legal conclusions, as well as Plaintiffs' subjective rationale for engaging in their performances, and their beliefs as to the purportedly boundless reach of their rights to display violent videos to the public.

The relevant allegations are that Plaintiffs contend that they have been discriminated against while Discovery Green has hosted demonstrations held by organizations with divergent and diverse viewpoints. (Compl. p. 14, ¶¶ 68-82). The Complaint relies on a strawman argument that the Conservancy was determined to discriminate against them based on their viewpoints and the content of their speech. They even characterize their ejection from Discovery Green as *retaliation* and accuse Defendants of discriminating against Dubash because of his religious beliefs. While the language in their Complaint makes these sweeping accusations based on nothing more than subjective characterizations, the Complaint's video exhibits paint a different picture. Plaintiffs were free to speak about their topic all they wished. At no point did anyone tell Plaintiffs that their message or the topic of their speech was prohibited. The Conservancy was concerned only with the public display of violent videos.  According to the exhibits, Plaintiffs were told the following by Discovery Green and security personnel: "I'm okay with you guys being inside the park. I'm okay with it. As long as you don't have the TVs. If you're not showing anything, I'm okay with it. And if you're talking about it, that's a different story." (Pl. Exh. G-1, 0:16). They were told they could show the videos outside the perimeter of Discovery Green: "But, if you were standing on the outside of the perimeter, I would be okay with it." (Pl. Exh. G-1, 0:41). When

4

Dubash noted that others were allowed to demonstrate, the security guard explained that those demonstrators had permission to engage in their demonstrations. (Pl. Exh. G-1, 2:04).

Further statements included: "my supervisor said they can stay in the park, and record or talk, but no amplified stuff [and the first guard interjected, "and no TVs"]." (Pl. Exh. G-1, 2:09), "the thing is, it's what it shows, . . . that's the only problem that Discovery Green has." (Pl. Exh. G-1, 7:35), and the contents of the videos, which were "not appropriate for everyone." (Pl. Exh. G-1, 7:48). Plaintiffs were told "we're good . . . if you want to talk with people, but we're not comfortable with the TVs." (Pl. Exh. G-2 0:04), and later, "listen, if you want to talk with people, we're good with that. We're just not comfortable with the video contents." (Pl. Exh. G-2, 3:35).

The day of the arrest, Dubash was once again told, in keeping with the Park Rules and Regulations, "you can stand here, you can talk all day long. But this video, you can't have this." (Pl. Exh. G-3 1:43). Several minutes of dialogue transpired, during which Plaintiffs attempted to persuade Park personnel to allow them to play their videos in Discovery Green. Ultimately, Mr. Willis arrived and told Plaintiffs, "I just talked to Barry [Mandel], and we are officially asking you to leave the property. . . . If you don't, it will be a trespass." (Pl. Exh. G-3, 10:24). This was reiterated: "They've been asked to leave, and they're refusing to leave, so we're going to call it in, criminal trespass." (Pl. Exh. G-3 12:33). Plaintiff Dubash, all while Harsisi videoed the conversation, goaded the Officers, asking them whether he had to listen to Mr. Willis, to which Officer Whitworth responded, "it's like you're trying to bait me into something, it's up to the management." (Pl. Exh. G-3, 13:29). The interactions captured in Plaintiffs' video exhibits belie the claims of viewpoint discrimination. They likewise eviscerate any claim that the Officers were acting with an intent to violate Plaintiffs' First Amendment rights.

5

## ARGUMENT

## POINT ONE

## THE COMPLAINT FAILS TO STATE A CLAIM

The Complaint must be dismissed because it fails to state a claim upon which relief may be granted. A complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need detailed factual allegations, it nevertheless requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, courts do not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) (quoting *Harmon v. City of Arlington, Texas*, 16 F.4th 1159, 1162-63 [5th Cir. 2021]). Courts should not "strain to find inferences favorable to the plaintiffs" and should not "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quoting *Westfall v. Miller*, 77 F.3d 868, 870 [5th Cir. 1996]).

To state a claim brought pursuant to 42 U.S.C. § 1983, a plaintiff must allege that a defendant acting "'under color of any statute' of the state," deprived him "of a right 'secured by the Constitution and the laws' of the United States." *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988). "Personal involvement [of the defendant] is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Thus, a defendant "must be

either personally involved in the acts causing the deprivation of a person's constitutional rights, or there must be a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed." *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983).

In considering a motion to dismiss under Rule 12(b)(6), courts generally "will not look beyond the face of the pleadings." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court can also consider "'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice,'" (*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 [5th Cir. 2008] [quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)]), as well as "written document[s] that [are] attached to a complaint", because they are considered "part of the complaint." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Thus, the court can consider "documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlon v. Tex. A & M Univ.*, 343 F.3d 533, 536 [5th Cir. 2003]). The Court may likewise "refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

## A.     The First Count seeking Injunctive and Declaratory Relief for an Alleged First Amendment Violation, Fails.

The First Count must be dismissed because, by the Complaint's allegations, there was no violation of Plaintiffs' First Amendment Rights. The following reasons support dismissal.

