**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DARAIUS DUBASH and<br>DR. FARAZ HARSINI,<br><br>*Plaintiffs,*<br><br>v.<br><br>CITY OF HOUSTON, TEXAS;<br>HOUSTON DOWNTOWN PARK<br>CORPORATION;<br>and<br>DISCOVERY GREEN CONSERVANCY<br>f/k/a HOUSTON DOWNTOWN PARK<br>CONSERVANCY;<br><br>*Defendants.* | CASE NO. 4:23-cv-03556 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
**[ECF 15 & 17]**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I.    Showing Videos While Demonstrating on a Public Issue Is Protected Expression. .......... 2

    II.   Defendants Fail to Address Their Blanket Ban on Plaintiffs' Expression, Let Alone Rebut Its Presumptive Unconstitutionality as a Prior Restraint. ......................................................... 4

    III.  Discovery Green, as "a Dedicated Public Park," Is a Traditional Public Forum................ 4

    IV.  Defendants' Content- and Viewpoint-Based Ban on Speech Fails Strict Scrutiny. ........... 6

        A.   Defendants' own words show their ban on Plaintiffs' advocacy is content based and they fail to overcome strict scrutiny....................................................................................... 7

        B.   Defendants cannot escape that their ban is viewpoint-driven...................................... 10

    V.    Defendants Violated Mr. Dubash's Religious Rights......................................................... 12

    VI.  Injunctive Relief Properly Runs Against the City and Park Corporation. ........................ 15

    VII. Irreparable Harm Is Clear. .............................................................................................. 17

CONCLUSION................................................................................................................ 17

CERTIFICATE OF SERVICE ....................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Adkins v. Kaspar*,
   393 F.3d 559 (5th Cir. 2004) ........................................................................ 12

*Animal Legal Def. Fund v. Wasden*,
   878 F.3d 1184 (9th Cir. 2018) ........................................................................ 9

*Audler v. CBC Innovis Inc.*,
   519 F.3d 239 (5th Cir. 2008) ........................................................................ 4

*Barr v. City of Sinton*,
   295 S.W.3d 287 (Tex. 2009) ........................................................................ 12, 14

*Bennett v. City of Slidell*,
   735 F.2d 861 (5th Cir. 1984) ........................................................................ 16

*Boos v. Berry*,
   485 U.S. 312 (1988) ........................................................................ 9

*Brown v. Ent. Merchs. Ass'n*,
   564 U.S. 786 (2011) ........................................................................ 2, 3

*Cath. Leadership Coal. of Tex. v. Reisman*,
   764 F.3d 409 (5th Cir. 2014) ........................................................................ 4

*City of Ladue v. Gilleo*,
   512 U.S. 43 (1994) ........................................................................ 9

*Clark v. Cmty. for Creative Non-Violence*,
   468 U.S. 288 (1984) ........................................................................ 3

*Cohen v. California*,
   403 U.S. 15 (1971) ........................................................................ 8

*Erznoznik v. City of Jacksonville*,
   422 U.S. 205 (1975) ........................................................................ 8

*Evans v. Newton*,
   382 U.S. 296 (1966) ........................................................................ 16, 17

*First Unitarian Church of Salt Lake City* v. *Salt Lake City Corp.*,
   308 F.3d 1114 (10th Cir. 2002) ........................................................................ 16, 17

*Fulton v. City of Philadelphia*,
    141 S. Ct. 1868 (2021) .................................................................................... 14, 15

*Hague Comm. For Indus. Org. v. CIO*,
    307 U.S. 496 (1939) ................................................................................................ 5

*Hotel Emps. & Rest. Emps. Union, Loc. 100 v. City of N.Y. Dep't of Parks & Rec.*,
    311 F.3d 534 (2d Cir. 2002) .................................................................................... 5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
    515 U.S. 557 (1995) ................................................................................................ 4

*Joseph Burstyn, Inc. v. Wilson*,
    343 U.S. 495 (1952) ........................................................................................... 2, 3

*Loper v. New York City Police Dep't*,
    999 F.2d 699 (2d Cir. 1993) .................................................................................. 10

*Marsh v. Alabama*,
    326 U.S. 501 (1946) .............................................................................................. 16

*Matal v. Tam*,
    582 U.S. 218 (2017) .............................................................................................. 10

*McCullen v. Coakley*,
    573 U.S. 464 (2014) .............................................................................................. 10

*Merced v. Kasson*,
    577 F.3d 578 (5th Cir. 2009) ........................................................................... 13, 14

*Milestone v. City of Monroe*,
    665 F.3d 774 (7th Cir. 2011) ............................................................................... 8, 9

*Minn. Voters All. v. Mansky*,
    138 S. Ct. 1876 (2018) ........................................................................................ 6, 7

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ................................................................................................ 7

*Se. Promotions, Ltd. v. Conrad*,
    420 U.S. 546 (1975) .............................................................................................. 10

*Neb. Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) ................................................................................................ 4

