**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DARAIUS DUBASH and | ) |
| | ) |
| DR. FARAZ HARSINI, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) CIVIL ACTION |
| v. | ) CASE NO. 4:23-cv-03556 |
| | ) |
| CITY OF HOUSTON, TEXAS; | ) |
| HOUSTON DOWNTOWN PARK | ) |
| CORPORATION; OFFICER ROBERT | ) |
| DOUGLAS (# 7943), in his individual | ) |
| capacity; OFFICER VERN WHITWORTH | ) |
| (# 7595), in his individual capacity; | ) |
| DISCOVERY GREEN CONSERVANCY | ) |
| f/k/a HOUSTON DOWNTOWN PARK | ) |
| CONSERVANCY; and BARRY MANDEL, | ) |
| in his individual capacity. | ) |
| | ) |
| *Defendants.* | ) |

**PLAINTIFFS' CONSOLIDATED OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS [ECF 44 & 46]**

*Oral Argument Requested*

## <u>TABLE OF CONTENTS</u>

TABLE OFAUTHORITIES .................................................................................... iii

STATEMENT OF THE ISSUES ....................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................. 1

FACTUAL BACKGROUND ............................................................................. 2

    Discovery Green Is the Only Public Park Green Space in Downtown Houston ...................... 2

    Dubash Advocates *Ahimsa* to Practice His Religion, While Harsini Is Driven by His Experience as a Scientist ........................................................................... 3

    Houston Police and Discovery Green Conservancy Staff Expel Plaintiffs from Discovery Green Park Four Times for the Content of Their Speech, Ultimately Arresting Dubash ................................................................................. 4

    Defendants Confirm a Content-Based Ban on Plaintiffs' Speech ............................. 5

ARGUMENT ................................................................................................. 5

I.    The City and Park Corporation Cannot Dodge the Constitution in a Public Park ............. 5

II.    Plaintiffs Establish a First Amendment Claim Against the City, the Park Corporation, and the Conservancy (Count 1) ..................................................................... 8

    A.    Showing videos while educating the public on a matter of public concern is protected expression. ..................................................................... 8

    B.    Plaintiffs plausibly allege a viewpoint- and content-based restriction that cannot satisfy strict scrutiny ..................................................................... 10

III.    Plaintiffs Establish That the City, the Park Corporation, and the Conservancy Have Imposed and Maintained an Unconstitutional Prior Restraint (Count 2) ............ 12

IV.    Plaintiffs' Allegations Meet the Liberal Pleading Standards for Their *Monell* Damages Claim Against the City (Count 3) ..................................................... 14

    A.    Plaintiffs plausibly allege a formal policy by the City's final policymakers ......... 15

    B.    Plaintiffs plausibly allege the City's final policymakers ratifying a decision ........ 15

    C.    Plaintiffs plausibly allege a delegation of final policymaking *Monell* theory ........ 16

    D.    Plaintiffs plausibly allege a failure-to-train theory under *Monell* .......................... 16

V.    Plaintiffs Establish a First Amendment Damages Cause of Action (Count 4) ................ 17

A.   Mandel offers no meaningful argument, so the Court should deny his motion ...... 17

B.   Plaintiffs establish a direct First Amendment violation .......................... 18

C.   Plaintiffs also establish a retaliatory First Amendment violation .......................... 18

   1.   *Plaintiffs' allegations meet the standard for a retaliation claim* ................... 19

   2.   *Harsini has a plausible damages claim for First Amendment retaliation* ....... 20

   3.   *Douglas and Whitworth arrested Dubash* ........................................ 21

   4.   Nieves *does not bar Dubash's First Amendment damages claims* ................ 22

VI.   Dubash Has Established a Fourth Amendment Damages Claim (Count 7) .................... 23

VII.   Qualified Immunity Does Not Shield Officers Douglas or Whitworth for Clamping
Down on Peaceful Advocacy in a Public Park .............................................. 26

A.   Threatening and arresting peaceful advocates in a public park because of
their speech is an obvious First Amendment violation ........................... 27

B.   Having fair warning of a constitutional violation, no reasonable officer
would have acted like Officers Douglas and Whitworth did ............................. 28

C.   None of the officers' justifications support qualified immunity ........................ 30

VIII.   Plaintiffs' Allegations Show The City, The Park Corporation, and The Conservancy
Have Violated Dubash's Religious Freedom (Counts 5-6) ............................................. 31

A.   Dubash sufficiently alleges a Free Exercise claim (Count 5) .............................. 32

   1.   *Removing Dubash from Discovery Green, arresting him, and censoring
   his proselytization, substantially burden his religious exercise* .................. 32

   2.   *Defendants' policies and actions are not generally applicable* .................... 33

   3.   *Defendants' prohibition against Dubash's religious exercise fails to
   satisfy strict scrutiny* ..................................................... 33

B.   Dubash Pleads a Sufficient Claim Under Requirements for TRFRA ................. 34

IX.   Plaintiffs Plausibly Allege an Unlawful Delegation Claim Against the City
(Count 8) .................................................................................. 36

X.   The Park Corporation's Arguments on Subject Matter Jurisdiction Fail ...................... 38

CONCLUSION .................................................................................. 38

ii

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page**

*Adkins v. Kaspar,*
  393 F.3d 559 (5th Cir. 2004) ................................................................. 35

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................ 26

*Animal Legal Def. Fund v. Wasden,*
  878 F.3d 1184 (9th Cir. 2018) .............................................................. 12

*Bailey v. Iles,*
  87 F.4th 275 (5th Cir. 2023) ............................................................. 28, 30

*Baker v. Coburn,*
  68 F.4th 240 (5th Cir. 2023) ................................................................ 30

*Barr v. City of Sinton,*
  295 S.W.3d 287 (Tex. 2009) ........................................................... 35, 36

*Ballentine v. Tucker,*
  28 F.4th 54 (9th Cir. 2022) .................................................................. 29

*Bigford v. Taylor,*
  834 F.2d 1213 (5th Cir. 1988) .............................................................. 25

*Black Lives Matter D.C. v. Trump,*
  544 F. Supp. 3d 15 (D.D.C. 2021) .................................................... 27, 29

*Boos v. Berry,*
  485 U.S. 312 (1988) ............................................................................ 11

*Bodzin v. City of Dallas,*
  768 F.2d 722 (5th Cir. 1985) ............................................................... 31

*Brady v. Hous. Indep. Sch. Dist.,*
  113 F.3d 1419 (5th Cir. 1997) .............................................................. 20

*Brown v. Ent. Merchs. Ass'n,*
  564 U.S. 786 (2011) ........................................................................... 8, 9

*Brown v. Lyford,*
  243 F.3d 185 (5th Cir. 2001) ............................................................... 24

*Cath. Leadership Coal. of Tex. v. Reisman,*
   764 F.3d 409 (5th Cir. 2014) ............................................................. 12

*Chiu v. Plano Indep. Sch. Dist.,*
   339 F.3d 273 (5th Cir. 2003) .......................................... 7, 12, 13, 31

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ........................................................................ 34

*City of Ladue v. Gilleo,*
   512 U.S. 43 (1994) .......................................................................... 12

*Clark v. Cmty. for Creative Non-Violence,*
   468 U.S. 288 (1984) .......................................................................... 9

*Colson v. Grohman,*
   174 F.3d 498 (5th Cir. 1999) ........................................................... 18

*Cohen v. California,*
   403 U.S. 15 (1971) .......................................................................... 27

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n,*
   447 U.S. 530 (1980) ........................................................................ 34

*Davidson v. City of Stafford,*
   848 F.3d 384 (5th Cir. 2017) ............................................... 18, 29, 31

*Dickson v. Lilith Fund for Reprod. Equity,*
   647 S.W.3d 410 (Tex. App. 2021) .................................................. 31

*Edwards v. South Carolina,*
   372 U.S. 229 (1963) ........................................................................ 28

*Erznoznik v. City of Jacksonville,*
   422 U.S. 205 (1975) ........................................................................ 27

*Fulton v. City of Philadelphia,*
   141 S. Ct. 1868 (2021) .................................................................... 33

*Evans v. Newton,*
   382 U.S. 296 (1966) .......................................................................... 7

*Gonzalez v. Trevino,* 144 S. Ct. 325 (2023),
   *granting cert. to* 42 F.4th 487 (5th Cir. 2022),
   *reh'g and reh'g en banc denied,* 60 F.4th 906 (5th Cir. 2023) ................................ 23

*Groden v. City of Dallas*,
  826 F.3d 280 (5th Cir. 2016) ................................................................14, 15, 16

*Hague Comm. for Indus. Org. v. CIO*,
  307 U.S. 496 (1939) ...............................................................................10, 28

*Hall v. GE Plastic Pac. PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ..........................................................................36

*Herrera v. Acevedo*,
  No. 21-20520, 2022 WL 17547449 (5th Cir. Dec. 9, 2022) ....................................29

*Hill v. Cruz*,
  2006 U.S. Dist. LEXIS 69094 (S.D. Tex. Sep. 26, 2006) .......................................35

*Hoggard v. Rhodes*,
  141 S. Ct. 2421 (2021) ..................................................................................30

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ...............................................................................26, 27

*Hughes v. Tobacco Inst., Inc.*,
  278 F.3d 417 (5th Cir. 2001) ...............................................................1, 21, 24

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*,
  515 U.S. 557 (1995) .....................................................................................10

*Jernigan v. Finley*,
  38 S.W. 24 (Tex. 1896) ..................................................................................7

*Joseph Burstyn, Inc. v. Wilson*,
  343 U.S. 495 (1952) ..............................................................................8, 9, 28

*Kaupp v. Texas*,
  538 U.S. 626 (2003) .....................................................................................24

*Keating v. City of Miami*,
  598 F.3d 753 (11th Cir. 2010) .........................................................................29

*Kennedy v. Bremerton Sch. Dist.*,
  142 S. Ct. 2407 (2022) ..................................................................................33

*King v. Massarweh*,
  782 F.2d 825 (9th Cir. 1986) ...........................................................................25

*Kinney v. Weaver,*
    367 F.3d 337 (5th Cir. 2004) ............................................................................26

*Leonard v. Robinson,*
    477 F.3d 347 (6th Cir. 2007) ............................................................................30

*Littell v. Hous. Indep. Sch. Dist.,*
    894 F.3d 616 (5th Cir. 2018) ......................................................................14, 17

*Lozano v. Smith,*
    718 F.2d 756 (5th Cir. 1983) ............................................................................21

*Matal v. Tam,*
    582 U.S. 218 (2017) ....................................................................................11, 29

*McLin v. Ard,*
    866 F.3d 682 (5th Cir. 2017) ............................................................................25

*Merced v. Kasson,*
    577 F.3d 578 (5th Cir. 2009) ............................................................................35

*Mink v. Knox,*
    613 F.3d 995 (10th Cir. 2010) ....................................................................25, 26

*Minn. Voters All. v. Mansky,*
    138 S. Ct. 1876 (2018) ..........................................................................10, 11, 26

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ........................................................................14, 15, 16, 38

*Moussazadeh v. Tex. Dep't of Crim. Just.,*
    703 F.3d 781 (5th Cir. 2012) ............................................................................32