### Plaintiffs Were Engaged In Unprotected Non-Expressive Conduct.

Plaintiffs do not factually assert that they were discriminated against based on viewpoint or the content of their actual speech. Rather, they allege that actions were taken against them based upon constitutionally unprotected non-expressive conduct. Plaintiffs lack a remedy for this claim. The Supreme Court has afforded First Amendment protection "only to conduct that is inherently

7

expressive." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006). Thus, the Supreme Court has "rejected the view that 'conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.'" *Rumsfeld*, 547 at 65-66 (quoting *U.S. v. O'Brien*, 391 U.S. 367, 376 [1968]).

Conduct will receive no First Amendment protection if it "does not convey a message without the aid of additional speech." *Bail Project, Inc., v. Comm'r, Ind. Dept. of Ins.*, 76 F.4th 569, 575 (7th Cir. 2023). That is, "only conduct that is 'inherently expressive' is entitled to First Amendment protection." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013) (quoting *Rumsfeld*, 547 U.S. at 66). The Fifth Circuit has observed that "[t]o determine whether particular conduct possesses sufficient 'communicative elements' to be embraced by the First Amendment, courts look to whether the conduct shows an 'intent to convey a particular message' and whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (quoting *Texas v. Johnson*, 491 U.S. 397, 404 [1989]). The need for "explanatory speech" to convey the speaker's viewpoint is "strong evidence" that the conduct is not so "inherently expressive" as to be entitled to constitutional protection. *Rumsfeld*, 547 at 66.

By the Complaint's own allegations, Plaintiffs' message is one of opposition to animal cruelty (Compl. pp. 4, 5, 6, 8 ¶¶ 12, 13, 22-23, 33; p. 8 point heading), not one supporting it. The videos, they claim, *depict* purported cruelty and violence against animals. (Compl. pp. 8-10, ¶¶ 35, 37, 39). When advocating a message against cruelty to animals, the silent video depiction of violence towards animals—before any speech has taken place expressing Plaintiffs' message— hardly establishes "a great likelihood that their intended message will be understood by those who receive it." *Johnson*, 491 U.S. at 404.

Plaintiffs admit that the videos contain nothing inherently supportive of their message. The Complaint states that the videos show "true and accurate footage of practices that are lawful and industry standard." (Compl. p. 8, ¶ 31). The purpose of the videos is to "reveal the hidden treatment of animals." (Compl. p. 9, ¶ 37). Thus, there is simply no way for the videos to be "inherently expressive." According to the Complaint, it is only after the videos are used to lure an audience that the "Outreach Team" "interacts with interested passersby." (Compl. p. 8, ¶ 34). The videos are silent, and those holding them do not speak. (Compl. p. 8, ¶¶ 35, 36).

The Complaint focuses upon Conservancy employee Floyd Willis's and a security guard's use of the term, "content," when describing Discovery Green's objection to the videos (Compl. p. 19, ¶¶ 108-10). This focus is disingenuous, since it is clear that the speakers were referring to the violence depicted in the videos. While First Amendment jurisprudence considers whether government action is content-neutral, a layperson's use of the word "content" in a non-legal context is not controlling. *See*, *e.g.*, *Cocke v. Lourdes Physician Group, LLC*, 2019 U.S. Dist. LEXIS 79640, *12 (W.D. La. May 9, 2019) (recognizing that a party used a legally defined phrase "in a colloquial sense, rather than as a term of art defined by the ADA"). This very Court has considered it to be improper "word play" when a plaintiff points to a defendant's colloquial use of a term as proof of whether the defendant also intended for the use to apply to the word as a term of art. *See Benson, M.D. v. St. Joseph Regional Health Center*, 2007 U.S. Dist. LEXIS 99254, *11 (S.D.Tex. Aug. 22, 2007) (Defendant's admission that it did not conduct "investigation" was not dispositive because "the word 'investigation' as used in the by-laws is a term of art that does not necessarily have the same meaning as an investigation in the colloquial sense.").

9

**Even if Plaintiffs Were Engaged In Speech Or Expressive Conduct, They Were Subject To Reasonable Time, Place, and Manner Restrictions.**

Even if Plaintiffs' display of graphic videos could be construed as expressive conduct, Discovery Green was nevertheless entitled to place narrowly tailored restrictions on the conduct by prohibiting Plaintiffs from showing the videos in the middle of Discovery Green walkways. The Sixth Circuit recently observed, "[t]he Supreme Court has never applied exacting free-speech scrutiny to laws that bar conduct based on the harm that the conduct causes apart from the message it conveys. . . . That is true even if the ban on conduct imposes 'incidental burdens on speech. . . . And it is true even if the person engaging in the conduct 'intends thereby to express an idea.'" *Lichtenstein v. Hargett*, 83 F.4th 575, 583 (6th Cir. 2023) (internal citations omitted).