*Org. for a Better Austin v. Keefe*,
402 U.S. 415 (1971)...................................................................... 4

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
460 U.S. 37 (1983).......................................................................... 5

*Rowan v. United States Post Office*,
397 U.S. 728 (1970)..................................................................... 8, 9

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
547 U.S. 47 (2006).......................................................................... 3

*Sanchez v. City of Austin*,
774 F.3d 873 (5th Cir. 2014) ........................................................ 17

*Snyder v. Phelps*,
562 U.S. 443 (2011)..................................................................... 2, 8

*Texas v. Johnson*,
491 U.S. 397 (1989)................................................................... 3, 10

*United States ex rel. Miniex v. Houston Hous. Auth.*,
No. 21-20435, 2023 WL 6174416 (5th Cir. Sept. 22, 2023) ......... 17

*United States v. Marcavage*,
609 F.3d 264 (3d Cir. 2010)........................................................... 9

*United States v. Stevens*,
559 U.S. 460 (2010)..................................................................... 2, 8

*Wisconsin v. Yoder*,
406 U.S. 205 (1972)...................................................................... 13

**Statutes**

Tex. Civ. Prac. & Rem. Code § 110.001(a)(1) ............................. 13

Texas Religious Freedom Restoration Act ........................ 12, 13, 14, 15, 17

**Other Authorities**

@Ariana_noGrande, X (May 27, 2022, 3:33 PM) ......................... 12

Chaz Miller, *Houston leaders taking safety precautions as city prepares for the NRA convention and protests*, ABC 13 (May 26, 2022)......................................... 6

iv

Discovery Green, *Event: Everybody's Favorite BBQ & Hot Sauce Festival—Feb. 23, 2024* ....... 9

loloalexia93, TikTok (Apr. 1, 2023) ............................................................................................. 12

Michael Hardy, "Most Texas Republican Politicians Avoided the NRA Convention in Houston. But Democrats Poured In," Texas Monthly (May 27, 2022) .................................................... 12

Raj Mankad, *[Where's the] Revolution: The Changing Landscape of Free Speech in Houston*, Cite Magazine (Fall 2009) ......................................................................................................... 6

*Webster's Third New International Dictionary* ............................................................................ 12

## INTRODUCTION

Defendants' response confirms this case is about an unconstitutional, content-based prior restraint on expression in a public park. They do not dispute that they have banned Plaintiffs' video-based animal rights advocacy at Discovery Green park in Houston. And they confess that their ban targets what they consider "videos depicting violence against animals." ECF 41 (Defs.' Br.) at 15. That is a naked restriction on content and viewpoint.

Defendants' censorship flouts the vital First Amendment protection for public parks as traditional public forums. Discovery Green is no exception. The park rules call it a "dedicated public park." And Defendants admit, like all public parks, "Discovery Green has a tradition of promoting freedom of expression." Defs.' Br. 9. Yet they make no effort to overcome the presumption against prior restraints or meet the strict scrutiny required for content restrictions.

The justifications Defendants do offer fail. For instance, they argue that Plaintiffs' videos are not expressive. Yet that defies both the clear expressive nature of videos and longstanding Supreme Court precedent upholding First Amendment protection for film. Likewise, the Supreme Court and other courts have repeatedly rejected the interests Defendants identify as supporting their blanket ban, like protecting children and parkgoers from speech some might find offensive. And the facts show Defendants' interests are little more that pretext for censoring Plaintiffs' videos because Defendants do not like the message. They allow a host of expression at Discovery Green that some might find disruptive or offensive, yet they target Plaintiffs' expression alone.

To stop Defendants' ongoing First Amendment violation, Plaintiffs ask the Court to enjoin the City and its police, the Park Corporation charged with maintaining Discovery Green as a public park, and the Conservancy that manages the park from censoring Plaintiffs' protected expression.

## ARGUMENT

**I.     Showing Videos While Demonstrating on a Public Issue Is Protected Expression.**

Time and again, courts have affirmed First Amendment protection for movies, video games, and similar content. *E.g.*, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952) (First Amendment protects motion pictures); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (First Amendment protects video games). That makes sense—no different from the written or spoken word, videos communicate a message. *Brown*, 564 U.S. at 790. And First Amendment protection for videos is especially strong when they concern public issues, like Plaintiffs' videos showing industrial animal agricultural practices. *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011).