*Niemotko v. Maryland,*
    340 U.S. 268 (1951) ..........................................................................................22

*Nieves v. Bartlett,*
    139 S. Ct. 1715 (2019)) ..............................................................................22, 23

*Norwell v. City of Cincinnati,*
    414 U.S. 14 (1973) ............................................................................................21

*Norwood v. Harrison,*
    413 U.S. 455 (1973) ............................................................................................7

*N.W. Enters. Inc. v. City of Houston*,
   352 F.3d 162 (5th Cir. 2003),
   *aff'd on reh'g*, 372 F.3d 333 (5th Cir. 2004)....................................................13

*Org. for a Better Austin v. Keefe*,
   402 U.S. 415 (1971) ...........................................................................................13

*Otwell v. State*,
   850 S.W.2d 815 (Tex. App. 1993) .....................................................................24

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983) .............................................................................................28

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .....................................................................................11, 18

*Quraishi v. St. Charles County*,
   986 F.3d 831 (8th Cir. 2021).............................................................................29

*Reed v. State*,
   762 S.W.2d 640 (Tex. App. 1988) ...............................................24, 25, 26, 31

*Robinson v. Hunt Cnty.*,
   921 F.3d 440 (5th Cir. 2019)......................................................................12, 29

*Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.*,
   547 U.S. 47 (2006) ...............................................................................................9

*Saldana v. Garza*,
   684 F.2d 1159 (5th Cir. 1982)...........................................................................30

*Sanchez v. City of Austin*,
   774 F.3d 873 (5th Cir. 2014)...............................................................................8

*Sanders-Burns v. City of Plano*,
   594 F.3d 366 (5th Cir. 2010).............................................................................16

*Sause v. Bauer*,
   138 S. Ct. 2561 (2018) .......................................................................................26

*SEIU, Loc. 5 v. City of Houston*,
   595 F.3d 588 (5th Cir. 2010).............................................................................13

*Se. Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) ........................................................................................7, 13

*Snyder v. Phelps*,
 562 U.S. 443 (2011) ........................................................................................9, 27, 28

*St. Maron Props., L.L.C.* v. *City of Houston*,
 78 F.4th 754 (5th Cir. 2023) ....................................................................................14, 15

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
 952 S.W.2d 454 (Tex. 1997) ....................................................................................37, 38

*Texas v. Johnson*,
 491 U.S. 397 (1989) ........................................................................................................9

*Thomas v. City of Galveston*,
 800 F. Supp. 2d 826 (S.D. Tex. 2011) ..........................................................................14

*Thompson v. State*,
 12 S.W.3d 915 (Tex. App. 2000) ..................................................................................24

*Thurairajah v. City of Ft. Smith*,
 925 F.3d 979 (8th Cir. 2019) ........................................................................................19

*United States v. Levine*,
 80 F.3d 129 (5th Cir. 1996) ..........................................................................................24

*United States v. Marcavage*,
 609 F.3d 264 (3d Cir. 2010) ..........................................................................................11

*United States v. Stanford*,
 883 F.3d 500 (5th Cir. 2018) ........................................................................................18

*United States v. Stevens*,
 559 U.S. 460 (2010) ................................................................................................9, 28

*Villarreal v. City of Laredo*,
 No. 20-40359, 2024 WL 244359 (5th Cir. Jan. 23, 2024) ............................................26

*Wayte v. United States*,
 470 U.S. 598 (1985) ................................................................................................25, 26

*Webster v. City of Houston*,
 735 F.2d 838 (5th Cir.) (per curiam),
 *aff'd in relevant part*, 739 F.2d 993 (5th Cir. 1984) (en banc) ............................14, 16

*Whitley v. Hanna*,
 726 F.3d 631 (5th Cir. 2013) ........................................................................................22

*WickFire, L.L.C. v. Woodruff*,
  989 F.3d 343 (5th Cir. 2021) ...................................................................1, 38

*Wisconsin v. Yoder*,
  406 U.S. 205 (1972) ..............................................................................33

*World Wide St. Preachers Fellowship v. Town of Columbia*,
  245 F. App'x 336 (5th Cir. 2007) .........................................................21

## Statutes and Rules

42 U.S.C. § 1983 ..................................................................................1

Fed. R. Civ. P. 8(e)(2) ..........................................................................16

Fed. R. Civ. P. 12(b) ............................................................................18

Fed. R. Civ. P. 15 ..................................................................................6

Tex. Civ. Prac. & Rem. Code § 110.001(a)(1) ..................................... 35

Tex. Civ. Prac. & Rem. Code § 110.003 .............................................. 34

Tex. Civ. Prac. & Rem. Code § 110.003(b)(1) ..................................... 36

Texas Religious Freedom Restoration Act ......................... 2, 32, 34, 35, 36

## Other Authorities

17A Am. Jur. 2d Contracts § 223 ..........................................................7

*Webster's Third New International Dictionary* ....................................35

## STATEMENT OF THE ISSUES

All Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(6). But accepting Plaintiffs' allegations as true and construing them "in the light most favorable" to Plaintiffs, their complaint states "valid claim[s] for relief." *Hughes v. Tobacco Inst., Inc*., 278 F.3d 417, 420 (5th Cir. 2001). Defendant Houston Park Corporation (Park Corporation) also moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. The Park Corporation makes no arguments on standing or justiciability, narrowing the issue: Are Plaintiffs' claims "colorable" for federal-question jurisdiction? *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343 (5th Cir. 2021). They are, because they arise under the Constitution and 42 U.S.C. § 1983.

## SUMMARY OF THE ARGUMENT

Plaintiffs' complaint shows the Houston government, its police, and its contractor, Discovery Green Conservancy, are censoring Plaintiffs' peaceful advocacy on a public issue in a public park in downtown Houston—and they arrested Plaintiff Darius Dubash for it. They did all this because they think Plaintiffs' protected advocacy is "offensive." But the Constitution guarantees public parks like Discovery Green belong to the people, no matter one's views or religious beliefs. When police officers and park management impose their tastes over free expression, they violate the Constitution. Plaintiffs' complaint, then, establishes a host of First and Fourth Amendment violation claims against Defendants.

Despite Plaintiffs' detailed allegations, signed contracts, and video footage documenting these violations, Defendants move to dismiss. Defendants' motions fail. While the City and Park Corporation point fingers at their contractor, Discovery Green Conservancy, they ignore two key points. First, they own Discovery Green and still have authority over it, including park rules. Second, they shunned their duty to guide the Conservancy on its First Amendment obligations,

instead delegating to the Conservancy unfettered discretion over expression at the park. All three entities, then, are accountable for the prior restraint they imposed on Plaintiffs' protected expression, along with the content- and viewpoint-driven ban on Plaintiffs' video clips. They cannot satisfy strict scrutiny for any of those restrictions on free expression at a public park.

Defendants Mandel, Douglas, and Whitworth ("Individual Defendants") fare no better. They each violated Plaintiffs' constitutional rights, from then-Conservancy president Mandel demanding the police remove Plaintiffs from Discovery Green as criminal trespassers because he found their speech "offensive," to Officers Douglas and Whitworth arresting Dubash without probable cause. Qualified immunity is no shield for them. It would have been obvious to any reasonable officer that putting Dubash in handcuffs for peacefully advocating for animal welfare in a public park violates the Constitution, no matter if park staff found his speech "offensive." And decades of Supreme Court precedent gave fair notice of that constitutional violation.

Finally, Dubash's allegations establish claims under the Free Exercise Clause and Texas Religious Freedom Restoration Act ("TRFRA"). Defendants have burdened Dubash's religious exercise, forcing him to choose between risking arrest and spreading the religious teaching of *ahimsa* in Discovery Green. Those actions were not neutral and generally applicable, preferring similar secular conduct and relying on individualized determinations.

For all these reasons, the Court should deny Defendants' motions to dismiss.

## FACTUAL BACKGROUND

**Discovery Green Is the Only Public Park Green Space in Downtown Houston.**

Discovery Green is a self-described "dedicated public park" and the only public greenspace in downtown Houston. Compl. ¶ 2, ECF No. 1 (quoting Park Rules: Discovery Green § 1.2.2(p)). The park is free, has no ticketed entrance or exit, and is open to all for public protest, performances, recreation, gatherings, and events. *Id.* ¶¶ 46–48. From the start, Houstonians and others have used

it for free expression. *Id.* ¶¶ 68–72. Defendant City of Houston and its Mayor have intervened to ensure that political speech can happen in Discovery Green. For instance, in May 2022, when thousands protested the National Rifle Association's convention across the park, the Mayor and Houston Police Department "helped create and maintain a protest zone in Discovery Green" to protect "those exercising their First Amendment rights to demonstrate." *Id.* ¶¶ 75–76.

The City acquired the park's land in 2002 and 2004, with the approval of its City Council, and funded most of the park's development. *Id.* ¶¶ 49–51. In 2004, the City conveyed the land to a non-profit entity now known as Discovery Green Conservancy. *Id.* ¶ 54. That same day, the Conservancy deeded it to Houston Downtown Park Corporation, a local government corporation the City formed "to aid and act on behalf of the City to accomplish the City's governmental purposes consisting of the . . . operation and maintenance of a new public park[.]" *Id.* ¶¶ 56, 59.

Today, the Park Corporation fulfills the City's governmental purpose by contracting with the Conservancy to operate Discovery Green Park. *Id.* ¶ 61. The Conservancy admits it "operates a public park, open year-round at no charge to residents and visitors of the Greater Houston area." *Id.* ¶ 16. The City and Park Corporation charged the Conservancy "with developing rules and regulations governing the use of Discovery Green (Park Rules)." *Id.* ¶ 63. The City enforces park rules and Conservancy decisions through its police department. *Id.* ¶¶ 61, 207.

**Dubash Advocates *Ahimsa* to Practice His Religion, While Harsini Is Driven by His Experience as a Scientist.**

Dubash follows the *Advaita Vedanta* stream of Hinduism, a key teaching of which is *ahimsa*, or nonviolence against other living things. *Id.* ¶¶ 22–23. For Dubash, failing to speak out against animal abuse is itself an act of violence. *Id.* ¶ 24. Educating the public at Discovery Green while spreading the message of *ahimsa* is a key part of his religious exercise. *Id.* ¶ 25.

Harsini is a scientist with a doctorate in Cell Physiology and Molecular Biophysics; his

research has led him to believe that many public-health threats and environmental issues result from our industrial food system. *Id.* ¶ 29. Harsini advocates for a vegan lifestyle, and founded a national education nonprofit, Allied Scholars for Animal Protection. *Id.* ¶ 30.

Dubash and Harsini both do direct public outreach through Anonymous for the Voiceless, a not-for-profit animal rights organization. *Id.* ¶ 32. In particular, the two persuade others to change their meat-eating habits by organizing "Cubes of Truth." *Id.* ¶¶ 32–33. A Cube consists of two volunteer teams. One team wears "Guy Fawkes" masks (as seen in the film *V for Vendetta*) and holds televisions displaying silent video clips from *Dominion*, a documentary showing common practices used in industrial meat, egg, milk, and fish production. *Id.* ¶¶ 34–37. The second team wears no masks, instead speaking with passersby—but only if they show interest in the videos. *Id.* ¶¶ 41–43. From experience, Dubash and Harsini find the content of these videos, revealing a reality hidden to consumers, is particularly effective in changing hearts and minds. *Id.* ¶¶ 39–40.