The Supreme Court applies intermediate scrutiny to laws that place non-content-based restrictions on expressive conduct. The Court has made clear that "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *U.S. v. O'Brien*, 391 U.S. 367, 376 (1968). Intermediate scrutiny is "the default level of scrutiny applicable to laws . . . which do not directly regulate the content of speech and which 'pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.'" *Nat'l Press Photographers Ass'n v. McCraw*, 84 F.4th 632, 651 (5th Cir. 2023). Under the intermediate scrutiny rubric, content-neutral action will be sustained if "it furthers an important or substantial governmental interest; if the government interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.'" *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 662 (1994) (quoting *O'Brien*, 391 U.S. at 377).

10

Requiring Plaintiffs to either cease showing their videos or to move a short distance off the Discovery Green property passes muster under intermediate scrutiny. Discovery Green's directives were content neutral, as were the rules of conduct they were intended to promote. The Rules permit the Conservancy to prohibit conduct that disrupts other patrons' use of Discovery Green or could reasonably be expected to disturb others, and prohibits uses that are not consistent with the purpose for which the location was designed, dedicated or for which a Special Use permit has been granted. (see **Exhibit A**, Rules §§ 0.3; 2.1.1; 2.1.44).[1] That is precisely what the Conservancy was doing. Second, the Conservancy was not suppressing free expression, and, to the contrary, encouraged Plaintiffs to continue their expression using speech without the silent violent videos. Third, the restriction was narrowly tailored as Plaintiffs could either continue to show their videos on the public sidewalk, or could continue their advocacy in Discovery Green without the videos. (Pl. Exh. G-3, *supra*.).

Plaintiffs contend that the directives are content-based because what is depicted in the videos is at issue. They consider the use of videos to inherently constitute protected "speech." This, Plaintiffs contend, subjects Defendants to strict scrutiny. This argument lacks merit, and demonstrates a misconception of what the First Amendment does and does not protect. "Government regulation of speech is content based if a law applies to particular speech because of *the topic discussed or the idea or message expressed*." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (emphasis added). The Supreme Court has expressly "reject[ed] the view that *any* examination of speech or expression inherently triggers heightened First Amendment concern. Rather, it is regulations that discriminate based on 'the topic discussed or the idea or message expressed' that are content based." *City of Austin v. Reagan Nat'l Adver. of Austin, LLC*, 142 S.Ct.

---

[1] These are found in the same body of rules cited in the Complaint. Therefore, Defendants respectfully ask the Court to consider them because they are referred to in the Complaint and are matters of public record. *See Sullivan* and *Cinel.*

1464, 1474 (2022) (emphasis in original). "[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc' for Krishna Consciousness*, 452 U.S. 640, 647 (1981).

Defendants are not discriminating against Plaintiffs. They have no quarrel with Plaintiffs' viewpoint, their message, or the content of their speech. Defendants do not desire to prevent Plaintiffs from conveying their message and, indeed, the Complaint contains exhibits showing that the Conservancy was affirmatively willing to allow them to demonstrate in Discovery Green. (Pl. Exh. F, G-1 through G-3). Nor do the Conservancy's directives prohibit Plaintiffs from discussing or describing the industrial practices that are the subject of their video.

The Seventh Circuit's holding in *Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011), is instructive. There, the court upheld a code of conduct at a city-owned senior center that required patrons to "treat everyone with respect and courtesy," that prohibited "abusive, vulgar, or demeaning language," and that required patrons to "treat Center personnel with respect." *Milestone*, 665 F.3d at 783. The plaintiff contended that the rules were viewpoint-based because they allowed, in the plaintiff's view, the ejection of "any person who disagrees with the director's decisions." *Id.* The Seventh Circuit disagreed, holding that the defendant's "mission statement and objectives make it clear that the purpose of the Code is completely unrelated to the content of any speaker's message. Rather than focusing on *what* the Center's patrons say, the Code focuses on *the manner* in which they say it. Nothing in the Code provides a basis for punishing patrons for disagreeing with other visitors or the Center Staff." *Id.* (emphasis in original) *Milestone*'s holding applies here. Like there, Discovery Green was permitted to enforce its Rules that prohibit people from disturbing other patrons' use of Discovery Green.

Plaintiffs' arguments, taken to their logical extension, would allow all manner of objectionable conduct that has no inherent speech component. For instance, by their arguments, Plaintiffs would be permitted to stand in the center of the playground and display their videos. It would also allow Plaintiffs to display a slaughtered animal carcass in Discovery Green . For that matter, Plaintiffs' arguments need not be limited to the slaughter of animals. Their contentions would suggest that an individual has the right to silently display videos depicting the torture or murder of humans to protest gun violence. Case law supports the Conservancy's right to exclude any such conduct at Discovery Green, particularly where its Rules are intended to prevent the disruption of others' use of the Park.