Defendants do not contend that Plaintiffs' videos fall into one of the few categories of unprotected speech, like incitement to violence or true threats. Nor could they. *United States v. Stevens*, 559 U.S. 460, 468 (2010) (rejecting that "depictions of animal cruelty, as a class, are categorically unprotected by the First Amendment"). *Stevens* affirms that the First Amendment even protects expression that lacks "serious value"—something that Plaintiffs' expression does not lack. *Id.* at 480. Plaintiffs seek to educate the public by displaying clips from the documentary *Dominion* showing true industrial animal practices, certainly a matter of public concern. ECF 15 ("Pls.' Br.") Ex. G, Dubash Decl. ¶¶ 17–19, 21-22. Even a cursory view of *Dominion*, provided both in Plaintiffs' complaint and principal brief, confirms this. ECF 1, Compl. at 9 n. 4; Pls.' Br. 6 n. 18.[1]

Despite the settled First Amendment protection for movies and advocacy on matters of public concern, Defendants argue that Plaintiffs' videos are "non-expressive conduct." The Court

---

[1] Defendants complain that Plaintiffs fail to attach the specific clips from *Dominion* they show. Defs.' Br. 6. But whether the full movie or excerpts from it, *Dominion* is protected expression. *See Stevens*, 559 U.S. at 468.

should reject that dangerous argument and instead apply cases like *Burstyn*, *Brown*, and *Snyder* in finding that the First Amendment protects Plaintiffs' expression. At bottom, Defendants mistake *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006) (*FAIR*), as narrowing protection for expressive conduct. Defs.' Br. 10–12. *FAIR* did not do so.

Nothing in *FAIR* limits First Amendment protection for videos. Nor does it override the principle that context and intent inform whether the First Amendment protects expressive conduct. *Texas v. Johnson*, 491 U.S. 397, 405 (1989); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984). Not only are Plaintiffs' videos pure expression as decisions like *Burstyn* and *Brown* confirm, but when shown in the context of an animal advocacy demonstration in a public park, their expressive nature is beyond doubt. Indeed, holding monitors showing videos is no different than holding a picket sign. Both are "reasonably [ ] understood by the viewer to be communicative," and that suffices to trigger First Amendment protection. *Clark*, 468 U.S. at 294.

At its core, *FAIR* is a compelled-speech case, not one limiting protection for expressive conduct. 547 U.S. at 62–65. And although the Supreme Court considered speech explaining conduct when assessing First Amendment protection in the specific context of the case, *id.* at 66, it did not establish a rule that explanatory speech renders expressive conduct unprotected. By contrast, an explanation often augments the message conveyed by inherently expressive conduct.

That is another reason the Court should refuse Defendants' arguments, including their claim Plaintiffs lack First Amendment protection because the *Dominion* clips show what Plaintiffs oppose. Defendants' reasoning would strip First Amendment protection for a host of political speech, satire, and other speech on public issues. Take most modern day political ads—they do not lose constitutional protection if they focus on an opponent's flaws instead of the candidate's platform. And even if passersby interpret Plaintiffs' advocacy differently, the First Amendment

still protects it, contrary to Defendants' view (Defs.' Br. 10–11). *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569 (1995) ("[A] narrow, succinctly articulable message is not a condition of constitutional protection."). Because Plaintiffs' display of their videos is protected, Defendants cannot justify imposing a prior restraint on their protected expression in a public park.

## II.  Defendants Fail to Address Their Blanket Ban on Plaintiffs' Expression, Let Alone Rebut Its Presumptive Unconstitutionality as a Prior Restraint.

In their motion, Plaintiffs explain why Defendants' blanket ban on their expression is a prior restraint. Pls.' Br. 18-19. Yet not once do Defendants contest that prior restraint, the "most serious and least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Thus, they have failed to rebut the presumption that prior restraints violate the Constitution. *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).[2]

At most, Defendants insist that Mr. Dubash and Dr. Harsini may protest against animal abuse if they do it "without the silent videos of violence against animals." Defs.' Br. 14, 17 (Plaintiffs are "free to speak their message at Discovery Green, with the sole caveat that they [may] not show the videos."). But that is still a prior restraint against their First Amendment right to express themselves through silent video. *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 437 (5th Cir. 2014) (cleaned up) (defining prior restraint as a governmental order "forbidding certain communications when issued in advance of the time that such communications are to occur"). No matter how Defendants spin it, they have banned Plaintiffs' protected expression from a public park. There are few constitutional violations so brazen. The Court should enjoin that ban.

## III.  Discovery Green, as "a Dedicated Public Park," Is a Traditional Public Forum.

Try as they may, Defendants cannot dodge a core First Amendment principle: Public parks,

---

[2] Defendants also have waived the issue by "fail[ing] to adequately brief it." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

like Discovery Green, are quintessential traditional public forums, having "immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague Comm. For Indus. Org. v. CIO*, 307 U.S. 496, 515 (1939); *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague* in recognizing parks as "quintessential public forums."). As Defendants attest, "Discovery Green has a tradition of promoting freedom of expression." Defs.' Br. 3. Indeed, Discovery Green has consistently hosted protests, drag shows, cultural celebrations, and other expressive activity. Pls.' Br. 3-4. This all tracks the City's purpose in dedicating Discovery Green for use as a public park. *See* ECF 41-5, Park Rules at 9, § 1.2.2(p) ("PARK shall mean DISCOVERY GREEN park, a dedicated public park owned by the Houston Downtown Park Corporation and operated under contract by the Conservancy.").