**Houston Police and Discovery Green Conservancy Staff Expel Plaintiffs from Discovery Green Park Four Times for the Content of Their Speech, Ultimately Arresting Dubash.**

Three times, Houston Police and Conservancy staff forced Dubash or Harsini to leave Discovery Green for peacefully sharing their views on animal treatment. On November 13, 2021, then-Discovery Green Facilities Manager William Flowers and a uniformed Houston Police Officer ordered Dubash to leave the park without providing a justification. *Id.* ¶¶ 84–85. On April 16, 2022, a Park Security Officer and a uniformed Houston police officer ordered the Cube teams (including Dubash and Harsini) out of the Park. *Id.* ¶ 88. Then, on June 18, 2022, Park Manager Brian Wilmer declared that Discovery Green was closed to Dubash and Harsini because the Conservancy disapproved of the content of their speech, which might "disturb children." *Id.* ¶ 98.

During the fourth occasion on July 23, 2022, Defendant Officers Douglas and Whitworth arrested Mr. Dubash for his speech. *Id.* ¶¶ 103–54. Shortly after Dubash and Harsini set up,

Discovery Green security warned them that speech in Discovery Green is permitted on "a case by case" basis, so their "manager is going to come and come look at it." *Id.* ¶ 107. Plaintiffs explained to Douglas and park management that the First Amendment protected their speech. Officer Douglas responded that he was "aware of" the First Amendment's protections, but "if you are showing offensive material [Discovery Green management] does not like, you can't be here." *Id.* ¶¶ 123–24. Soon after, Officer Douglas, with Officer Whitworth's help, told Dubash he was not free to leave, handcuffed him, detained him in a Discovery Green park office (still handcuffed), and called for another officer to transport him to a detention center. *Id.* ¶¶ 139–45.

**Defendants Confirm a Content-Based Ban on Plaintiffs' Speech.**

After Dubash and Harsini obtained legal counsel, the Conservancy informed them that they may advocate for animal rights in Discovery Green only if they (1) do not show clips of *Dominion*, and (2) do not wear Guy Fawkes masks. *Id.* ¶ 160. Dubash sent Defendants notice under the Texas Religious Freedom Restoration Act, complaining of violations of his constitutional rights of speech and religion and of his statutory religious rights. *Id.* ¶ 192. The City and Park Corporation did not respond, and the Conservancy mandated that Dubash and Harsini use an "alternate method" of speech at Discovery Green. *Id.* ¶ 160.

## ARGUMENT

The allegations show the City, the Park Corporation, and Conservancy all are responsible for stifling Plaintiffs' constitutionally-protected expression and Dubash's religious freedom. Likewise, they show that Mandel and Officers Douglas and Whitworth are accountable for violating Plaintiffs' constitutional rights, as qualified immunity does not shield them.

**I.    The City and Park Corporation Cannot Dodge the Constitution in a Public Park.**

The City argues for dismissal because it does not own Discovery Green and "has no involvement in its operation." City Mot. 2, 15, ECF No. 44. Likewise, the Park Corporation argues

for dismissal because "it owns the land . . . and it engaged the Conservancy for the operation and management of the park—nothing more." Corp. Mot. 19–20, ECF No. 46. But the allegations show otherwise, establishing Section 1983 claims against the City and Park Corporation.

Discovery Green is a "dedicated public park." Compl. ¶ 2. The City bought the park land and funded the park. *Id.* ¶¶ 49–51. Its then-Mayor signed the deed of Discovery Green land to the Conservancy, requiring the Conservancy to develop it into "park land." Compl. Ex. B, at 4, 8, ECF No. 1-2. Likewise, the City Council ratified the Park Corporation to "aid and act on behalf of the City to accomplish the City's governmental purposes consisting of the acquisition, development, operation and maintenance of a new public park." Compl. Ex. A, at 2, 7, ECF No. 1-1.

In addition, the Mayor and City Council reserved the respective rights to appoint and confirm the Park Corporation's board members, some of whom the City Council required to also serve on the Conservancy's board. *Id.* at 3–4. The Operating Agreement between the Conservancy and the Corporation empowers the Mayor to approve park rule changes the Conservancy proposes. City Mot. Ex. B § 4.3, ECF No. 44-2 ("Operating Agreement").[1] In fact, the Mayor has acted to protect expression at the park before. Compl. ¶¶ 74–77. To top it off, City police officers enforce state and local laws, park rules, and Conservancy decisions. Compl. ¶¶ 61, 83–94, 104–52, 207.

Acting on the City's behalf, the Park Corporation accepted the Conservancy's deed of the park land, requiring the Conservancy to oversee the land "solely as an urban public park of high quality." Compl. Ex. C, at 5, ECF No. 1-3. To guarantee that condition and carry out its "governmental . . . functions" on the City's behalf, the Park Corporation enlisted the Conservancy

---

[1] The Operating Agreement attached to both motions, City Mot. Ex. B; Corp. Mot. Ex. A, ECF No. 46-1, is the first Plaintiffs have seen the document. But Plaintiffs allege its existence and details matching the agreement's language granting the Conservancy unfettered discretion over Park rules. Compl. ¶¶ 61–65. Thus, Plaintiffs urge the Court to find the Operating Agreement is incorporated by reference into Plaintiffs' claims. Alternatively, Plaintiffs ask for leave to amend and allege details from the Operating Agreement, as "justice so requires." Fed. R. Civ. P. 15.

as a contractor to operate Discovery Green. Compl. ¶¶ 16, 61; *see also* Operating Agreement. The operating agreement obligates the Conservancy to the *City*, like "provid[ing] copies of all Park Rules and modifications, deletions, or additions thereto to the City." Operating Agreement § 4.3.

In short, the City sways what happens at Discovery Green—including its police threatening Plaintiffs and arresting Dubash. Compl. ¶¶ 61, 83–94, 104–52, 207. So does the Park Corporation, which the City incorporated just to carry out its wishes for Discovery Green and own the park land. By owning and controlling a public park, the City and Park Corporation have a duty to uphold the First Amendment there. But they have failed to ensure that City police and Conservancy staff respect peaceful advocacy at Discovery Green, even if it offends them. *See infra* Sections II–V.

The City and Park Corporation might point their fingers at the Conservancy. But the law is clear: The government "may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *Norwood v. Harrison*, 413 U.S. 455, 465 (1973) (citation omitted); *see also Evans v. Newton*, 382 U.S. 296, 301 (1966) (Constitution barred racial segregation in city park deeded to private trustees). That includes trying to contract with the Conservancy around the Constitution. 17A Am. Jur. 2d Contracts § 223; *cf. Jernigan v. Finley*, 38 S.W. 24, 26 (Tex. 1896) ("The legislature cannot do by indirection what it cannot do directly."). And it includes unlawfully delegating City authority to the Conservancy. *See infra* Section IV.

Not only are the City and Park Corporation liable for its contractor's constitutional violations, but also for failing to (1) place any "meaningful constraints or any objective and definite standards" on the Conservancy's authority, or (2) provide any "training[] on how the Conservancy was to exercise that authority consistent with First Amendment requirements." Compl. ¶ 64. Placing "unbridled discretion over a forum's use" violates the First Amendment. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975); *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d

273, 280 (5th Cir. 2003). Despite the deeds and agreements among the City, Park Corporation, and the Conservancy, not one includes any guidance to Conservancy about upholding the First Amendment at Discovery Green. *E.g.,* Compl. Exs. A–C; Operating Agreement. And Plaintiffs allege how neither the City nor the Park Corporation trained Conservancy staff and management on the constitutional duties that come with operating a public park—evidenced by Conservancy staff banning speech because it is "offensive." Compl. ¶ 211.

The Court should reject the City and Park Corporation's attempts to wiggle out of their constitutional obligations and deny their motions to dismiss. *See, e.g.*, *Sanchez v. City of Austin*, 774 F.3d 873, 877 (5th Cir. 2014) (injunction against City arising from police officers arresting protestors for criminal trespass in city hall plaza).

## II.   Plaintiffs Establish a First Amendment Claim Against the City, the Park Corporation, and the Conservancy (Count 1).

Accepting Plaintiffs' allegations as true, the Court should not dismiss Plaintiffs' claims for declaratory and injunctive relief against the City, the Park Corporation, and the Conservancy for violating Plaintiffs' rights to free speech in a traditional public forum (Count 1). Plaintiffs have sufficiently alleged that they were engaged in protected expression—showing videos and opposing animal cruelty—in Discovery Green, a public park. Defendants' blanket ban on Plaintiffs' expression in a traditional public forum because it is "offensive" fails constitutional scrutiny.

### A.   Showing videos while educating the public on a matter of public concern is protected expression.

Defendants argue that Plaintiffs' videos are "non-expressive conduct" unprotected by the First Amendment. City Mot. 7. This argument fails. The Supreme Court has repeatedly affirmed First Amendment protection for movies, video games, and similar content. *E.g.*, *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952) (First Amendment protects motion pictures); *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790 (2011) (First Amendment protects video games). Just like

8

spoken words, videos convey a particular message. *Brown*, 564 U.S. at 790. And First Amendment protections are especially strong for expression on matters of public concern. *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011). Plaintiffs' videos fall firmly into this category. By showing clips from the documentary *Dominion*, Plaintiffs seek to educate and persuade the public about prevalent industrial animal practices, no doubt a matter of public concern. Compl. ¶¶ 37, 39–40.

Defendants cannot dispute that the First Amendment protects video depictions of animal cruelty. *United States v. Stevens*, 559 U.S. 460, 468, 480 (2010). Instead, they contend that Plaintiffs' advocacy—showing videos while allowing passersby to initiate discussion—is not "inherently expressive." City Mot. 8–9. This defies common sense.

According to Defendants, conduct cannot be expressive if it requires "explanatory speech." *Id.* (citing *Rumsfeld v. Forum for Acad. & Institutional Rts., Inc.* (*FAIR*), 547 U.S. 47 (2006)). They fail to specify what they consider Plaintiffs' "explanatory speech." And in any case, *FAIR* established no such rule. *FAIR* is a compelled-speech case—not a case limiting protection for expressive conduct. 547 U.S. at 62–65. Context and intent inform whether conduct is expressive. *Texas v. Johnson*, 491 U.S. 397, 405 (1989); *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 (1984). Nothing in *FAIR* disrupts this settled principle. Not only are Plaintiffs' videos pure expression, as *Burstyn* and *Brown* confirm, but are even more so in the context of an animal-rights demonstration held in a public park. Holding monitors showing videos is no different than holding a picket sign. Both are "reasonably . . . understood by the viewer to be communicative," whether there is explanatory speech or not. *Clark*, 468 U.S. at 294.

Defendants also argue that Plaintiffs' videos lack First Amendment protection because they show practices that Dubash and Harsini oppose. City Mot. 8. The Court should reject this confused claim. Applying that theory, Picasso's *Guernica* would not be expressive because it might have

suggested the artist's support for bombing civilians. Satire, too, would be out of bounds. But the First Amendment cares only if *something* is expressed, and protects Plaintiffs' display of videos even if some passersby might interpret them differently. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp.*, 515 U.S. 557, 569 (1995) ("[A] narrow, succinctly articulable message is not a condition of constitutional protection."). Because Plaintiffs' videos convey a message about a matter of public importance, their display constitutes protected expression.