Plaintiffs contend that the City has an ownership interest in Discovery Green, and argue that it "placed no meaningful constraints" on the Conservancy's exercise of authority. (Compl. p. 28, ¶ 172). However, the Complaint not only fails to articulate that the City had an ownership interest in Discovery Green but, rather it expressly acknowledges that it is *HDPC* that owned the property. (Compl. pp. 4-5, ¶ 16). HDPC is an entity separate from the City and has been sued in its own right. The Fifth Circuit recently rejected an attempt to assert a claim against the City of Houston on the theory that an agency relationship existed with the alleged tortfeasor, a city-created housing authority. *See U.S. ex rel. Miniex v. Houston Hous. Auth.*, ___ Fed.Appx. ___, 2023 U.S. App. LEXIS 25226, *8 (5th Cir. Sep. 22, 2023) (unpub. order). The court granted dismissal against the City in part because, even assuming an agency relationship existed, the plaintiff "failed to plead facts to make it plausible that HHA was acting with actual authority [from the City] when violating" the applicable law. *Miniex*, at **9-10.

Likewise, here, Plaintiff fails to show that the City had any involvement with the operation and management of Discovery Green. To the contrary, it is the Conservancy that has sole

management responsibility, and, specifically, it was Barry Mandel, the Conservancy President, who requested that Plaintiffs stop showing their videos.

## B.     The Second Count Fails for the Same Reasons.

Plaintiffs' Second Count likewise seeks a declaration that the prohibition on the use of the televisions amounts to an unlawful prior restraint. This count is duplicative of Count 1, because, like the first, it seeks "declaratory relief" concerning "Defendants' ongoing restraint of any threat to Plaintiffs' protected expression." No additional grounds for relief are alleged. Thus, this cause of action should be dismissed not only for the same reasons as the First, but also because it is duplicative. *See Young v. Wells Fargo Bank, N.A.*, .717 F.3d 224, 237 (1st Cir. 2013).

## C.     Count Three Fails to Plead a *Monell* Claim Against the City.

Plaintiffs fail to assert a cognizable claim against the City of Houston both because they fail to allege any involvement by the City in the alleged conduct, and because they assert no facts supporting a claim pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  The law is clear that "[m]unicipalites are not liable on the theory of respondeat superior and are almost never liable for an isolated unconstitutional act on the part of an employee." *Hutcheson v. Dallas County, Texas* 994 F.3d 477, 482 (5th Cir. 2021). Rather, a municipality cannot be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Therefore, "[t]he first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). "The policymaker must have final policymaking authority." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003).

Official policy can be shown either by a formal policy statement from an official policymaker (*see Zarnow*, 614 F.3d at 168), or by a custom that is "so persistent and widespread as to practically have the force of law." *Moore v. LaSalle Mgmt. Co., L.L.C.*, 41 F.4th 493, 509 (5th Cir. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 [2011])

Plaintiffs do not even begin to articulate a *Monell* claim against the City. As discussed, the Complaint acknowledges that it was HDPC, not the City, that owns the property. Thus, the Complaint asserts no facts suggesting the City has any ability to make policy at Discovery Green. Even if it had, Plaintiffs identify no policymaker for whose actions the City should be liable. They assert legal conclusions and conclusory claims about not providing training, about parks avoiding excluding speech, and about the Conservancy being afforded the ability to promulgate rules of use. (Compl., pp. 33-34, ¶¶ 205-217). These accusations fail to support a *Monell* claim. Plaintiffs appear to recognize this; instead of identifying an actual policymaker, they summarily declare that "Discovery Green Conservancy" is the policymaker. (Compl., p. 33, ¶ 206). The Conservancy cannot be a policymaker because *Monell* and its progeny are clear that the policy must be one adopted by a body's "officers." *Monell* 436 U.S. at 690; *see Guillory v. Transwood Carriers*, 2013 U.S. Dist. LEXIS 58353, **6-7 (N.D.Tex. Apr. 24, 2013) (*Monell* applies to a private entity, who is only liable for actions of its "employee" if *Monell* factors are met). The City can only be liable for its own policies and customs, not those of another entity.  *Monell*, 436 U.S. at 691; *Connick v. Thompson*, 563 U.S. 51 (2011).

The failure to identify an *individual* policymaker undermines Plaintiffs' claim. Moreover, the failure to articulate that there is a widespread custom is likewise fatal to the claim. Plaintiffs must show that the "moving force" of the violation of their rights was a policy or custom.

15

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Plaintiffs do not even attempt to factually meet this requirement and instead rely on supposition and conclusions.

Plaintiffs contend that a failure to train supports their *Monell* claim. This theory also misses the mark. To show liability on a failure-to-train theory, Plaintiffs must articulate that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022). "Because the standard for municipal liability is a stringent one, a pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018).