To that end, Defendants wrongly rely on *Hotel Employees*. Defs.' Br. 7–9 (discussing *Hotel Emps. & Rest. Emps. Union, Loc. 100 v. City of N.Y. Dep't of Parks & Rec.*, 311 F.3d 534 (2d Cir. 2002)). There, the Second Circuit held that Lincoln Center Plaza, the "centerpiece" of a performing arts complex, was not a traditional public forum as the plaintiff "ha[d] not established that the Plaza has been designated as a public park by the city." *Id.* at 540, 548. For instance, the plaintiff failed to show "express provisions in a deed or legislative enactment or by implied acts, such as the continued use of the parcel as a park." *Id.* at 548 (citation and internal quotation omitted).

Whether Lincoln Center Plaza is a public park may be a hard issue. Whether Discovery Green Park is a public park is not. Both "express provisions in a deed or legislative enactment" as well as "implied acts, such as the continued use of the parcel as a park" show that Discovery Green is a public park. *Hotel Emps.*, 311 F.3d at 548. Again, the City dedicated Discovery Green as a

public park. What's more, the 2004 deed of the land to the Park Corporation covenants that the "property shall be used solely as an urban public park of high quality." Pls.' Br. Ex. C, Special Warranty Deed from City of Houston to Houston Downtown Park Corporation § 2(b)(i). And the operating agreement term between the Park Corporation and the Conservancy is 50 years from "the date of the Park Dedication." ECF 41-7, Operating Agreement, at 5, § 3.1; *cf. id.* at 44.

Defendants attempt to side-step the principle that public parks are traditional public forums through self-serving statements that Discovery Green "is not a typical public park." Defs.' Br. 2; *see also* ECF 41-4, Mandel Decl. ¶ 5 (Discovery Green "would be different from just a public park"). But they point to nothing in the deed, operating agreement, or the articles of incorporation in support. Nor can they evade how the public has consistently used Discovery Green as a traditional public forum—at times with the City's help.[3] In fact, former Conservancy president, Guy Hagstette, confirmed just after Discovery Green opened in 2008 that "first and foremost [Discovery Green] is a public park,' and that 'we have to abide by any law that governs how parks are managed,' including the First Amendment."[4] His words underscore why Discovery Green is a traditional public forum where Defendants cannot censor messages they dislike.

## IV.    Defendants' Content- and Viewpoint-Based Ban on Speech Fails Strict Scrutiny.

As Plaintiffs explained in their motion, "[i]n a traditional public forum . . . the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018); Pls.' Br. 19–21. Defendants' own words and

---

[3] Chaz Miller, *Houston leaders taking safety precautions as city prepares for the NRA convention and protests*, ABC 13 (May 26, 2022), https://abc13.com/national-rifle-association-nra-convention-houston-gun-meetingprotests/11897928/ [https://perma.cc/HK4S-Z6KH].

[4] Raj Mankad, *[Where's the] Revolution: The Changing Landscape of Free Speech in Houston*, Cite Magazine (Fall 2009) at 34,  https://offcite.rice.edu/2009/11/Cite_80_Wheres-the-Revolution_Mankad.pdf.

practices show their ban on Plaintiffs' speech is both content- and viewpoint-based, and they cannot satisfy their high burden to meet strict scrutiny.

### A.   Defendants' own words show their ban on Plaintiffs' advocacy is content based and they fail to overcome strict scrutiny.

*Nine* times in their brief, Defendants either color Plaintiffs' videos as showing "violence against animals" (or a similar description) or insist they are censoring Mr. Dubash and Dr. Harsini because they believe those videos show "violence against animals." Defs.' Br. 1, 3, 11, 14, 18, 23, 24. Yet Defendants maintain that their ban is content-neutral, even accusing Plaintiffs of a "fundamental misapprehension of the difference between the content of speech and the nature of conduct." *Id.* at 5. Their position defies both the English language and the Supreme Court's holding that a regulation is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). It also defies evidence like Officer Douglas ordering Plaintiffs, "if you are showing offensive material [Discovery Green management] does not like, you can't be here,"[5] and park manager Floyd Willis telling Plaintiffs, "[W]e don't feel the content is appropriate."[6]

Because Defendants are censoring Plaintiffs at Discovery Green based on the content of the videos, their ban is not a content-neutral time, place, or manner restriction. *See* Defs.' Br. 5. Thus, Defendants must satisfy strict scrutiny. *Mansky*, 138 S. Ct. at 1885. But they cannot. Indeed, their brief refuses to address strict scrutiny at all. *See* Defs.' Br. 13–16.

While Defendants assert some governmental interests in stifling Plaintiffs' expression, none are compelling. For instance, there is no compelling interest in "preventing children from being subjected to videos depicting violence against animals in a context where their parents could

---

[5] Pls.' Br. Ex. H, Harsini Decl. ("Harsini Decl."), Ex. 3 at 00:03:04.