### B.    Plaintiffs plausibly allege a viewpoint- and content-based restriction that cannot satisfy strict scrutiny.

Defendants contend that Discovery Green is a limited public forum, thus entitling the Conservancy "to restrict speech based on content." City Mot. 2. This is not true, especially when taking Plaintiffs' allegations as true. Public parks are the quintessential traditional public forums, having "immemorially been held in trust for the use of the public, and, time out of mind, hav[ing] been used for the purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague Comm. for Indus. Org. v. CIO*, 307 U.S. 496, 515 (1939). The Park Rules describe Discovery Green as a "dedicated public park" and the Conservancy has even told the IRS that Discovery Green is a "public park" with free admission to all. Compl. ¶ 47. Defendants have always treated Discovery Green as a traditional public forum, hosting political protests, drag shows, and cultural celebrations, among other events. *Id.* ¶¶ 69–82.

In traditional public forums, the First Amendment outright prohibits restrictions on expression "based on viewpoint." *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018). The allegations refute Defendants' denial of viewpoint discrimination. City Mot. 12. When arresting Mr. Dubash, park staff and City police objected to Plaintiffs' videos because they found them offensive. Compl. ¶¶ 126, 129. And even now, Defendants decry Plaintiffs' videos as "grotesque" and "disturbing." City Mot. 12, 16. When the government censors speech because it declares it

offensive, that is unconstitutional viewpoint discrimination. *Matal v. Tam*, 582 U.S. 218, 243–44 (2017); Compl. ¶ 174. The authentic content of Plaintiffs' video clips is what makes their advocacy about animal cruelty effective. Compl. ¶ 31. By imposing a ban on Plaintiffs' expression just because of its message—without censoring other viewpoints in Discovery Green that some might consider offensive, *id.* ¶¶ 74–81—Defendants violate the First Amendment.

Defendants also argue that even if Discovery Green is a traditional public forum, they can enforce reasonable time, place, and manner restrictions limiting Plaintiffs' expression in the park. City Mot. 10. But time, place, and manner restrictions must be content neutral. *Mansky*, 138 S. Ct. at 1885. And Defendants' own words and actions prove that their ban on Plaintiffs' expression is content based, because it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); Compl. ¶ 149. Defendants repeatedly color Plaintiffs' videos as containing "violence towards animals" and as "graphic." City Mot. 1, 8–10. This tracks park manager Floyd Willis's statement that "we don't feel the content is appropriate." Compl. ¶ 114.

Because Defendants have censored Plaintiffs at Discovery Green based on the content of the videos, their ban is not a content-neutral time, place, or manner restriction. Content-based restrictions like Defendants' ban "must satisfy strict scrutiny." *Mansky*, 138 S. Ct. at 1885. But Defendants offer no reasons for why their ban satisfies that high bar.

Banning content from a traditional public forum because it might shock some is not a compelling government interest. *Boos v. Berry*, 485 U.S. 312, 320–21 (1988); *United States v. Marcavage*, 609 F.3d 264, 283, 290–91 (3d Cir. 2010) (no compelling interest in censoring "vivid depictions of mutilated fetuses" even if "jarring"). Nor is Defendants' ban on videos showing "violence against animals" narrowly tailored. It is overinclusive, barring videos of cheetahs

hunting gazelles or showing the movie *Bambi*. The ban is also underinclusive, censoring authentic videos of industrial animal practices but allowing photographs of the same. *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1204 (9th Cir. 2018) (citing *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994)).

Defendants claim a right to enforce "[their] Rules that prohibit people from disturbing other patrons' use of Discovery Green." City Mot. 12. But Defendants never invoked that rule during the four times they censored Plaintiffs. Compl. ¶¶ 87, 94, 101, 128. Nor could they have—Dubash and Harsini silently display videos on park property without approaching or disturbing others, speaking only with interested parties. *Id.* ¶¶ 32–44. At the same time, Defendants have endorsed massive protests in Discovery Green that shut down much of the park, undermining their supposed interest. *Id.* ¶¶ 41, 69–72; *see also id.* ¶ 104 (alleging group actively "seeking out passersby and speaking to them about voter registration status" was "not asked to leave or censor its speech").

## III.   Plaintiffs Establish That the City, the Park Corporation, and the Conservancy Have Imposed and Maintained an Unconstitutional Prior Restraint (Count 2).

Defendants argue that Plaintiffs' prior restraint claim is duplicative of its traditional public forum claim and should be dismissed. City Mot. 21. Not so. These claims cover separate doctrinal principles and factual allegations. *See Robinson v. Hunt County*, 921 F.3d 440, 450 n.5 (5th Cir. 2019) (finding plaintiff alleged viewpoint discrimination claim and reinstating prior restraint claim where district court "dismissed these claims for the same reasons"). Indeed, Defendants' argument fails as they overlook what prior restraints are: Edicts "forbidding certain communications when issued in advance of the time that such communications are to occur." *Cath. Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 437 (5th Cir. 2014) (citation omitted). In the same way, government restrictions "regulating speech contingent on the will of an official . . . are unconstitutional burdens on speech classified as prior restraints." *Chiu*, 339 F.3d at 280 (citation omitted).

Here, Defendants imposed a prior restraint on Plaintiffs' right to speak in Discovery Green about the realities of industrial animal practices, confirming "it's up to the management" whether prospective speech is "offensive" or "acceptable" in Discovery Green. Compl. ¶¶ 133, 141, 190; *Se. Promotions*, 420 U.S. at 553 (striking down a prior restraint "not bounded by precise and clear standards"); *Chiu*, 339 F.3d at 280. And through their silence, Defendants fail to rebut the presumption that the prior restraint is unconstitutional. *See Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). A system of prior restraints is constitutional only when "confined by narrow, objective, and definite standards to guide the licensing authority." *SEIU, Loc. 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010) (citation omitted). Prior restraints take on "a variety of forms," yet they all give "public officials the power to deny use of a forum in advance of actual expression." *Se. Promotions,* 420 U.S. at 553. A constitutional prior restraint must (1) "be imposed only for a specified brief period during which the status quo must be maintained"; (2) offer "prompt judicial review"; and (3) place both "the burden of going to court to suppress the speech" and "the burden of proof in court" on the censor. *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 193–94 (5th Cir. 2003), *aff'd on reh'g*, 372 F.3d 333 (5th Cir. 2004).

Here, the City and the Park Corporation have placed no "narrow, objective, and definite standards to guide" "the management" in administering the park on behalf of the City and the Park Corporation. *See SEIU*, 595 F.3d at 596. The Conservancy has not defined the terms "offens[ive]" or "inappropriate," specified timelines for approval, or offered an appeal process. *See N.W. Enters.*, 352 F.3d at 193–94; Compl. ¶¶ 187, 192, 196. Even worse, speakers like Plaintiffs must go to court. *N.W. Enters.*, 353 F.3d at 193–94 (citation omitted).

Plaintiffs have sufficiently alleged an unconstitutional prior restraint. The Court should deny the motion to dismiss this claim.

## IV.   Plaintiffs' Allegations Meet the Liberal Pleading Standards for Their *Monell* Damages Claim Against the City (Count 3).

The Court should deny the City's motion to dismiss Plaintiffs' claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count 3). Plaintiffs' allegations "provide fair notice to" the City that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of [their] constitutional right[s]." *Groden v. City of Dallas*, 826 F.3d 280, 283 (5th Cir. 2016) (cleaned up); *see also Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843–44 (S.D. Tex. 2011) ("[S]uch notice could include . . . the specific topic of the challenged policy or training inadequacy.") (citations omitted)); *St. Maron Props., L.L.C.* v. *City of Houston*, 78 F.4th 754, 761–62 (5th Cir. 2023) (reversing dismissal where allegations showed reasonable inferences of a *Monell* violation).

An official policy under *Monell* can be a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by" a final policymaker "or by an official to whom the lawmakers have delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.) (per curiam), *aff'd*, 739 F.2d 993 (5th Cir. 1984) (en banc). Here, Plaintiffs' allegations plausibly meet that standard three ways: (1) the City's final policymakers enacted a policy of giving the Conservancy unfettered discretion to regulate speech at Discovery Green through their written agreements with the Conservancy; (2) they ratified the Conservancy's decisions resulting from that unfettered discretion; and (3) they delegated final policy-making authority to the Conservancy. Plaintiffs also allege liability under *Monell* for the City's failure to train the Conservancy. Compl. ¶¶ 211–15; *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (describing *Monell* failure to train claim). The City's arguments for dismissal spurn settled Fifth Circuit law and ignore Plaintiffs' allegations showing the City is liable for failing to preserve the Constitution at Discovery Green.

A. **Plaintiffs plausibly allege a formal policy by the City's final policymakers.**

Plaintiffs allege a City policy of "giving Discovery Green Conservancy authority to carry out the public function of maintaining rules of use for Discovery Green," while not imposing "narrow, objective, or definite criteria to ensure the Conservancy does not infringe the First Amendment." Compl. ¶ 209. The City does not meaningfully contest this allegation. City Mot. 15–16. Nor does it challenge Plaintiffs' allegations on *Monell's* moving force prong. *Id.*

Instead, the City insists "the failure to identify an individual policymaker undermines Plaintiffs' claim." *Id.* at 15. But the Fifth Circuit rejected that argument in *Groden*: "The specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policy maker, under which the municipality is said to be liable." 826 F.3d at 283–84. The Fifth Circuit has determined that legal question too, holding that for the City, "[t]he Mayor and City Council are final policymakers for the purpose of *Monell* liability." *St. Maron Props.*, 78 F.4th at 761 (citing Hous., Tex., Charter art. V § 1; *id.* art. VI §§ 7, 7a).

Those final policymakers' fingerprints are all over the Conservancy and Discovery Green, as Plaintiffs explain in Section I. Yet, not once in the written grants and conditions from the City's final policymakers to the Conservancy do they impose anything near "narrow, objective, or definite criteria to ensure the Conservancy does not infringe the First Amendment." Compl. ¶ 209. The complete absence of First Amendment guidance in those written documents suffices at the pleadings stage to show a formal policy of letting the Conservancy run unfettered at Discovery Green, without regard for the Constitution. *Id.* ¶ 190; *Groden*, 826 F.3d at 283–84. Thus, the Court should deny Defendants' motion to dismiss Count 3.

B. **Plaintiffs plausibly allege the City's final policymakers ratifying a decision.**

By standing behind the Conservancy's and Houston police officers' censorship of

Plaintiffs, the City Council and Mayor have ratified their decision. That satisfies *Monell*, because it is a "decision that is officially adopted and promulgated by" a final policymaker. *Webster*, 735 F.2d at 841. Indeed, despite having notice of the ongoing prior restraint, the Mayor has refused to exercise his power under the Operating Agreement to stop it. Compl. ¶ 192; Operating Agreement § 4.3. The Mayor has exercised that power before, like when he and Houston police stepped in to protect protestors opposing the 2022 NRA convention. Compl. ¶¶ 74–77. Those allegations suffice to meet a *Monell* "decision" theory.