The assertion of this theory is unsupported, thus failing to satisfy pleading standards. Another view of the underlying allegations here is helpful. Plaintiffs contend that Discovery Green regularly hosts demonstrators with divergent viewpoints, but has decided to discriminate against them for prominently displaying violent videos of killing animals. They cannot even arguably draw an inference that a time, place, and manner restriction of this type of their grotesque imagery is the result of deliberate indifference to constitutional rights. Indeed, as discussed, that deliberate indifference must be "widespread," which Plaintiffs have not even attempted to plead.

**D.      Count Four Against The Officers And Mr. Mandel Fails Because The Facts Fail To Articulate Retaliation.**

Plaintiffs' Fourth Cause of Action fails. Plaintiffs cannot plead a Retaliation claim against the Officers on behalf of Harsini because he was not arrested. *See, e.g.*, *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 544 (9th Cir. 2010) ("minor indignity" and "de minimis deprivations" based on one's speech do not amount to a First Amendment claim). The balance of this cause of action also

16

fails on its merits. As an initial point, neither named Officer was involved in Dubash's arrest. Rather, it was a different officer, Officer Minh Ta, who made the arrest. Defendants submit an Offense Report prepared by Officer Ta as **Exhibit C**. They respectfully ask that the Court take judicial notice of the report. *See Oliveria v. City of Jersey Vill.,* 2023 U.S. Dist. LEXIS 51257, **22-23 (S.D.Tex. Mar. 27, 2023) (in support of their Rule 12(b)(6) motion to dismiss Fourth Amendment claim, police officer defendants "could have asked this Court to take judicial notice of [officer's] Offense report, [ ] or other charging documents"). Officer Ta's report reflects that he made the arrest based on statements from others, including Officers Whitworth and Douglas. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). Without alleging that Whitworth or Douglas was responsible for the arrest, Dubash fails to state a claim.

Dubash makes *no* allegations whatsoever against Officer Whitworth. The only factual allegation is that Officer Douglas placed Dubash under arrest. (Compl. p. 23, ¶ 142). An officer's "mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer." *Calvi v. Knox County*, 470 F.3d 422, 428 (1st Cir. 2006). Officer Whitworth is unquestionably entitled to dismissal.

The claim also fails on the merits. To plead First Amendment retaliation, a plaintiff must allege engagement in constitutionally protected activity, that the defendants cause him to discontinue engaging in that activity, and that "the defendant's adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected activity." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). For the reasons discussed above, Plaintiffs' First Amendment rights were not violated, thereby belying any theory of retaliation because the first *Keenan* prong is not satisfied. As is discussed below, Officers Whitworth and Douglas are entitled to qualified

immunity. In any event, the Complaint fails to demonstrate a retaliation claim. The facts pled, and the exhibits discussed above, make it clear that Plaintiffs were affirmatively told they could continue their protected speech at Discovery Green. Nowhere do they claim that the Officers or Mr. Mandel was motivated by any desire to retaliate. Thus, there is simply no claim that they were being discriminated against for doing so.

This applies even more so to the Officers. Insofar as Dubash asserts that his arrest was retaliatory, "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Nieves v. Bartlett*, 139 S.Ct. 1715, 1726 (2019). Plaintiff must also establish a "causal connection" between Defendants' "retaliatory animus" and his "subsequent injury." *Nieves v. Bartlett*, 139 S.Ct. at 1725 (citation omitted). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* (emphasis in original). "Courts do not reach the causation analysis described above unless the plaintiff establishes an absence of probable cause." *Id.* The Officers repeatedly advised Dubash that they were instructing him to leave because he was trespassing, not because they disliked his videos. Plaintiffs bear the burden of pleading with *facts* that they were retaliated against because of their speech. They rely on nothing more than supposition and their own self-serving insistence that they had the First Amendment right to continue to publicly show violent videos in Discovery Green.

Lastly, the officers were not alleged to have been involved in the November 13, 2021, April 16, 2022, or June 18, 2022, encounters with park employees and park security. As discussed, personal involvement must be alleged. *See Thompson*, 709 F.2d at 382. A plaintiff must specify the personal involvement of *each* defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See*

18

*Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992) (citing *Rizzo*, 423 U.S. at 371-72). Thus, those encounters cannot support a claim against the Officers.

**E.      Count Five Fails Because There is No Articulated Free Exercise Violation.**

The Complaint fails to articulate a Free Exercise violation.   A plaintiff will not state a Free Exercise claim if the policy at issue is a "neutral and generally applicable rule." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2422 (2022). Such a policy is not neutral if it is "specifically directed at religious practice." *Id.* quoting *Employment Div. v. Smith*, 494 U.S. 872, 878 (1990) (internal ellipsis omitted). "A policy can fail this test if it 'discriminates on its face,' or if a religious exercise is otherwise its 'object.'" *Id.* quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993) (internal edits omitted).

The Complaint pleads no facts suggesting that the Conservancy even had knowledge of Dubash's religion at the time of the demonstrations. Moreover, the alleged conduct was related to maintaining order in Discovery Green, and affected conduct related to animal cruelty, not religious exercise. Tellingly, Plaintiff Harsini makes no Free Exercise claim but alleges that the same conduct violated his free speech rights. Plaintiffs put forth no basis supporting a Free Exercise claim other than the Complaint's allegation that Dubash feels that his religion compels him to encourage the public to be kind to animals. This fails to plead a Free Exercise claim.