[6] *Id.,* Ex. 2 at 00:01:28.

not avoid the videos and still use the amenities." Defs.' Br. 14. Plaintiffs were engaged in constitutionally protected speech on a matter of public concern in a traditional public forum. *See Stevens*, 559 U.S. at 468; *Snyder*, 562 U.S. at 451–52. Nor does the presence of children in a public area strip speech of constitutional protection. If the First Amendment protected a man wearing a jacket with "Fuck the Draft" in a courthouse with "women and children present," then it surely protects Plaintiffs showing videos of industrial animal practices in a traditional public forum. *Cohen v. California*, 403 U.S. 15, 21 (1971); *see also Erznoznik v. City of Jacksonville,* 422 U.S. 205, 213–15 (1975) (invalidating ordinance that prohibiting showing films containing nudity by a drive-in theater, even though children could see the screen from a public place).

At bottom, Defendants' reliance on "protecting children" is not a compelling interest, but a pretext for censoring content they do not like. For instance, Discovery Green has been "very proud" to display art featuring nudity, even over complaints about children seeing the art.[7]

In the same way, Defendants have no compelling interest in censoring content to prevent others from being "forcibly exposed" to Plaintiffs' videos. As the Supreme Court explained in *Cohen*, those in public spaces can "effectively avoid further bombardment of their sensibilities simply by averting their eyes." 403 U.S. at 21 (noting that there is even less of a "recognizable privacy interest" when "strolling through Central Park" than when in a courthouse). Thus, there is no interest in "shut[ing] off discourse solely to protect others from hearing it" absent "substantial privacy interests" such as in one's own home. *Id.*

That is why Defendants' reliance on cases like *Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011) and *Rowan v. United States Post Office*, 397 U.S. 728, 738 (1970) is off target.

---

[7] Carol Christian, *Art or porn? Discovery Green statues raise eyebrows, discussion*, Houston Chronicle, (Sep. 24, 2014), https://www.chron.com/houston/article/Discovery-Green-s-nude-statues-have-park-visitors-5777892.php.

Defs.' Br. 15, 18. Those cases covered invading another's home with unwanted mail (*Rowan*) and preventing abuse at a senior home (*Milestone*). A public park, long held in the public trust for public debate, is no private home or senior living facility. Defendants cannot censor expression on public issues in a public park just because it might shock some, even under the guise of a time, place, or manner restriction. *Boos v. Berry*, 485 U.S. 312, 320–21 (1988) ("regulations that focus on the direct impact of speech on its audience" are not valid time, place, and manner restrictions); *United States v. Marcavage*, 609 F.3d 264, 283, 290–91 (3d Cir. 2010) (no compelling interest in censoring "vivid depictions of mutilated fetuses" even if "jarring, their shock value unmistakable").

Defendants' blanket ban also fails narrow tailoring. A blanket ban on videos showing "violence against animals" is overinclusive, prohibiting videos of cheetahs hunting gazelles or a showing of *Bambi*. Nor do Defendants neutrally apply the ban. They object to protestors "display[ing] a slaughtered animal carcass," Defs.' Br. 16, while Discovery Green hosts "Everybody's Favorite BBQ & Hot Sauce Festival" that invites the public to view many slaughtered animal carcasses "that highlight[] the aroma of America's best barbecue vendors."[8] The ban is also underinclusive. It censors videos of standard, industrial animal-production practices but allows photographs of the same. *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994)).

Defendants even suggest their blanket ban on videos "depicting animal violence" is narrowly tailored because "Plaintiffs could [ ] continue to show their videos on the public sidewalk less than 300 feet away. . . ." Defs.' Br. 14. That is wrong in both law and fact. Above all, "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that

---

[8] Discovery Green, *Event: Everybody's Favorite BBQ & Hot Sauce Festival—Feb. 23, 2024*, https://www.discoverygreen.com/event/everybodys-favorite-bbq-hot-sauce-festival/ (last visited Jan. 9, 2024)

it may be exercised in some other place." *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975) (citation omitted). And so completely exiling speech from a traditional public forum does not satisfy intermediate scrutiny, let alone strict scrutiny. *See Loper v. New York City Police Dep't*, 999 F.2d 699, 705 (2d Cir. 1993) (holding a total ban on expressive conduct does not meet intermediate scrutiny's "incidental limitation" element). What's more, the evidence undermines Defendants' argument: A park manager ordered Plaintiffs off the public sidewalk bordering Discovery Green when they tried to show their videos there. Pls.' Br. Ex. G, Dubash Decl. ¶ 39.