### C. Plaintiffs plausibly allege a delegation of final policymaking *Monell* theory.

Plaintiffs also (or in the alternative)[2] allege that the City "delegated final policymaking authority over use of Discovery Green park" to the Conservancy, resulting in the prior restraint still looming over Plaintiffs and their protected advocacy. Compl. ¶¶ 62–63, 171, 173, 206–08; *see also infra* Section IX. The City does not address or move to dismiss this part of Plaintiffs' *Monell* claim. That is one more reason to deny the City's motion to dismiss Count 3.

### D. Plaintiffs plausibly allege a failure-to-train theory under *Monell*.

Plaintiffs also allege a failure-to-train claim against the City, showing "(1) that a local government's training policy procedures were inadequate, (2) that the government was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused the [constitutional injury]." *Sanders-Burns v. City Of Plano,* 594 F.3d 366, 381 (5th Cir. 2010); Compl. ¶¶ 64, 211–15. And the City's single line that "[t]he assertion of this theory is unsupported, thus failing to satisfy pleading standards," fails to show otherwise. City Mot. 16.

First, Plaintiffs allege that the City provided no First Amendment training to Conservancy

---

[2] Plaintiffs may plead in the alternative, "regardless of consistency." Fed. R. Civ. P. 8(e)(2); *see also Groden,* 826 F.3d at 284–85 ("[W]hen a complaint contains sufficient factual allegations, a court should not grant a motion to dismiss for imperfect statement of the legal theory supporting the claim asserted.") (cleaned up).

staff that the City tasked with operating Discovery Green on the City's behalf. Compl. ¶¶ 64, 211, 213. Plaintiffs also allege that, even now, the City refuses to train Conservancy staff on their First Amendment obligations. *Id.* ¶ 214. Those allegations show inadequate training procedures.

Second, Plaintiffs' allegations show the City's deliberate indifference to training Conservancy staff. *Id.* ¶ 215. A plaintiff can show deliberate indifference in two ways: (1) a pattern of violations, or (2) a risk of constitutional violations that were an "obvious" or "highly predictable consequence" of the failure to train. *Littell*, 894 F.3d at 624–25 (holding plaintiff sufficiently pled failure-to-train claim). Plaintiffs meet the first way, alleging a pattern of four incidents where Conservancy staff have stifled Plaintiffs' protected speech at Discovery Green—and the City's refusal to train despite knowing of those incidents. Compl. ¶¶ 83–137, 154, 214. And Plaintiffs meet the second way, too, showing the Conservancy's decision to bar speech based on content and viewpoint that they disagreed with was a "highly predictable consequence" of the City's failure to train the Conservancy about the need to respect First Amendment rights. *Littell*, 894 F.3d at 624–25 (cleaned up).

Third, Plaintiffs sufficiently allege the causation prong. Compl. ¶¶ 212, 216. Had the City trained the Conservancy on upholding the First Amendment in a public park, Conservancy staff likely would not have infringed Plaintiffs' protected expression four times over. *Id.*

## V. Plaintiffs Establish a First Amendment Damages Cause of Action (Count 4).

The Court should deny the Individual Defendants' motion to dismiss Plaintiffs' First Amendment damages cause of action (Count 4). They fail to address Plaintiffs' direct First Amendment violation claim. And the allegations show that each played a direct role in threatening Plaintiffs and arresting Dubash because they found Plaintiffs' "content" "offensive."

### A. Mandel offers no meaningful argument, so the Court should deny his motion.

While Mandel moves to dismiss Plaintiffs' First Amendment damages claim, he makes just

17

one conclusory argument: "Nowhere do [Plaintiffs] claim that the Officers or Mr. Mandel was motivated by any desire to retaliate." City Mot. 16–19. First, that's wrong. Plaintiffs allege "Mandel imposed his personal views on speech in the park: If he liked its content or message, it could stay. If he didn't, it could not." Compl. ¶ 153; *see also id.* ¶¶ 78–80, 127, 154, 223, 115, 227, 230–32. Second, by offering no other arguments, Mandel has waived them. Fed. R. Civ. P. 12(b); *United States v. Stanford*, 883 F.3d 500, 509 (5th Cir. 2018) ("Stanford waived the argument by raising it for the first time in his reply brief . . . ."). The Court should deny Mandel's empty motion.

### B.    Plaintiffs establish a direct First Amendment violation.

The Individual Defendants seek to dismiss Count 4 only on the ground that Plaintiffs do not sufficiently allege retaliation. City Mot. 16. Not only are they wrong, *see infra* Section VI.C, but they ignore that Plaintiffs claim a *direct* First Amendment violation, distinct from Plaintiffs' retaliation claim. Compl. ¶¶ 219–22; *see Colson v. Grohman*, 174 F.3d 498, 508–09 (5th Cir. 1999) (noting the First Amendment bars both direct limits on speech and retaliation against it).

Because the Individual Defendants moved to dismiss only the retaliation claim, City Mot. 16–19, they have waived arguments on the direct violation claim. *Stanford*, 883 F.3d at 509. Those arguments would fail, in any case. Kicking someone out of a place where the Constitution guarantees free expression—whether by arrest or threat of arrest—directly violates the First Amendment. *See Davidson v. City of Stafford*, 848 F.3d 384, 398 (5th Cir. 2017) (reversing and remanding summary judgment against an arrestee's First Amendment as-applied and retaliation claims); *Reed*, 576 U.S. at 167 ("[T]he First Amendment expressly targets the operation of the laws—i.e., the 'abridgement of speech'—rather than merely the motives of those who enacted them.") (cleaned up).

### C.    Plaintiffs also establish a retaliatory First Amendment violation.

Plaintiffs' allegations in Count 4 meet the elements of a First Amendment retaliation claim:

"(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citations omitted). While Douglas and Whitworth argue that they were "not involved in Dubash's arrest" and that probable cause bars Plaintiffs' retaliation claim, they are wrong. The officers arrested Dubash; they lacked probable cause; and probable cause does not bar Plaintiffs' claim over an unhurried retaliatory arrest.

### 1.   *Plaintiffs' allegations meet the standard for a retaliation claim.*

Plaintiffs' allegations show they "were engaged in constitutionally protected activity." *See supra* Section II.A. Plaintiffs have alleged a chilling injury, too. They "fear returning to Discovery Green" to engage in protected expression, and have not returned since Dubash's arrest. Compl. ¶ 229. And in Dubash's case, "there can be little doubt that being arrested for exercising the right to free speech would chill a person of ordinary firmness from exercising that right in the future." *Thurairajah v. City of Ft. Smith*, 925 F.3d 979, 985 (8th Cir. 2019) (cleaned up).

The Individual Defendants argue that the allegations do not show retaliatory motive. City Mot. 16–18. But they neglect the allegations showing that when they threatened Plaintiffs and arrested Dubash, they repeatedly focused only on the "content" of Plaintiffs' videos that they and other park staff found "offensive." Compl. ¶¶ 109–111, 114, 117, 124, 126, 129. Neither Mandel nor the officers stated that Plaintiffs were breaking any written park rule. *Id.* ¶¶ 94, 128. Nor did they point to any conduct independent of Plaintiffs' expressive conduct that the First Amendment protects. *See id.* ¶¶ 103–54. The videos attached to Plaintiffs' complaint prove that the Individual Defendants were solely focused on the content of Plaintiffs speech. Compl. Exs. G1–G3, ECF No. 1-7.

That all shows a connection between the Individual Defendants' retaliatory animus and Plaintiffs' First Amendment injuries. So does the sequence of events leading to Dubash's arrest. *Brady v. Hous. Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (explaining a plaintiff may "rely on a chronology of events from which retaliation may plausibly be inferred") (cleaned up). Plaintiffs' complaint details those events, with (1) park staff and the officers complaining about the "offensive" "content" of Plaintiffs' protected video clips; (2) Dubash peacefully explaining why the First Amendment protected Plaintiffs' speech; and (3) park staff, Douglas, and Whitworth doubling-down on their complaints about "content" and offense. Compl. ¶¶ 103–54. Then, when Dubash stated he would leave the park if he was facing arrest, Officer Douglas responded, "No, you made your decision." Compl. Ex. G-3, at 12:51 [hereinafter Video 3].

So, taking Plaintiffs' allegations as true, they show just one motive the Individual Defendants had for threating Plaintiffs and arresting Dubash—their protected speech.

### 2.   *Harsini has a plausible damages claim for First Amendment retaliation.*

The Individual Defendants argue that Harsini's claim fails "because he was not arrested," and thus experienced only a non-actionable "minor indignity." City Mot. 16. That is wrong. Harsini suffered more than just a "minor indignity"—he endured multiple threats of arrest for exercising his First Amendment rights. Compl. ¶ 127. For instance, when Harsini calmly told Officer Douglas after Dubash's arrest that Plaintiffs' group "[had not] want[ed] to do anything illegal," Officer Douglas threatened, "You want to be next?" Video 3, at 15:40–46.

The key question is whether the allegations show the Individual Defendants' threats caused a chilling injury to Harsini. *Keenan*, 290 F.3d at 258. They do. Harsini is avoiding advocating at Discovery Green because he fears arrest. Compl. ¶ 229. And those threats would also chill a person of ordinary firmness. For example, threats of arrest for "nonprovocatively voicing . . . objection to what [one] obviously felt was a highly questionable detention by a police officer" can make out a

First Amendment injury. *Norwell v. City of Cincinnati*, 414 U.S. 14, 16 (1973); *see also World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 342–43 (5th Cir. 2007) (per curiam) ("Plaintiffs' First Amendment rights were restricted when Columbia's police officers threatened to arrest Plaintiffs if they did not leave the demonstration."). In sum, Harsini has alleged a plausible First Amendment retaliation claim.

### 3.   *Douglas and Whitworth arrested Dubash.*

Try as they may, Officers Douglas and Whitworth cannot dispute Plaintiffs' well-pled allegations on a motion to dismiss. *See Hughes*, 278 F.3d at 420. The officers contend they were not "involved in Dubash's arrest" and thus are not liable for a retaliatory arrest.[3] City Mot. 17. The Court should reject that argument—forcefully. This image from Plaintiffs' complaint shows why:



Compl. ¶ 140; *see also* Video 3, at 13:00–15:00. That is Officer Whitworth standing guard on the left. Compl ¶ 140. And the person slapping handcuffs on Dubash? Officer Douglas. *Id.* All after Officer Douglas told Dubash he was not "free to go." *Id.* ¶¶ 138–40.

---

[3] As Defendants admit, liability under Section 1983 exists if there is "a causal connection between an act of the [defendant] and the constitutional violation sought to be redressed." City. Mot. 7 (quoting *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). That's why, for instance, Mandel is liable under Count 4.

The officers did more. Douglas took Dubash to a park office, and detained him there for two to three hours, handcuffed in a chair. *Id.* ¶ 142. And when Harsini asked Whitworth if "[w]e have First Amendment rights," Whitworth shot back: "It's up to the management." *Id.* ¶ 141. Then he tried to help Officer Douglas escort Dubash to the park office. *Id.* ¶ 142; Video 3, at 15:08. And Douglas's post-arrest statement declares: "DOUGLAS PLACE[D] [Dubash] IN HANDCUFFS AND DETAINED HIM." City Mot. Ex. C, at 7, ECF No. 44-3.