Lastly, Plaintiffs are entitled to no damages against the City because they fail to assert a *Monell* claim against it, for the reasons discussed above. Likewise, they fail to assert a claim against the Conservancy because they fail to establish a widespread custom or policy of discrimination on the part of a policymaker. "Private employers are not liable under § 1983 for the constitutional torts of their employees . . . , unless the plaintiff proves that 'action pursuant to official *policy* of some nature caused a constitutional tort.'" *Rojas v. Alexander's Dep't Store, Inc.*,

924 F.2d 406, 408 (2d Cir. 1990) (quoting *Monell*, 436 U.S. at 691). Because Plaintiffs have alleged no such policy, they cannot prevail in a claim for damages against the Conservancy.

**F.**      **Count Six Fails Because Plaintiffs do not allege a claim under the Texas RFRA.**

The TRFRA provides that "a government agency may not substantially burden a person's free exercise of religion," unless the "government agency demonstrates that the application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest." TEX. CIV. PRAC. AND REMEDIES CODE §§ 110.003(a) and (b). "Government agency" is defined as "(A) this state or a municipality or other political subdivision of this state; and (B) any agency of this state or a municipality or other political subdivision of this state, including a department, bureau, board, commission, office, agency, council, or public institution of higher education." *Id* at § 110.001(a)(2).

"Under TRFRA, the plaintiff bears the initial burden of showing that the government is substantially burdening his free exercise of religion." *Sanchez v. Saghian*, 2009 Tex.App. LEXIS 7944, *24 (1st Ct. Apps.—Houston, Oct. 8, 2009, no pet.). The Texas Supreme Court has adopted the analysis articulated in the Fifth Circuit's opinion in *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004), addressing the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"), that "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009) (quoting *Adkins*, 393 F.3d at 570). "A governmental action or regulation does not rise to the level of a substantial burden on religious freedom if it 'merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.'" *Hill v. Cruz*, 2006 U.S. Dist. LEXIS 69094, *4 (S.D.Tex. Sep. 26, 2006) (quoting

*Adkins*, 393 F.3d at 570); *see also San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004) (in context of RLUIPA claim, "a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.")

Dubash does not articulate a TRFRA claim. First, the Conservancy does not fall within the definition of "Government Agency." Thus, no claim lies against it. As for the City, for the reasons discussed, Plaintiffs have not alleged control over management of Discovery Green. Turning to the merits, Dubash fails to meet his burden of demonstrating that he is substantially burdened in the exercise of his religion. While he claims to be a devout follower of Hinduism, he fails to state how his religious convictions *compel* him to show violent videos of animal torture on body-worn television screens at Discovery Green. To the contrary, the Complaint alleges only that he believes he feels they are the "most effective way" of spreading his message (Compl. p. 39, ¶ 251). In other words, Dubash would simply *prefer* to use the violent videos. His legal conclusion that not wearing television screens in Discovery Green places a "substantial burden" on his ability to practice his religion fails to articulate any facts sufficient to satisfy *Twombly* and *Iqbal*.

Even if the restrictions imposed on Plaintiffs' conduct arguably impacted Dubash's ability to practice his faith, it hardly amounts to a "substantial" burden. Dubash is not claiming that by being prohibited from broadcasting his videos, he is somehow violating the tenets of his religion. Nor does he claim that he is being pressured to "significantly modify his religious behavior." Dubash fails to show a substantial burden on his religious exercise.

## G.    Count Seven for False Arrest Fails.

Dubash allege that the Officers wrongly arrested him after he continually refused to leave Discovery Green after being repeatedly asked to do so by management. As discussed below, the Officers unquestionably are entitled to qualified immunity on this claim. However, they are also

entitled to dismissal on the merits. Again, Plaintiffs' rights under the First Amendment were not violated. The Officers were responding to a request by Discovery Green management when Plaintiffs were refusing to leave. "An officer may rely on a statement by a witness to supply probable cause." *Cf. Bennett v. City of Grand Prairie*, 883 F.2d 400, 405-06 (5th Cir. 1989) (concluding that probable cause for a warrant can be found based on hearsay, information from informants, or circumstantial evidence if the affiant believes or appropriately accepts the information as true); *Shadley v. Grimes*, 405 Fed. Appx. 813, 815 (5th Cir. 2010) (per curiam) (stating that an officer had probable cause when "nothing in [the witness's] demeanor, appearance, or account caused [the officer] to believe or suspect that [the witness] was wrong or lying"). *See also Jordan v. Brumfield*, 687 Fed. Appx. 408, 413 (5th Cir. 2017).