Defendants' invocation of a "Speakers' Corner" also fails to meet strict scrutiny. First, the idea that officials can limit expression to one corner of a public park defies the venerable protection for public parks as centers of public discourse. *See McCullen v. Coakley*, 573 U.S. 464, 487, 497 (2014) (striking down "buffer zone" "pushing petitioners well back" from areas of public sidewalks). Second, Defendants admit that Plaintiffs could only demonstrate in the "Speakers' Corner" "without the videos," refuting any suggestion that the "Speakers' Corner" might be a content-neutral time, place, and manner restriction. ECF 41-1, Lott Decl. ¶ 17. Third, Defendants' 27-point Park Map, which labels the "BP Solar Panels," "Marathon Oil Bike Racks" and "Hagstette Putting Green" does not identify a "Speakers' Corner." ECF 41-6, Park Map. Fourth, there is no evidence that Defendants once raised the "Speakers' Corner" with Plaintiffs.

### B.    Defendants cannot escape that their ban is viewpoint-driven.

Defendants claim that Mr. Dubash's and Dr. Harsini's evidence of viewpoint discrimination are "red herrings." Defs.' Br. 19. But they have no answer for a fundamental First Amendment tenet: When the government censors speech because it deems it offensive, that is unconstitutional viewpoint discrimination. Pls.' Br. 14 (citing *Matal v. Tam,* 582 U.S. 218, 243–44 (2017); *Johnson*, 491 U.S. at 243–44. Defendants made clear when arresting Mr. Dubash that

they objected to the videos because they found them offensive. Harsini Decl. Ex. 3 at 00:04:41. And even now, they object to the videos because they find the content "offensive." *See* ECF 41-2, Wilmer Decl. ¶ 14 (complaining that Plaintiffs "foisted" "offensive material" on park patrons).

So even if Defendants are invoking an interest (or even a Park rule) against "disturbing others" (*see* Defs.' Br. 3, quoting ECF 41-1, Lott Decl. ¶ 6), the facts show they equate "disturbing" with "offending." For one thing, Defendants never invoked any rule prohibiting "disturbing others" (or any other Park rule) when censoring Plaintiffs. Instead, they fixated on the content of Plaintiffs' videos. Harsini Decl. Ex. 2 at 00:01:28. If anything, Defendants' post-lawsuit concerns about "disruption" show just one more pretext for censoring Plaintiffs because Defendants dislike the message. Consider Plaintiffs' public advocacy at Discovery Green:[9]



---

[9] Ex. A, Supp. Decl. of D. Dubash, Ex. 1. *See also id.*, Exs. 2-3.

Compare that to one of many expressive gatherings taking over Discovery Green, complete with signs like "F--- Your Guns," which Defendants did not censor or punish:[10]



This disparity emphasizes how Defendants are censoring Plaintiffs because of their message, not because they are "disturbing" anyone.

## V.    Defendants Violated Mr. Dubash's Religious Rights.

Defendants misrepresent the text of the Texas Religious Freedom Restoration Act and the case law interpreting it. Defs.' Br. 21–24. Under TRFRA, a "substantial" burden turns on whether the burden is "real vs. merely perceived, and significant vs. trivial." *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009).[11] "[T]he focus is on the degree to which a person's religious conduct

---

[10] Michael Hardy, "Most Texas Republican Politicians Avoided the NRA Convention in Houston. But Democrats Poured In," Texas Monthly (May 27, 2022), https://www.texasmonthly.com/news-politics/nra-convention-uvalde-shooting. *See also* @Ariana_noGrande, X (May 27, 2022, 3:33 PM),  https://twitter.com/Ariana_noGrande/status/1530270940319334403 (protestors carrying a casket around Discovery Green); loloalexia93, TikTok (Apr. 1, 2023), https://www.tiktok.com/@loloalexia93/video/7217091221213433134 (clip from a spring 2023 concert at Discovery Green with large video screens and lyrics including "fuck" and "bitch").

[11] Defendants are wrong to say that "[t]he Texas Supreme Court has adopted the [substantial burden] analysis articulated in the Fifth Circuit's opinion in *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004)." Defs.' Br. at 21 (discussing *Barr*, 295 S.W.3d at 301.) *Barr* surveyed interpretations of "substantial burden," and rejected the *Adkins* approach of relying on "RLUIPA's legislative history," *Adkins*, 393 F.3d at 569, in favor of using the "ordinary meaning[] in common parlance" of the term, *Barr*, 295 S.W.3d at 301 (relying on *Webster's Third New International Dictionary*).

is curtailed and the resulting impact on his religious expression." *Id.* Here, Mr. Dubash was *arrested* for his actions, which curtails his religious conduct going forward. *See Wisconsin v. Yoder*, 406 U.S. 205, 207–08 (1972) (holding a five dollar fine was a substantial burden).