In all cases, the allegations show the officers were "involved in Dubash's arrest." Making matters worse, Officer Whitworth defied his "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Whitley v. Hanna*, 726 F.3d 631, 646 n.11 (5th Cir. 2013) (cleaned up). He knew or should have known threatening Plaintiffs and arresting Dubash for peaceful advocacy on a public issue in a public park violated the Constitution. Compl. ¶ 237; *see Niemotko v. Maryland*, 340 U.S. 268, 271–72 (1951) (holding government violated the First Amendment by enforcing a standardless prior restraint to arrest a religious speaker in a public park). Yet despite having many chances over his encounter with Plaintiffs to stop that violation, Whitworth joined in. He is liable for that choice. *Whitley*, 726 F.3d at 647 (explaining failure-to-intervene liability).

### 4. Nieves *does not bar Dubash's First Amendment damages claims.*

The Individual Defendants also wrongly suggest that *Nieves v. Bartlett* bars Dubash's First Amendment damages claim. City Mot. 18 (citing 139 S. Ct. 1715 (2019)). Not so. Under *Nieves*, probable cause might "defeat a First Amendment *retaliatory* arrest claim." 139 S. Ct. at 1726 (emphasis added) (citation omitted). So *Nieves* does not bar Dubash's direct First Amendment violation Dubash's claim, especially because Douglas and Whitworth based Dubash's arrest solely on his peaceful protected expression. By contrast, the officers in *Nieves* arrested a festivalgoer because of his "combative posture" and "apparent intoxication," on top of his speech. 139 S. Ct.

at 1724. Thus, *Nieves* applies only if the probable cause facts include unlawful conduct, unlike here. *See id*.

Even if *Nieves*'s narrow "probable cause" exception to the usual rule for retaliation claims applies to Dubash's retaliation claim, it still does not bar it. Above all, there was no probable cause to arrest him, as explained below. *See infra* Section VII. And even if probable cause existed, Dubash's claim is within *Nieves*'s holding that probable cause does not bar a retaliation claim when there is "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." 139 S. Ct. at 1727 (citation omitted).[4]

As Plaintiffs allege, Discovery Green has "long served as a locus of protest on matters of public concern for the Houston area." Compl. ¶¶ 69, 82. These include protests against the NRA and the Texas Republican Convention—protests that would offend many Texans. *Id.* ¶¶ 69–76. Discovery Green has hosted other controversial protected expression, like "an LGBTQ celebration that featured music, performances by local drag queens, and a roller-skating dance party" which "spurred complaints from parents who believed the act was not family appropriate." *Id.* ¶¶ 78–79. But neither Mandel, Conservancy staff, nor any "Houston police officer or other city official arrested or interfered with" protesters or speakers at these events. *Id.* ¶¶ 77, 80–81.

At the same time, those same persons cracked down on Dubash because they found his speech "offensive." These allegations showed they singled out Dubash for arrest, compared to these similarly situated individuals engaged in a "[different] sort of protected speech," meeting *Nieves*'s "objective evidence" rule. In all cases, *Nieves* is no bar here.

---

[4] The Supreme Court has granted certiorari to address whether *Nieves*'s exception (1) "can be satisfied by objective evidence other than specific examples of arrests that never happened," and (2) "is limited to individual claims against arresting officers for split-second arrests." *Gonzalez v. Trevino*, 144 S. Ct. 325 (2023) (mem.), *granting cert. to* 42 F.4th 487 (5th Cir. 2022), *reh'g and reh'g en banc denied*, 60 F.4th 906 (5th Cir. 2023) (per curiam) (mem.).

## VI.     Dubash Has Established a Fourth Amendment Damages Claim (Count 7).

The Court should deny Douglas and Whitworth's motion to dismiss Dubash's unlawful seizure and false arrest claim under the Fourth Amendment (Count 7). They do not dispute that Dubash was arrested, but insist they did not make the arrest. City Mot. 22. Again, they wrongly dispute Plaintiffs' well-pleaded allegations. *See Hughes*, 278 F.3d at 420. Even so, this argument fails for two reasons. First*,* both officers unlawfully *seized* Dubash. *Kaupp v. Texas*, 538 U.S. 626, 629 (2003); *see supra* Section VI.B.3. Second, the Supreme Court already held that handcuffing a person and detaining him in a room is an arrest. *Kaupp*, 538 U.S. at 630.

Indeed, Plaintiffs' allegations, taken as true, meet the linchpin of an unlawful seizure or false arrest—lack of probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996) (citation omitted). The only "facts and circumstances" for Douglas and Whitworth's probable cause determination were (1) the "content" of Plaintiffs' video clips; (2) park management's claim (and perhaps the officers' belief) that the video clips were "offensive"; and (3) park management's claim that Discovery Green is "private." Compl. ¶¶ 104–41. No reasonable officer would have found probable cause for criminal trespass based on that.

Texas courts have repeatedly told police that they may enforce the state criminal trespass statute "without discrimination" and when "not used for the primary purpose of suppressing speech." *Reed v. State*, 762 S.W.2d 640, 644 (Tex. App.—Texarkana 1988) (citing cases); *Otwell v. State*, 850 S.W.2d 815, 818 (Tex. App.—Fort Worth 1993) (citing *Reed*); *Thompson v. State*, 12 S.W.3d 915, 922 (Tex. App.—Beaumont 2000) (same). Yet the allegations show Douglas and Whitworth knew that Mandel and park staff were demanding to trespass Plaintiffs from Discovery

Green to silence "content" they found "offensive," not for any content- or viewpoint-neutral reason. *E.g.*, Compl. ¶¶ 116–17, 124–29; Video 3, at 01:40, 04:40, 05:26–06:02. Thus, because the only basis for arresting Dubash was discriminating against and "suppressing speech," the officers had no probable cause to arrest under Texas law. *E.g.*, *Reed*, 762 S.W.2d at 644.

Officers Douglas and Whitworth insist that probable cause existed because of park management's claims that Discovery Green is a private park. City Mot. 26. But probable cause turns on objective evidence, not park staff's personal whims. *E.g.*, Compl. ¶¶ 45–47. That is why police like Douglas and Whitworth "may not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988); *see also King v. Massarweh*, 782 F.2d 825, 826, 828 (9th Cir. 1986) (finding no probable cause to arrest renters for trespassing where officers ignored, *inter alia*, "indicia of residency"). Yet they ignored the obvious signs confirming that Discovery Green is public. Compl. ¶¶ 45–47, 53. Even a "[m]inimal further investigation" of the park rules, as the law required the officers to do, *Bigford*, 834 F.2d at 1219, would have revealed Discovery Green is "a dedicated public park," Compl. ¶ 47. And when Dubash peacefully gave the officers concrete evidence that Discovery Green is a public park, they ignored it, too, instead yielding to management's stubborn claim that it is private. Compl. ¶¶ 121–26; *see also id.* ¶¶ 132–36. That brazen disregard for facts "tending to dissipate probable cause" defeats Douglas and Whitworth's argument about relying on park management.

Because reasonable officers would have known Discovery Green is a public park, there is one more reason Officers Douglas and Whitworth lacked probable cause: They "base[d] [their] probable cause determination on an 'unjustifiable standard,' such as speech protected by the First Amendment." *Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010) (quoting *Wayte v. United States*, 470 U.S. 598, 608 (1985)); *see also McLin v. Ard*, 866 F.3d 682, 695 (5th Cir. 2017) (finding

no probable cause for a violation of Louisiana's criminal defamation statute based on protected speech).[5] Decades of case law shows the First Amendment protected Plaintiffs' peaceful advocacy on a public issue in a public park, even if Mandel, the officers, and others found Plaintiffs' expression "offensive." *See supra* Section II; *infra* Section VIII.C. Douglas and Whitworth had no reasonable basis to arrest Dubash for simply exercising his First Amendment rights, underscoring why the Court should deny their motion to dismiss Count 7.

## VII.   Qualified Immunity Does Not Shield Officers Douglas or Whitworth for Clamping Down on Peaceful Advocacy in a Public Park.

Qualified immunity shields neither Douglas nor Whitworth from Counts 4 and 7.[6] Qualified immunity's "clearly established law" question turns on whether "a reasonable official would understand that what he is doing violates [a constitutional] right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, the "central concept" of the "clearly established" standard is "fair warning." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Here, a reasonable official would have had fair warning that threatening or arresting a peaceful advocate in a public park based on the content of his speech—even if "offensive"— violates the First Amendment and Fourth Amendment. At their core, Plaintiffs allegations show an obvious constitutional violation that defeats qualified immunity, even without factually identical precedent. *Hope*, 536 U.S. at 741; *see also Sause v. Bauer*, 138 S. Ct. 2561, 2562 (2018) (per curiam) (recognizing that "[t]here can be no doubt that the First Amendment protects the right to

---

[5] The Fifth Circuit's recent, splintered 9-7 en banc decision in *Villarreal v. City of Laredo* suggests disagreement with decisions like *Wayte* and *Mink*, so long as the facts and circumstances fit the literal elements of a state statute. No. 20-40359, 2024 WL 244359, at *5-9 (5th Cir. Jan. 23, 2024). But no matter *Villarreal*'s scope, it does not help Officers Douglas and Whitworth here, because Texas courts have affirmed that officers cannot use speech as probable cause for criminal trespass. *E.g.*, *Reed*, 762 S.W.2d at 644 (citing cases).

[6] Defendant Mandel does not raise qualified immunity, and thus has waived it. *See* City Mot. 24–28.

pray"). Plaintiffs also defeat qualified immunity because "general constitutional rule[s] already identified in the decisional law apply with obvious clarity" to Officers Douglas and Whitworth's acts that the allegations detail. *Hope*, 536 U.S. at 741 (cleaned up).

> **A.    Threatening and arresting peaceful advocates in a public park because of their speech is an obvious First Amendment violation.**

Douglas and Whitworth threatened Plaintiffs and ultimately arrested Dubash for peaceful advocacy in a public park. That is an obvious First Amendment violation, and the Court should deny qualified immunity for that reason. "After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing." *Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) (Gorsuch, J., for the majority) (denying qualified immunity on motion to dismiss). As one federal court concluded in denying qualified immunity to police who arrested protesters in a public square outside the White House, there is an obvious "right to be free from government violence for the peaceful exercise of protected speech [which] is . . . fundamental to our system of ordered liberty." *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 47 (D.D.C. 2021) (citations omitted). That same right is obvious here: Dubash and Harsini had a right to be free from threats and arrests for peacefully advocating on a public issue in a public park, whether though spoken words, a picket sign, or videos, and even if some found their speech "offensive."

Time after time, the Supreme Court has declared public officials' attempts to moralize speech in public places unconstitutional. If the First Amendment prohibits criminalizing wearing "Fuck the Draft" in a courthouse, *Cohen v. California*, 403 U.S. 15, 26 (1971), punishing waiving signs with "Thank God for Dead Soldiers" outside a military funeral, *Snyder*, 562 U.S. at 458, and censoring drive-in movie screens because minors might see a bare breast, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975), then arresting Dubash for showing some unsettling clips

of industrial animal practices in a public park is an obvious constitutional violation.