Moreover, as discussed above, neither named Officer was involved in Dubash's arrest, which conclusively belies this cause of action. Without articulating direct involvement by the Officers, Dubash may not maintain a claim against them. Plaintiffs' rhetoric found in this cause of action, consistent with that which permeates the entire Complaint, is that the Officers sought to "punish" Dubash because of his "speech or the viewpoint the speech expresses." (Compl. p. 41, ¶ 264). This unsubstantiated refrain has no more purchase in this cause of action than it does elsewhere in the Complaint. Because the Officers were entitled to rely on statements by Discovery Green employees that Plaintiffs were trespassing, there is no basis for a false arrest claim.

**H.      The Eighth Cause of Action, for Unlawful Delegation, Is Meritless.**

Plaintiffs' Eighth Cause of Action for Unlawful Delegation, is baseless. Plaintiffs contend that by allowing the Conservancy to set rules of conduct, the City, or HDPC, has improperly delegated the power to operate Discovery Green. However, Discovery Green is subject to the control of the HDPC. As the Complaint states, the Conservancy operates Discovery Green

pursuant to an operating agreement. A copy of that agreement is annexed hereto as **Exhibit B**. *See Sullivan*, 600 F.3d at 546 (document is "referred to in the plaintiff's complaint and [is] central to the plaintiff's claim."). That agreement requires the Conservancy to comply with all applicable laws (p. 6, ¶ 4.2), and to establish reasonable rules that are, *inter alia*, "non-discriminatory to the full extent required by Applicable Laws" (p. 6, ¶ 4.3). The agreement also provides for a procedure for compliance with the Texas Open Records Act (p. 19, ¶ 15.2).

Plaintiffs' theory that Discovery Green is entitled to legislate without any "meaningful constraints or any objective and definite standards" is baseless. The same rules that Plaintiffs rely upon in their Complaint set forth that "[t]hese Park Rules are in addition to, and not in lieu of, any Federal or State laws, rules or regulations, or any City of Houston Ordinances." Park Rules § 1.1.5. They likewise note that the rules "shall be subordinate and inferior to the provisions of all laws, rules, regulations and ordinances promulgated by higher authority." *Id.* § 1.1.6. In other words, the Rules do not purport to supersede federal and constitutional rights.

Further, insofar as Discovery Green is operating a public facility, the Conservancy would be acting under color of state law, thereby subjecting it to claims under 42 U.S.C. § 1983. *See Rosborough v. Management & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (noting the proper delegation of the operation of prisons to private entities, and noting that those private entities are "therefore subject to limitations imposed by" the Constitution). Lastly, like with the other claims against the City, there are no facts here that suggest the City has, itself, delegated any authority it had. Thus, Plaintiffs fail to state a claim that the City has improperly delegated its authority to the Conservancy or anyone else.

**POINT TWO**

**OFFICERS WHITWORTH AND DOUGLAS ARE ENTITLED TO QUALIFIED
IMMUNITY.**

The named police officer are entitled to dismissal because the allegations in the Complaint conclusively demonstrate that they should prevail in a qualified immunity defense. "Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 418 (5th Cir. 2023) (quoting *Cunningham v. Castloo*, 983 F.3d 185, 190 [5th Cir. 2020]). "It protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Cunningham*, 983 F.3d at 190). "When a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery" *Longoria v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019). "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 [2011]). "Ultimately, the central concern is whether the official has fair warning that his conduct violates a constitutional rights." *Id.* (quoting *Clarkston v. White*, 943 F.3d 988, 993 [5th Cir. 2019]).

However, "[a] plaintiff does not overcome qualified immunity by merely alleging 'that a violation has arguably occurred.'" *Thomson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Connelly v. Comptroller of the Currency*, 876 F.2d 1209, 1212 [5th Cir. 1989]). Rather, "'[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 743). This applies to determinations of

24

whether a police officer has probable cause to make an arrest. The Court must determine if an officer "could have reasonably thought his actions were lawful, as 'police officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to qualified immunity.'" *Reitz v. Woods*, 85 F.4th 780, 792 (5th Cir. 2023) (quoting *Mangieri v. Clifton*, 29 F.3d 1012, 1017 [5th Cir. 1994]) (internal edits and citation omitted). "To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense." *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994).

Likewise, "[t]he probable cause issue must be analyzed under the 'totality of the circumstances' as to whether there is a 'fair probability' that a crime occurred." *U.S. v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (quoting *U.S. v. Antone*, 753 F.2d 1301, 1304 [5th Cir. 1985]). "In short, the requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark.'" *Id.*

There is no question here that the Officers are entitled to qualified immunity. First, as discussed, the Officers were not involved in Dubash's arrest, thereby negating any theory that they violated Dubash's rights. Moreover, Plaintiffs' underlying allegations are deficient on their merits for multiple reasons, as discussed above. That is, Plaintiffs have failed to articulate that their rights under the First Amendment and the TRFRA have been violated. Thus, Plaintiffs fail the first prong of the qualified immunity analysis, which is "'whether a constitutional right would have been violated on the facts alleged.'" *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (quoting *Saucer v. Katz*, 533 U.S. 194, 200 (2001).