Defendants' arguments to the contrary are off base. According to Defendants, Mr. Dubash "fails to state how his religious convictions compel him to show violent videos of animal torture on body-worn television screens at Discovery Green." Defs.' Br. 22; *cf. id.* ("[I]t would appear from his Declaration that that method is *not* a tenet of his religion."). But under TRFRA, courts do not ask whether an act is "a central part or central requirement" of a person's religion. Tex. Civ. Prac. & Rem. Code § 110.001(a)(1). Instead, the question is just whether "an act or refusal to act" is "substantially motivated by sincere religious belief." *Id.* Mr. Dubash has declared, under penalty of perjury, that he participates in "Anonymous for the Voiceless as a way of practicing my faith by promulgating the message of *ahimsa* or not harming animals unnecessarily." Pls.' Br. Ex. G, Dubash Decl. ¶ 16; *see generally id.* ¶¶ 15–17. Defendants give no reason to believe that statement is not sincere. Just as a pacifist Quaker may participate in a secular anti-war march to practice her faith, Mr. Dubash participates in Cubes of Truth for his.

Defendants claim the burden on Mr. Dubash's religious exercise is not substantial because he is still free to "hav[e] conversations with people as he claims his faith requires." Defs.' Br. 23. But under TRFRA, "[t]he relevant inquiry is not whether the governmental regulations substantially burden a person's religious free exercise broadly defined, but whether the regulations substantially burden a specific religious practice." *Merced v. Kasson*, 577 F.3d 578, 591 (5th Cir. 2009) (citing Tex. Civ. Prac. & Rem. Code § 110.001(a)(1)). As Mr. Dubash explains, spreading the teaching of ahimsa is a sincere and core religious exercise of his faith, and he practices that teaching (among other ways) by educating the public in Discovery Green. Pls.' Br. Ex. G, Dubash

Decl. ¶¶ 6-15. A ban on feeding the homeless in downtown would burden a Christian's practice of "feeding the hungry" even if he were still free to serve at a soup kitchen. *See Merced*, 577 F.3d at 591 ("Merced's ability to perform some ceremonies does not mean the city's ordinances do not burden other Santeria practices."). And "a burden on a person's religious exercise is not insubstantial simply because he could always choose to do something else." *Barr*, 295 S.W.3d at 303.

Finally, Defendants fault Mr. Dubash for engaging in his practice "as part of a secular 'animal rights group,' not a religious organization." Defs.' Br. 22–23. "But TRFRA guarantees such protection." *Barr*, 295 S.W.3d at 300. "Just as a Bible study group and a book club are not treated the same, neither are a halfway house operated for religious purposes and one that is not." *Id.* That Mr. Dubash engages in his conduct "for religious reasons" means that he is "entitled to increased protection" than if he acted "for purely secular purposes." *Id.* Defendants may disagree with that policy, but that was the decision the Texas Legislature made.

As to the Free Exercise Clause, Defendants do not even cite *Fulton*, and seem to have missed the legal argument entirely. Pls.' Br. 22. A rule is not generally applicable, and therefore triggers strict scrutiny, if it "permit[s] the government to grant exemptions based on the circumstances." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (internal quotations omitted). The undisputed video evidence shows that Houston police determine whether speech is acceptable through a "mechanism for individualized exemptions," *id*; Harsini Decl., Ex. 3 at 00:11:57 (whether Dubash can express his message is "up to the management"); *id.* at 00:04:41 ("if you are showing offensive material [management] does not like, you can't be here."); *id.* at 00:10:25. (confirming the decision to silence Dubash was the Conservancy president's). Thus, the City of Houston's enforcement of Park Rules is not generally applicable.

14

Defendants contend that strict scrutiny cannot apply because "the Conservancy had no knowledge of Dubash's religion at the time of the demonstrations." Defs.' Br. 24. But neither intent nor knowledge determines whether a government scheme generally applies. Under *Fulton*, the mere *presence* of a "mechanism for individualized exemptions" renders a law not generally applicable. *See* 141 S. Ct. at 1878 ("The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless whether any exceptions have been given[.]").

In any event, the relevant question for the prospective relief requested in this motion is whether Defendants are infringing Mr. Dubash's right *now*. The City, Park Corporation, and Conservancy have known about Mr. Dubash's religious practice since, at minimum, May 2023 when they received the statutorily required TRFRA notice letter that articulated the burden on his religious practice. ECF 1-5 (notice letters with return receipts). Those Defendants continue to prohibit Mr. Dubash's exercise of his religion, failing to meet their burdens under the TRFRA and Free Exercise Clause.

## VI.   Injunctive Relief Properly Runs Against the City and Park Corporation.

This case is about censorship at a public park in Houston. Yet Defendants insist that the Court cannot enjoin the City of Houston and the public corporation it created to own and operate that park because they "have no involvement in the operation of Discovery Green." Defs.' Br. 22, 24–25. That argument defies commonsense: A city is responsible for its public parks. And it would allow local governments to dodge the First Amendment by delegating the operation of public parks to private groups like the Conservancy. The Court should reject Defendants' dangerous argument.

As Plaintiffs explained, their "constitutional injuries were caused by a joint effort between the City, Conservancy, and Park Corporation." Pls.' Br. 17. And the facts prove it. The Park Corporation exists to "accomplish the City's governmental purposes" including "operation and maintenance" of Discovery Green. Pls' Br. Ex. A, Articles of Incorporation, art. IV; Pls.' Br. 5.