**B.    Having fair warning of a constitutional violation, no reasonable officer would have acted like Officers Douglas and Whitworth did.**

Douglas and Whitworth are wrong to insist that some "complex framework of First Amendment analysis" supports qualified immunity. City Mot. 27. By contrast, settled First Amendment principles often apply to give fair warning of a constitutional violation. For instance, the Fifth Circuit recently denied qualified immunity to a police officer who arrested a man for making a joke comparing COVID-19 to a fictional zombie apocalypse. *Bailey v. Iles*, 87 F.4th 275, 286–90 (5th Cir. 2023). Even without a factually identical decision, the unanimous panel held that "[b]ased on decades of Supreme Court precedent," the officer "violated Bailey's clearly established First Amendment right to engage in speech even when some listeners consider the speech offensive, upsetting, immature, in poor taste, or even dangerous." *Id.* at 289–90.

Here, decades of Supreme Court and Fifth Circuit decisions gave fair warning of First Amendment and Fourth Amendment violations. Start with a decades-old principle: the First Amendment protects expression through film. *Burstyn*, 343 U.S. at 502. Then in 2010, the Supreme Court affirmed that protection includes films showing animal cruelty. *Stevens*, 559 U.S. at 468. And as any reasonable officer would know, the First Amendment relentlessly protects speech on matters of public concern, like speech about animal mistreatment. *Snyder*, 562 U.S. at 451–52. Thus, no reasonable officer could have believed showing documentary clips of industrial animal practices was unprotected speech.

Second, the law has long-recognized that since "*time out of mind*," public parks "have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague Comm.*, 307 U.S. at 515 (emphasis added); *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (quoting *Hague*); *Edwards v. South Carolina*, 372

U.S. 229, 233 (1963) (holding police violated the First Amendment by threatening and arresting peaceful protestors on public sidewalk). On that basis alone, the Court should deny qualified immunity, because no reasonable officer would have threatened or arrested someone in Discovery Green for what they knew was protected peaceful advocacy. *Keating v. City of Miami*, 598 F.3d 753, 766–67 (11th Cir. 2010) (holding police officers using force on protestors violated "clearly established right to assemble, protest, and demonstrate peacefully" on public property, even without on-point precedent); *Quraishi v. St. Charles County*, 986 F.3d 831, 838–39 (8th Cir. 2021) (denying qualified immunity to an officer who tear-gassed reporters filming a public protest, as a "consensus of cases of persuasive authority" clearly established a First Amendment violation); *Black Lives Matter*, 544 F. Supp. 3d at 45; *see also Davidson*, 848 F.3d at 393 (holding it was objectively unreasonable for officers to arrest man "exercising his First Amendment rights by protesting" on a public sidewalk and greenspace); *Ballentine v. Tucker*, 28 F.4th 54, 66 (9th Cir. 2022) (denying qualified immunity to a detective after he arrested activists for "chalking" anti-police messages on public sidewalks); *Herrera v. Acevedo*, No. 21-20520, 2022 WL 17547449, at *3 (5th Cir. Dec. 9, 2022) (affirming denial of qualified immunity for falsely arresting protestors).

That Douglas and Whitworth targeted Plaintiffs because the "content" of their videos was "offensive" only highlights why qualified immunity does not shield them. As the Fifth Circuit reiterated years ago: "Official censorship based on a state actor's subjective judgment that the content of protected speech is offensive or inappropriate is viewpoint discrimination." *Robinson*, 921 F.3d at 447 (citing *Matal*, 582 U.S. at 244; *id.* at 248 (Kennedy, J., concurring)). Yet arrest Dubash based on their "subjective judgment" that Dubash's speech "is offensive or inappropriate" is exactly what Douglas and Whitworth did. No reasonable officer would have done the same.

For all these reasons, qualified immunity does not shield Officers Douglas or Whitworth.

*Bailey*, 87 F.4th at 289–90 (no qualified immunity for arresting man over a joke, even if it offended

some); *Leonard v. Robinson*, 477 F.3d 347, 361 (6th Cir. 2007) (no qualified immunity for police

officer who arrested a man for uttering profanity at a public meeting). In fact, their argument for

qualified immunity is especially weak because they faced no exigent circumstances. *See Hoggard*

*v. Rhodes*, 141 S. Ct. 2421, 2422 (2021) (statement of Thomas, J., respecting the denial of

certiorari) (questioning why government censors "who have time to make calculated choices . . .

receive the same protection as a police officer who makes a split-second decision to use force in a

dangerous setting?"). Having months between the incident in November 2021 and Dubash's arrest,

reasonable officers would have gotten it right. But Douglas and Whitworth did not.

## C.     None of the officers' justifications support qualified immunity.

Officers Douglas and Whitworth offer several reasons for why stifling peaceful advocacy

in a public park was "objectively reasonable." The Court should reject them all. First, "objectively

reasonable" is not a distinct prong as Douglas and Whitworth suggest. City Mot. 25–26. Rather, it

is part of the "clearly established" prong. *E.g.*, *Baker v. Coburn*, 68 F.4th 240, 251 n.10 (5th Cir.

2023). Given the consensus of clearly established law, let alone the obvious right to peacefully

advocate in a public park, there was nothing "objectively reasonable" about the officers' punishing

Plaintiffs' advocacy because of its "offensive" "content." Compl. ¶¶ 124, 126, 129.

Second, the allegations disprove Douglas and Whitworth's claim that they "were within

their rights to rely on statements by Discovery Green that it was a private park." City Mot. 26. The

nature of Discovery Green, its signs, its rules, and more establish it as a public park, no matter

what park management insisted. Compl. ¶¶ 45–48. Dubash even gave the officers that information

before they arrested him. *Id.* ¶ 121. So the officers are not, as they insist, being "held to a title-

searcher's knowledge of metes and bounds." City Mot. 26 (quoting *Saldana v. Garza*, 684 F.2d

1159, 1165 (5th Cir. 1982)). Discovery Green is no private driveway like that in *Saldana* or an ill-

defined green space, like that in *Bodzin v. City of Dallas*. *Id.* (citing 768 F.2d 722, 724 (5th Cir.

1985)). Instead, "[v]isitors entering Discovery Green are told on a prominent sign at the park that

the Houston Downtown Park Corporation and the City of Houston own the park." Compl. ¶ 53.

Because a reasonable officer would have known Discovery Green is a public park with

robust First Amendment protection, no reasonable officer would have hidden behind park

management's misguided views or left the arrest decision "up to the management," as Douglas and

Whitworth did. City Mot. 5, 26–27; Compl. ¶¶ 133–36. It is obvious that a public official's duty

to the Constitution trumps a park manager's whims. U.S. Const. art. VI, cl. 2; *cf. Dickson v. Lilith

Fund for Reprod. Equity*, 647 S.W.3d 410, 417 (Tex. App.—Amarillo 2021) (explaining that

reasonable Texans know the Constitution is "the supreme Law of the Land"); *Chiu*, 339 F.3d at

280 (making "speech contingent on the will of an official" is an "unconstitutional burden[] on

speech.").

Third, the officers' arguments about probable cause fail. For one thing, probable cause is

no shield to the unconstitutional *threats* they made against Plaintiffs. Compl. ¶ 221. Beyond that,

the officers lacked even *arguable* probable cause to arrest Dubash. *See supra* Section VII;

*Davidson*, 848 F.3d at 392–93 (applying "arguable probable cause" standard in denying qualified

immunity). The Supreme Court explained long ago that it violates the Constitution to enforce state

trespass laws on public property against protected expression. *Marsh v. Alabama*, 326 U.S. 501,

503–05, 509–10 (1946). Texas court decisions have also affirmed that police can criminally

trespass only "without discrimination" and if "not used for the primary purpose of suppressing

speech." *E.g.*, *Reed*, 762 S.W.2d at 644 (citing cases). With that, no reasonable officer could have

found probable cause for trespass, and qualified immunity is no shield for Douglas or Whitworth.

## VIII. Plaintiffs' Allegations Show the City, the Park Corporation, and the Conservancy Have Violated Dubash's Religious Freedom (Counts 5-6).

Defendants' motions to dismiss Dubash's free exercise claim (Count 5) and TRFRA claim (Count 6) rest on mistaken views of the law and the allegations. Taken as true, Dubash's allegations show plausible claims under both religious freedom claims.

### A. Dubash sufficiently alleges a Free Exercise claim (Count 5).

The removal of Dubash from Discovery Green several times, his arrest, and his ongoing ban from proselytizing at Discovery Green constitute Free Exercise violations. Defendants argue that Dubash fails to assert sufficient facts in support of his Free Exercise claim. But they misunderstand the doctrine and ignore the allegations.

#### 1. *Removing Dubash from Discovery Green, arresting him, and censoring his proselytization, substantially burden his religious exercise.*

By removing Dubash from the park on three separate occasions and then arresting him and placing prohibitions on his method of proselyting, Defendants have placed a substantial burden on Dubash's religious exercise. A person suffers a substantial burden when forced to choose between following a dictate of the government and following his religion. *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 793 (5th Cir. 2012) (as corrected Feb. 20, 2013). This is exactly the situation that Defendants forced Dubash into.

Dubash is a follower of the Vendantic stream of Hinduism and believes in *ahimsa*, a teaching of non-violence against all. Compl. ¶ 12. Through teachings by his spiritual teacher, Dubash believes that *ahimsa* extends to animals as well as humans and that he is required to spread this message to others. *Id.* ¶¶ 23–24. To practice his faith, he participates in Anonymous for the Voiceless and leads Cubes of Truth demonstrations. *Id.* ¶ 25.

By removing Dubash from Discovery Green several times and explicitly banning his method of proselytizing *ahimsa*, Defendants substantially burden Dubash's religious exercise. *Id.*

¶¶ 83–141. Defendants have forced Dubash to choose between risking jail by spreading his faith through Cubes of Truth or halting his spread of *ahimsa*. *See Wisconsin v. Yoder*, 406 U.S. 205, 207–08 (1972) (five dollar fine constitutes substantial burden).

### 2. *Defendants' policies and actions are not generally applicable.*

A rule is not generally applicable if it "provid[es] a mechanism for individualized exemptions," and "permit[s] the government to grant exemptions based on the circumstances." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021) (cleaned up). Defendants have implemented exactly this kind of rule. As alleged, Dubash's removal from Discovery Green was solely the result of the discretion of Conservancy personnel, including then-president Mandel. Compl. ¶¶ 86, 89, 98, 107–14, 127. During an interaction with Conservancy management, Conservancy Production Coordinator Willis stated "'So I just talked to Barry, and we are officially asking you to leave the property.'" *Id.* ¶ 127. When Harsini asked Officer Whitworth "we have First Amendment rights, right?" Whitworth responded with "it's up to the management." *Id.* ¶ 141. The videos displayed and the masks used do not violate any rules or ordinances. *Id.* ¶ 87. Rules that are "up to the management" are not generally applicable.