Second, the Complaint fails the objective unreasonableness standard. Plaintiffs misconstrue why Officer Ta arrested Dubash. He was not making a decision to arrest because he disliked Dubash's speech. Rather, he arrested him for trespassing. (Compl. p. 21, ¶ 127). Officer

Ta had probable cause to arrest Dubash because "the manager [Barry Mandel, via Floyd Willis] told them that [Dubash] was on [Discovery Green] property, had been asked to leave, and had not done so." *See Bodzin v. Dallas*, 768 F.2d 722, 724 (5th Cir. 1985). Moreover, the Offense report prepared by Officer Ta reflects that he contacted the District Attorney's Office, who "accepted" the trespass charge, further supporting qualified immunity here (Exhibit C). *See Perry v. Mendoza*, 83 F.4th 313, 318 (5th Cir. 2023) (fact that prosecutor advised before arrest should be considered in determining officer's entitlement to qualified immunity).

Plaintiffs argue that the Officers should have known better, since Plaintiffs believe they were being asked to leave because of their speech. However, the Officers were within their rights to rely on statements by Discovery Green that it was a private park and that Plaintiffs were refusing an order to leave. *Bodzin* found that two arresting officers were entitled to qualified immunity where a property manager claimed that property on which the plaintiff was standing was private, whereas it was actually public property. *Bodzin*, 768 F.2d at 724. The plaintiff had claimed that the arresting officers could not reasonably accuse him of trespassing "without first ascertaining the location of the property line from official sources, and thus did not have probably cause to believe that he was on private property." *Id.* at 725. The Fifth Circuit "decline[d] to engraft such a universal insistence upon the essentially ad hoc inquiry into probable cause," and afforded the officers qualified immunity. *Id.* In reaching its holding, the court relied upon *Saldana v. Garza*, 684 F.2d 1159 (5th Cir. 1982), where the Fifth Circuit affirmed a qualified immunity defense where the plaintiff claimed he was arrested for public intoxication while standing in his own driveway. The court held that the Officers "cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law." *Id.* at 1165.

Here, if Discovery Green were private property, Plaintiffs would ostensibly have no First Amendment rights, and could be ejected even if, *arguendo*, the rationale was that Discovery Green disapproved of their "speech." *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569 (1972). Regardless, as discussed above, no matter how self-evident and all-encompassing Plaintiffs claim their rights to be, the actual question here would have required the Officers to have an awareness of the legal status of property *and* possess "a legal scholar's expertise in constitutional law."

The Complaint surmises that the Officers "understood" both that Discovery Green is a "public park," and that the "sole basis" for Dubash's arrest was the "content of his speech." (Compl. p. 41, ¶¶ 261-62). These allegations are conclusory, and are inconsistent with the Complaint's allegations that the officers were told the property was private, and that the sole reason for Dubash's arrest was his refusal to leave after being asked multiple times by management to stop playing the videos. Thus, these allegations are nothing more than "labels and conclusions," insufficient to meet pleading standards. *See Twombly*, 550 U.S. at 555.

Lastly, even if Plaintiffs had satisfactorily pled a First Amendment violation on the part of any of the defendants, such violations were hardly contrary to "clearly established" law. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Plaintiffs' right to show violent videos in Discovery Green was *not* clearly established as illustrated by the complex framework of First Amendment analysis required to defeat each of the defenses. That is, in order to overcome dismissal, Plaintiffs must show that Discovery Green is a traditional public forum, that Plaintiffs' conduct was more than non-expressive conduct, that restricting their right to display violent videos was not a legitimate time, place, and manner restriction, that the restriction was not a narrowly tailored means of advancing a compelling governmental interest, and that Plaintiffs were being discriminated against based on their viewpoint. However, "[p]olice officers are not required to be

legal scholars." *Williams v. Jaglowski*, 269 F.3d 778, 783 (7th Cir. 2001). The analysis is whether the officers "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed" later. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). For these reasons, Plaintiffs fail to surmount the Officers' unambiguous entitlement to qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion, and dismiss the Complaint against them for failure to state a claim.

Respectfully submitted,

s/ Andrew S. Holland
**Andrew S. Holland**
TX Bar No. 24134330
Fed. Bar No. 3860674
Andrew.holland@wilsonelser.com
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
909 Fannin St., Suite 3300
Houston, TX 77010
713-353-2000 tel
713-785-7780 fax

**Attorneys for Defendants City of Houston, Texas, Officer Robert Douglas (# 7943), Officer Vern Whitworth (# 7595), Discovery Green Conservancy, and Barry Mandel**

## CERTIFICATE OF SERVICE

I, Andrew S. Holland, certify that today, January 5, 2024, I filed the within Rule 12(b)(6) motion with CM/ECF, for filing and service upon all attorneys who have appeared.

s/ Andrew S. Holland
ANDREW S. HOLLAND