The Corporation owns the park land, under the condition that the "property shall be used solely as an urban public park of high quality." Pls. Ex. C, Special Warranty Deed from City of Houston to Houston Downtown Park Corporation § 2(b)(i). This all refutes Defendants' claims that "HDPC has [no] role in the management of Discovery Green." Defs.' Br. 24. As with any owner of land, the Park Corporation has the power to ensure the land is rightly used—in this case, as a public park subject to the First Amendment's full protection—yet they have rubber-stamped censoring Plaintiffs. A preliminary injunction against the Park Corporation is essential to stop ongoing injury to Plaintiffs' First Amendment freedoms. *See, e.g.*, *Evans v. Newton*, 382 U.S. 296, 301 (1966) (Constitution barred racial segregation in city park deeded to private trustees); *Marsh v. Alabama*, 326 U.S. 501, 506 (1946) (private company could not abridge First Amendment rights on streets and sidewalks of company-owned town); *First Unitarian Church of Salt Lake City* v. *Salt Lake City Corp.*, 308 F.3d 1114, 1123–24 (10th Cir. 2002) (speech restriction on easement created when government sold part of a public space to a church violated First Amendment because the sale did not alter the property's forum status).

As to the City of Houston, Plaintiffs have shown that the City is *directly* violating their rights in two ways. First, City police officers censored Plaintiffs and arrested Mr. Dubash in a City-owned public park because of the content of Plaintiffs' expression. Pls.' Br. 8–12. A preliminary injunction against the City will ensure its police no longer stifle Plaintiffs' protected expression. Second, the City's policies—including the prior restraint resulting from its delegated policymaker, the Conservancy—are responsible for Plaintiffs' ongoing irreparable harm. *See* ECF 1, Compl. ¶¶ 62–64, 206–09; *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (explaining Section 1983 liability for a city exists when flowing from a delegated policymaker's decision). The City cannot dodge its constitutional duties in a public park like Discovery Green by passing the buck

16

to the Conservancy.[12] *See Evans*, 382 U.S. at 301; *First Unitarian Church*, 308 F.3d at 1123–24.

The only case Defendants offer to support their argument is an unpublished opinion that has nothing to do with power over a public park that Houston created and funds. Defs.' Br. 25 (citing *United States ex rel. Miniex v. Houston Hous. Auth.*, No. 21-20435, 2023 WL 6174416, at *2 (5th Cir. Sept. 22, 2023) (per curiam). The proper remedy for these ongoing First Amendment violations is an injunction against the City and its police, the Park Corporation charged with maintaining Discovery Green as a public park, and the Conservancy who manages the park. *See, e.g.*, *Sanchez v. City of Austin*, 774 F.3d 873, 877 (5th Cir. 2014) (injunction against City arising from police officers arresting protestors for criminal trespass in city hall plaza).[13]

## VII.   Irreparable Harm Is Clear.

Defendants concede that "the violation of First Amendment freedoms constitutes irreparable harm." Defs.' Br. 24. As Plaintiffs have proven a substantial likelihood of a First Amendment violation, the resulting irreparable harm shows why a prompt injunction is needed.

## CONCLUSION

Mr. Dubash and Dr. Harsini respectfully request that this Court grant their motion for a preliminary injunction [ECF Nos. 15 and 17].

---

[12] The Conservancy does not contest that the First Amendment binds it here. Nor could it. Pls.' Br. 16–17.

[13] The same injunctive remedies flow from Mr. Dubash's TRFRA and free exercise claims.

Dated: January 10, 2023                    Respectfully submitted,


                                           /s/ John Greil
                                           _____

                                           John Greil (TX 24110856)
                                           Steven T. Collis (TX 24122632)
                                           Law and Religion Clinic
                                           University of Texas School of Law
                                           727 E. Dean Keaton St.
                                           Austin, TX 78705
                                           (512) 475-9090
                                           John.greil@law.utexas.edu
                                           Steven.collis@law.utexas.edu

                                           JT Morris (TX 24094444)
                                           Gabe Walters*
                                           Foundation for Individual Rights and
                                           Expression
                                           700 Pennsylvania Ave., SE
                                           Suite 340
                                           Washington, DC 20003
                                           (215) 717-3473
                                           jt.morris@thefire.org
                                           gabe.walters@thefire.org

                                           Daniel Ortner*
                                           Foundation for Individual Rights and
                                           Expression
                                           510 Walnut St., Suite 1250
                                           Philadelphia, PA 19106
                                           (215) 717-3473
                                           daniel.ortner@thefire.org

                                           *Admitted pro hac vice

                                           ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, I electronically filed the foregoing Plaintiffs'
Reply in Support of Plaintiffs' Motion for Preliminary Injunction with the Clerk of the United
States District Court for the Southern District of Texas using the CM/ECF system, which will send
notification of such filing to all counsel of record.


/s/ John Greil
John Greil