A policy is also not generally applicable if the conduct banned is similar to secular conduct that is permitted. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2423 (2022). The Conservancy stated that it was banning the videos and masks based on what park staff deemed "appropriate." Compl. ¶ 112. But Dubash alleges how Conservancy staff have endorsed other demonstrations at the park that some might find "inappropriate," like a mass protest against the NRA's annual convention and "Rainbow on the Rink," an LGBTQ celebration involving performances by local drag queens and a dance party. *Id.* ¶¶ 74, 78. By disfavoring Dubash's religious practice while allowing similar secular conduct, Defendants trigger strict scrutiny.

3.  ***Defendants' prohibition against Dubash's religious exercise fails to satisfy strict scrutiny.***

Defendants fail to satisfy strict scrutiny because the rules applied to Dubash fail to advance a compelling interest and are not narrowly tailored. Using the offensive character of a religious exercise as the basis for banning that exercise is not a legitimate government interest, much less a compelling one. *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n*, 447 U.S. 530, 548 (1980) (Stevens, J., concurring). And a complete ban fails narrow tailoring, which would be limited to the actual harms asserted. For the same reasons Defendants fail strict scrutiny as to the Free Speech claims, they fail it for Free Exercise. *See supra* Section II.B.

Defendants assert that there was no knowledge that Dubash held these beliefs. City Mot. 19. But they cite no case (nor could they) creating a "knowledge" requirement. *Cf. Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993) (no mention of knowledge of placing burden within Free Exercise violation inquiry).

**B.  Dubash Pleads a Sufficient Claim Under Requirements for TRFRA.**

Similarly, the Court should not dismiss Dubash's TRFRA claim against the City and the Park Corporation (Count 6). TRFRA prevents state and local Texas governments from substantially burdening a person's free exercise of religion unless doing so furthers a compelling governmental interest in the least religiously restrictive manner. Tex. Civ. Prac. & Rem. Code § 110.003. Plaintiffs have sufficiently alleged that Defendants substantially burdened Mr. Dubash's free exercise of religion. There is no compelling interest in censoring Mr. Dubash's proselytization nor is a complete ban the least restrictive means of pursuing any relevant interest. Defendants' actions, despite their arguments otherwise, constitute a violation of TRFRA.

Defendants mischaracterize the text of TRFRA and the case law analyzing it. City Mot. 20–21. Under TRFRA, whether a burden is "substantial" depends on whether it is "real vs. merely

perceived, and significant vs. trivial." *Barr v. City of Sinton*, 295 S.W.3d 287, 301 (Tex. 2009).[7] Courts focus on "the degree to which a person's religious conduct is curtailed and the resulting impact on his religious expression." *Id.* Defendants *arrested* Dubash for exercising his religion, curtailing his future religious conduct. Compl. ¶ 3. That burden is real, and it is significant.

Binding case law negates Defendants' arguments. They claim government actions do not create a substantial burden if they are generally applicable, City Mot. 20 (quoting *Hill v. Cruz*, 2006 U.S. Dist. LEXIS 69094, at *4 (S.D. Tex. Sep. 26, 2006)), but TRFRA protects believers against "generally applicable laws that incidentally burden religious conduct." *Merced v. Kasson*, 577 F.3d 578, 591 (5th Cir. 2009).

Defendants also suggest, incorrectly, that Mr. Dubash's exercise of his religion is not substantially burdened if his religious convictions do not "*compel*" him to show videos and he "simply *prefer[s]*" to do so. City Mot. 21. However, "a burden on a person's religious exercise is not insubstantial simply because he could always choose to do something else." *Barr*, 295 S.W.3d at 303. The relevant inquiry under TRFRA is "not whether the governmental regulations substantially burden a person's religious free exercise broadly defined, but whether the regulations substantially burden a specific religious practice." *Merced*, 577 F.3d at 591 (citing Tex. Civ. Prac. & Rem. Code § 110.001(a)(1)). Here, the practice is spreading *ahimsa* at Discovery Green through accurate videos and wearing Guy Fawkes masks. Compl. ¶¶ 158, 251. And Defendants' argument that Mr. Dubash is not violating a tenet of his religion by not showing videos, City Mot. 21, must be rejected because his conduct is "substantially motivated by sincere religious belief." Tex. Civ.

---

[7] Defendants inaccurately assert that the "Texas Supreme Court has adopted the [substantial burden] analysis articulated in the Fifth Circuit's opinion in *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004)." City Mot. 20 (discussing *Barr*, 295 S.W.3d at 301). However, *Barr* chose to use the words' "ordinary meanings in common parlance," 295 S.W.3d at 301 (relying on *Webster's Third New International Dictionary*), rather than using the *Adkins* approach of considering, among other things, "legislative history," 393 F.3d at 569.

Prac. & Rem. Code § 110.001(a)(1); *see* Compl. ¶¶ 250–51 (describing religious motivation).

Defendants have imposed a substantial burden on Mr. Dubash's exercise of religion, and Defendants bear the burden of proving these actions were "in furtherance of a compelling governmental interest." Tex. Civ. Prac. & Rem. Code § 110.003(b)(1); *Barr*, 295 S.W.3d at 307. As explained above, censoring protected speech is not a compelling government interest, and a complete ban is not the least restrictive means of achieving any relevant interest. *Supra* Section II.B. Notably, despite receiving the required statutory notice under TRFRA, Defendants did not even attempt to accommodate Mr. Dubash's religion. Compl. ¶ 252; Compl. Exs. E–F, ECF Nos. 1-5, 1-6. Just as Defendants' actions fail strict scrutiny requirements under the First Amendment, they fail the same under TRFRA.

## IX.    Plaintiffs Plausibly Allege an Unlawful Delegation Claim Against the City (Count 8).

The City attempts to avoid responsibility by arguing that Discovery Green is a park operated by the Conservancy (a private entity) over which the City has no control.[8] But Plaintiffs allege how the City *has* that control—Houston police *arrested* Mr. Dubash. *See also* Compl. ¶¶ 73–77 (alleging Mayor and police maintain protest zone in Discovery Green for NRA protests). If the City *does not* control what happens in a City-owned public park, the City's arrangement violates the Texas Constitution by unlawfully delegating government power to a private actor.

Article II, Section I of the Texas Constitution provides that "[t]he powers of the Government of the State of Texas shall be divided into three distinct departments . . . and no person, or collection of persons, being of one of these departments, shall exercise any power

---

[8] Should this Court accept that argument, the City would likely be judicially estopped from contesting the private delegation claim. *See Hall v. GE Plastic Pac. PTE Ltd.,* 327 F.3d 391, 396 (5th Cir. 2003) ("In this Circuit, two bases for judicial estoppel must be satisfied before a party can be estopped. First, it must be shown that the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position.") (cleaned up).

properly attached to either of the others." Tex. Const. art. 2, § 1. That clause places a "prohibition on unwarranted delegation of lawmaking power," a prohibition that is even stricter when considering delegation to a *private* party. *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997) (supplemented on denial of reh'g Oct. 9, 1997).

To preserve democratic self-rule, the Supreme Court of Texas developed an eight-factor balancing test for evaluating private delegations:

1. Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?

2. Are the persons affected by the private delegate's actions adequately represented in the decision-making process?

3. Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?

4. Does the private delegate have a pecuniary or other personal interest that may conflict with his or her public function?

5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?

6. Is the delegation narrow in duration, extent, and subject matter?

7. Does the private delegate possess special qualifications or training for the task delegated to it?

8. Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Boll Weevil*, 952 S.W.2d at 472. The overwhelming balance of these factors points towards an improper delegation here. First, the Conservancy's actions are not subject to meaningful review. Instead, the Conservancy has the "exclusive right" to establish rules and regulations for the park, Operating Agreement § 4.3, and it uses that right to place all discretion into the hands of then-Park President, Defendant Mandel, who used that power to favor his preferred speech and punish disfavored expression. *See, e.g.*, Compl. ¶¶ 78–81. Second, the Conservancy does this without input or comment from those who attend Discovery Green and are impacted by the park's rules.

37

*See* Operating Agreement § 4.3. Third, the Conservancy applies its power to specific individuals. Compl. ¶¶ 66, 127. Fourth, the Conservancy's decisions can result in criminal penalties (as demonstrated here). *Id.* Fifth, the delegation was not narrow in scope or duration, giving plenary power to the Conservancy for 50 years. *See* Operating Agreement § 3.1. Sixth, the Conservancy has no training or special qualifications. Compl. ¶ 64. Finally, there aren't sufficient standards (or indeed any standards at all) to guide park rules or enforcement. Operating Agreement § 4.

Taking Plaintiffs' allegations as true, the *Boll Weevil* factors decisively show the City unlawfully delegated government power to the Conservancy.

## X.   The Park Corporation's Arguments on Subject Matter Jurisdiction Fail.

The Park Corporation argues for dismissal under Rule 12(b)(1) claiming that this Court lacks subject-matter jurisdiction but makes no arguments about Article III standing or justiciability. Corp. Mot. 11–16. And there is no question that Plaintiffs make "colorable" claims under the United States Constitution and Section 1983 that invoke federal question jurisdiction. Compl. ¶ 9; *WickFire*, 989 F.3d at 352 & n.34. While the Park Corporation claims to make a "factual challenge" to Plaintiffs' Complaint, it is no more than a 12(b)(6) argument posing as a 12(b)(1) motion. Corp. Mot. 11–16. And as Plaintiffs show, they state valid claims against the Park Corporation.[9] *See supra* Section I. Thus, the Court should deny the Park Corporation's Rule 12(b)(1) motion.

## CONCLUSION

For all the reasons stated, the Court should deny Defendants' motions to dismiss. Plaintiffs request oral argument on the motions.

---

[9] The Park Corporation suggests that *Monell* standards apply the claims against it. Corp. Mot. 13–14. But the Park Corporation is not a municipal actor; rather, it is an arm of the City. *See supra* Section I.A. Even if *Monell* controlled, Plaintiffs' claims would stand, as the Park Corporation has adopted a policy of allowing the Conversancy unfettered discretion over park operations, failed to train the Conservancy on its First Amendment duties, and (or alternatively) delegated authority to the Conservancy, all of which caused the First and Fourth Amendment violations alleged. *E.g.*, Compl. ¶¶ 171, 186–87, 191, 211; Operating Agreement; *see also supra* Sections I and V.

Dated: February 5, 2024

Respectfully submitted,

/s/ John Greil

John Greil (TX 24110856)
Steven T. Collis (TX 24122632)
Law and Religion Clinic
University of Texas School of Law
727 E. Dean Keaton St.
Austin, TX 78705
(512) 475-9090
John.greil@law.utexas.edu
Steven.collis@law.utexas.edu

JT Morris (TX 24094444)
Gabe Walters*
Foundation for Individual Rights and Expression
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
jt.morris@thefire.org
gabe.walters@thefire.org

Daniel Ortner*
Foundation for Individual Rights and Expression
510 Walnut St., Suite 900
Philadelphia, PA 19106
(215) 717-3473
daniel.ortner@thefire.org

*Admitted pro hac vice

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2024, I electronically filed the foregoing Plaintiffs' Consolidated Opposition to Defendants' Motions to Dismiss with the Clerk of the United States District Court for the Southern District of Texas using the CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ John Greil
John Greil