**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DARAIUS DUBASH, and DR. FARAZ HARSINI** | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION** |
| | § | **CASE NO. 4:23-cv-03556** |
| **v.** | § | |
| | § | |
| **CITY OF HOUSTON, TEXAS; HOUSTON DOWNTOWN PARK CORPORATION; OFFICER ROBERT DOUGLAS (# 7943), in his Individual capacity; OFFICER VERN WHITWORTH (# 7595), in his individual capacity; DISCOVERY GREEN CONSERVANCY f/k/a HOUSTON DOWNTOWN PARK CONSERVANCY; and BARRY MANDEL, in his individual capacity,** | § § § § § § § § § § § | |
| **Defendants.** | § § § | |

**DEFENDANT CITY OF HOUSTON, TEXAS, OFFICER ROBERT DOUGLAS (# 7943),
OFFICER VERN WHITWORTH (# 7595), DISCOVERY GREEN CONSERVANCY,
AND BARRY MANDEL'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO
Fed.R.Civ.P. 12(b)(6)**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................1

<u>ARGUMENT</u>

PLAINTIFFS FAIL TO SHOW THAT THEY ADEQUATELY PLED A
CONSTITUTIONAL VIOLATION ...............................................................................1

A.     Plaintiffs' Numerous Factual Mischaracterizations Warrant Clarification ........................1

B.     The City is not "Dodging the Constitution" (Responding to Point I)...................................3

C.     Plaintiffs Conflate Their First Amendment Right to Possess The Video In Question
With A Claim That They Can Broadcast It Anywhere They Like (Responding to
Point II-A) .........................................................................................................5

D.     Plaintiffs' Implication That They Can Project Any Video, Wherever and However
They Wish, Is Baseless .......................................................................................5

E.     Plaintiffs Were Not Engaged In Expressive Conduct...........................................................9

F.     Plaintiffs Are Not Under an Unconstitutional Prior Restraint (Responding to
Point III)...........................................................................................................10

G.     Plaintiffs' Argument that the Complaint Alleges Facts Sufficient to Assert
A *Monell* Claim Is Undermined By the Complaint's Own Allegations
(Responding to Point IV) ...................................................................................12

H.     Under Either a Direct or Retaliation Theory, Plaintiffs Are Entitled to No
Damages (Responding to Point V) .....................................................................16

I.     Plaintiffs Do Not Plead a Fourth Amendment Claim (Responding to Point VI)..............17

J.     Plaintiffs Fail to Show That The Officers Are Not Entitled To Qualified Immunity
(Responding to Point VII)...................................................................................18

K.     Dubash Fails To Show a Free Exercise Violation (Responding to Point VIII-A)..............19

L.     Dubash Has Not Shown a Texas RFRA Violation (Responding to Point VIII-B)...........20

M.     Plaintiffs' Attempt to Show Unlawful Delegation Fails (Responding to Point IX) ..........22

CONCLUSION................................................................................................................22

## **TABLE OF AUTHORITIES**

### FEDERAL CASES

*Adderley v. Florida*, 385 U.S. 39 (1966) ........................................................................6

*Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) ..........................................................21

*Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023)..................................................................18

*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988) ........................................................18

*City of Canton v. Harris*, 489 U.S. 378 (1989).............................................................13

*Clark v. Comm'ty for Creative Non-Violence*, 468 U.S. 288 (1984)...............................9

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017)..........................................16

*Deleon v. Nueces County*, 2023 U.S. App. LEXIS 17523 (5th Cir. Jul. 11, 2023) .......14

*Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985)............................................................15

*Employment Div. v. Smith*, 494 U.S. 872 (1990) ..........................................................19

*Erznoznik v. Jacksonville*, 422 U.S. 205 (1975) .............................................................6

*Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375 (5th Cir. 2005)...................14

*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009)............................................17

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1988) ...............................................8

*Fraire v. Arlington*, 957 F.2d 1268 (5th Cir. 1992)......................................................14

*Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021) .................................................19

*Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785 (8th Cir. 2004) ..........7, 8, 9, 22

*Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640 (1981)..........................5

*Hill v. Colorado*, 530 U.S. 703 (2000) .......................................................................6, 8

*Hill v. Cruz*, 2006 U.S. Dist. LEXIS 69094 (S.D.Tex. Sep. 26, 2006)...........................21

*Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407 (2022).........................................19, 20

*Living Water Church of God v. Charter Twp. Meridian*, 258 Fed.Appx. 729
(6th Cir. 2007) (unpub. order) ............................................................21

*McFaul v. Valenzuela*, 684 F.3d 564 (5th Cir. 2012) .................................21

*Mendoza v. Round Rock Indep. Sch. Dist.*, 854 Fed.Appx. 612 (5th Cir. 2021)
(unpub. order) ....................................................................................13

*Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011) ..............6, 11, 12

*Monell v. Dep't of Social Services*, 436 U.S. 658 (1978) .........................15

*Nouri v. County of Oakland*, 615 Fed.Appx. 291 (6th Cir. 2015) (unpub. order) .........14

*Olmer v. City of Lincoln*, 192 F.3d 1176 (8th Cir. 1999) .......................8, 22

*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009)...................14

*Price v. Dallas Area Rapid Transp. Police Dep't*, 2019 U.S. Dist. LEXIS 133480
(N.D. Tex. Jul. 8, 2019) ..........................................................6, 17, 18

*Reed v. Town of Gilbert,* 576 U.S. 155 (2015) ........................................2

*Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406 (2d Cir. 1990)...........15

*Saldana v. Garza*, 684 F.2d 1159 (5th Cir. 1982)....................................19

*SEIU, Local 5 v. City of Houston*, 595 F.3d 588 (5th Cir. 2010)..................11

*Spears v. City of Tucson*, 125 F.Supp.3d 903 (D.Ariz. 2015) ....................17

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008)...................7

*Texas v. Johnson*, 491 U.S. 397 (1989) ...........................................9, 10

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) ..................14

*U.S. ex rel. Miniex v. Houston Hous. Auth.*, ___ Fed.Appx. ___, 2023 U.S. App.
LEXIS 25226 (5th Cir. Sep. 22, 2023) (unpub. order) .................4, 12

*U.S. v. Grace*, 416 U.S. 171 (1983) .....................................................6

*U.S. v. Marcavage*, 609 F.3d 264 (3d Cir. 2010).....................................7

*U.S. v. Stevens*, 559 U.S. 460 (2010) ..................................................5

*Villarreal v. City of Laredo*, 2024 U.S. App. LEXIS 1533 (5th Cir. Jan. 23, 2024)
(en banc)................................................................................................................16, 17

## STATE CASES

*Reed v. State*, 762 S.W.2d 640 (6th Ct. Apps.—Texarkana 1988, pet. den.), *cert den.*,
*sub nom*, *Harris v. Texas*, 493 U.S. 922 (1989) ...............................................17

*Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679 (Tex. 1992) .......................................22

## PRELIMINARY STATEMENT

Defendants City of Houston, Texas ("the City"), Officer Robert Douglas and Officer Vern Whitworth ("the Officers,"), Discovery Green Conservancy f/k/a Houston Downtown Park Conservancy ("the Conservancy"), and Barry Mandel (collectively, "the Moving Defendants" or "Defendants") submit this Memorandum of Law in Reply to Plaintiffs' opposition to Defendants' motion for an Order pursuant to Fed.R.Civ.P. 12(b)(6), dismissing the Complaint for failure to state a claim upon which relief may be granted.

## ARGUMENT

### PLAINTIFFS FAIL TO  SHOW THAT THEY ADEQUATELY PLED A CONSTITUTIONAL VIOLATOIN.

In their chief motion papers, the Moving Defendants argued that Plaintiffs' case relies upon a mischaracterization of the Conservancy's motivation for asking Plaintiffs to stop displaying their video. Predictably, Plaintiffs' opposition papers follow that same strategy. Plaintiffs prop up a strawman premise that the Conservancy sought to stamp out their message and to prevent them from speaking against animal cruelty at Discovery Green, and then proceed to attack that same strawman by arguing that the Conservancy was engaging in rank viewpoint discrimination targeting their beliefs, which they claim cannot survive strict scrutiny. However, viewed against the actual facts of this case, both as pled in the Complaint and *established in the exhibits to the Complaint*, their arguments unquestionably fail.

### A.      Plaintiffs' Numerous Factual Mischaracterizations Warrant Clarification.

Plaintiffs' opposition papers are so replete with mischaracterizations of fact that, before addressing the legal merits, a response devoted to correcting them is warranted. First, Plaintiffs claim that Defendants placed a "blanket ban" on their "expression," which they describe as "showing videos and opposing animal cruelty." (Pl. Opp., p. 8). However, Defendants never

advised Plaintiffs that they could not show "videos," in the abstract; only that footage of cruelty to animals was not permitted.[1] More importantly, Plaintiffs were never told they could not engage in expression "opposing animal cruelty." In fact, the opposite is true. The videos they attach to their Complaint reveal that they were repeatedly told that they could advocate on their topic all they wished (Doc. 44, pp. 4-5, citing Plaintiffs' video exhibits). Plaintiffs were only asked not to publicly show footage of cruelty to animals. They were never told that their topic was "offensive."

Plaintiffs claim that prohibiting public display of the videos is content-based because it is based on "the topic discussed or the idea or message expressed." (Pl. Opp., p. 11 [quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)]). Again, Defendants have never forbidden Plaintiffs from "discuss[ing]" any topic, or "express[ing]" anything about "the idea or message" against cruelty to animals. Plaintiffs similarly claim that Defendants have imposed a prior restraint on their "right to speak in Discovery Green about the realities of industrial animal practices." (Pl. Opp., p. 13). Plaintiffs were, and remain, free to "speak" about any topic they wished. Ironically, the conduct at issue here did not involve "speaking" at all. This also undercuts Plaintiff Harsini's claim that he "is avoiding advocating at Discovery Green because he fears arrest." (Pl. Opp., p. 20).

In a similar vein, Plaintiffs assert that the only basis the Officers had for arresting Dubash was "discriminating against and 'suppressing speech.'" (Pl. Opp., p. 25). This contention is doubly untrue, first because there was no discrimination against Plaintiffs, and no "speech" was affected, and second, because the Officers were not making any determination as to the qualities of Plaintiffs' purported speech. Nor were the Officers "clamping down on peaceful advocacy." (Pl. Opp., p. 26). Plaintiffs contend that Defendants "disfavor[ed] Dubash's religious practice while

---

[1] That said, consistent with the Discovery Green Rules, the Conservancy could have placed a uniform prohibition on displaying videos of any nature without first obtaining permission to do so, to the extent the Park Rules require any such permission.

allowing similar secular conduct" (Pl. Opp., p. 33), an assertion that is demonstrably untrue by virtue of the fact that his non-religious co-plaintiff had secular motivations for engaging in the same conduct, and was subject to the same restrictions, and because no Defendant was even aware of Dubash's religious practice, much less expressed disfavor of it. Further, Defendants only placed reasonable time, place, and manner restrictions on playing videos depicting animal cruelty. Similarly, Plaintiffs' contention that Conservancy President Barry Mandel used his "discretion" to "favor his preferred speech and punish disfavored expression" is a gross distortion of the facts here. (Pl. Opp., p. 37). Indeed, Plaintiffs have not identified any speech that was "favored."

Plaintiffs' need to rely on hyperbolic characterizations such as these underscores the weakness of their argument. The Officers were responding to the Conservancy's request for Plaintiffs to be removed from Discovery Green because they were engaging in offensive conduct. The Officers were not "clamping down" on anything. Plaintiffs undoubtedly recognize this, of course, but insist on needlessly villainizing Defendants regardless. Even in their own motion papers, Plaintiffs acknowledge the broad-subject, diverging-viewpoint organized protests that are permitted to occur at Discovery Green, yet Plaintiffs somehow suggest that Defendants intended to squelch their viewpoints. The same goes for Plaintiffs' accusation that the Officers "targeted" them and were "stifling peaceful advocacy." (Pl. Opp., pp. 29-30).

**B.**      **The City is not "Dodging the Constitution" (Responding to Point I).**

Plaintiffs argue that the City is not entitled to dismissal because it deeded the land to the Conservancy, which then conveyed the property to the Houston Downtown Park Corporation ("HDPC"). (Pl. Opp., p. 6). According to Plaintiffs, the City did so to "try[ ] to contract with the Conservancy around the Constitution," and Plaintiffs' appear to accuse the City of transferring the property  to "induce, encourage or promote" the violation of constitutional rights. (Pl. Opp., p. 7).

They then proceed to argue, without any authority, that the *City*, as opposed to HDPC, the owner of the land, has somehow retained a distinct obligation to be responsible for alleged constitutional violations on it, and is trying to "wiggle" out of that responsibility. (Pl. Opp., p. 8).

Plaintiffs' argument is devoid of merit. Plaintiffs ignore the recent Fifth Circuit precedent cited in Defendants' chief motion papers, *U.S. ex rel. Miniex v. Houston Hous. Auth.*, ___ Fed.Appx. ___, 2023 U.S. App. LEXIS 25226 (5th Cir. Sep. 22, 2023) (unpub. order), which held that even assuming an agency relationship existed, the plaintiff "failed to plead facts to make it plausible that HHA was acting with actual authority [from the City] when violating" the applicable law. *Miniex*, at **9-10. Moreover, they fail to assert a single fact supporting even their contention that the City retained some responsibility over Discovery Green, much less their baseless insinuation that the City deeded the property to a separate entity for the purpose of deliberately attempting to violate the Constitution.

Plaintiffs cite to multiple cases, but it comes as no surprise that none distinguishes *Miniex*, or otherwise stands for the premise that the City should somehow bear responsibility for the HDPC, or the Conservancy's actions on property not owned by the City. Instead, the cases are cited for the notion that the City cannot deed property away for the purpose of insulating itself from constitutional violations. Again, this allegation finds no support in the facts alleged in the Complaint. Insofar as Plaintiffs claim that the City "sways what happens at Discovery Green" by virtue of its police "threatening" and "arresting" Plaintiffs, this, again, is a distortion of the actual circumstances of the interaction with Plaintiffs. Indeed, it was the opposite of what they contend in their motion; the Conservancy asked for police to arrive, who, according to Plaintiffs' video exhibits, plainly showed reluctance to arrest Dubash.

**C.**    **Plaintiffs Conflate Their First Amendment Right To Possess The Video In Question With A Claim That They Can Broadcast It Anywhere They Like (Responding to Point II-A).**

Plaintiffs rely heavily on their argument that they were entitled to display footage of animal torture because the footage, itself, is protected by the First Amendment. Plaintiffs are confusing two discrete concepts. They conflate the First Amendment protection afforded to the possession of the video, itself, with the separate *conduct* of publicly displaying it.

Defendants do not claim that possession or creation of the video is not entitled to First Amendment protection. However, that is not what this case is about. As Defendants argued in their chief motion papers, it is beyond dispute that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc' for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Plaintiffs are correct that "the First Amendment protects video depictions of animal cruelty" ("Pl. Opp., p. 9), but the case Plaintiffs cite for this notion—*U.S. v. Stevens*, 559 U.S. 460 (2010)— held only that a federal statute which criminalized the "creation, sale, or possession" of videos of animal cruelty is unconstitutional. *Stevens*, 559 U.S. at 464-65, 482. None of the cases that Plaintiffs cite supports the idea that the First Amendment grants them a universal license to *play* any videos they choose, wherever they like.

**D.**    **Plaintiffs' Implication That They Can Project Any Video, Wherever and However They Wish, Is Baseless.**

Plaintiffs argue that the restrictions at issue here are unconstitutional because they are based on the idea that Defendants found the videos "offensive," which, as Plaintiffs appear to believe, translates to the notion that the Defendants are restricting the content because they find the *message* offensive. (Pl. Opp., p. 11). This claim is meritless.

Plaintiffs may believe the "authentic character" of their videos makes them most effective (Pl. Opp., p. 11), but this does not give them the blanket right to show them at Discovery Green. Rather, "'it may not be the content of the speech, as much as the deliberate verbal or visual assault that justifies proscription.'" *Hill v. Colorado*, 530 U.S. 703, 716 (2000) (quoting *Erznoznik v. Jacksonville*, 422 U.S. 205, 210-11 n.6 [1975]). Likewise, the Supreme Court "has regularly rejected the assertion that people who wish to 'propagandize protests or views have a constitutional right to do so whenever and however and wherever they please.'" *U.S. v. Grace*, 416 U.S. 171, 177-78 (1983) (quoting *Adderley v. Florida*, 385 U.S. 39, 47-48 [1966]). The Supreme Court has "never held, or suggested, that it is improper to look at the content of an oral or written statement in order to determine whether the rule of law applies to a course of conduct." *Hill*, 530 U.S. at 721.

Plaintiffs attempt to frame the restrictions as viewpoint- and content-based because they claim Discovery Green staff found the videos "offensive," and Defendants' motion refers to them as "grotesque" and "offensive." (Pl. Opp., pp. 10-11). Once again, Plaintiffs conflate two distinct principles: speech and conduct. To the extent Plaintiffs are engaged in "speech," it is their message on non-violence. Defendants have never objected to that, despite Plaintiff's unsubstantitated characterizations to the contrary. Insofar as Plaintiffs' conduct in showing their videos can be described as "offensive," case law plainly permits regulation of offensive conduct. *See*, *e.g.*, *Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011) (court upheld code of conduct at city-owned senior center that prohibited "abusive, vulgar, or demeaning language"); *Price v. Dallas Area Rapid Transp. Police Dep't*, 2019 U.S. Dist. LEXIS 133480, **14-15 (N.D. Tex. Jul. 8, 2019) (plaintiff's use of plaintiff's use of profanity and derogatory language on DART property referenced as legitimate contributing factor for plaintiff's removal from transit station). Plaintiffs insist that the video content is inherently "content" for purposes of content neutrality analysis (Pl.

Opp., pp. 10-11). Yet, Defendants cited to case law in their chief motion papers for the premise that "content" in the audiovisual sense must not be construed as a term of art for First Amendment purposes. (Doc. 44, p. 9). Plaintiffs do not attempt to distinguish those cases.

Plaintiffs rely on *U.S. v. Marcavage*, 609 F.3d 264 (3d Cir. 2010), to show that depictions of mutilated fetuses, for instance, are entitled to constitutional protection even if they are "jarring." However, *Marcavage* is distinguishable because the question there was genuinely one of content neutrality, and the court held that "[t]o find that that purpose is content-based, 'something must point decisively to a motivation based on the subject matter, or content, of the speaker's message.'" *Marcavage*, 609 F.3d at 279 (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 197 (3d Cir. 2008). There, unlike here, it was the *message* that was conveyed via the protestor's signs that motivated the restriction. The Court also found that the expressed rationale, avoiding hazards along the street, was unfounded. Indeed, the venue for the protest there was a public sidewalk, not a special purpose activity space like Discovery Green. *Id.* at 277, 283-84.

*Frye v. Kansas City Missouri Police Dep't*, 375 F.3d 785 (8th Cir. 2004), a different case involving large signs bearing photographs of mutilated fetuses, undermines Plaintiffs' argument and supports Defendants' reasonable restrictions here. Indeed, *Frye* bears marked similarities to the case here. In *Frye*, the Eighth Circuit upheld a police directive to the plaintiffs to remove large signs placed on the curb of a roadway containing graphic depictions of fetuses. The police had fielded complaints from motorists that the signs were distracting drivers, nearly causing collisions, that one driver was "shocked" by the photographs, and that drivers were concerned that their children would see the images. *Frye*, 375 F.3d at 788. The police ordered the plaintiffs to move away from the road with the large photographs. Alternatively, the plaintiffs could stay if they took down the signs. *Id.* The plaintiffs refused and were subsequently arrested, prompting suit.

The Eighth Circuit held that the officers' directives constituted a reasonable restriction on the manner of the protest in light of the city's substantial interest in ensuring that drivers are devoting their attention to the driving conditions. *Id.* Importantly, the court also noted that parents were concerned about their children viewing the photographs, and acknowledged its prior holding in *Olmer v. City of Lincoln*, 192 F.3d 1176 (8th Cir. 1999), cited in Defendants' chief motion papers, that "a city's interest in protecting very young children from frightening images is constitutionally important; that is, the interest is significant, compelling, and legitimate." *Frye*, 375 F.3d at 791 n.2 (quoting *Olmer*, 192 F.3d at 1180). It also cited the holding in *Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1988), that while the First Amendment protected the plaintiffs' right to advocate for their cause, it "did not give them a 'right to dictate the *manner* in which they convey their message within their chosen avenue.'" *Frye*, 375 F.3d at 792 (quoting *Foti*, 146 F.3d at 641) (emphasis in original). Critically, even though the issue in *Frye* focused on the effects that the "content" of the signs had, the court nevertheless found that "the police officers did not impose restrictions based on the content of appellants' message." The court noted that the police officers did not forbid appellants from expressing their anti-abortion message. *Id.* at 789.

*Frye* applies seamlessly here. Like there, the sole reason for the restrictions at issue here was the graphic nature of the video footage Plaintiffs were using, not Plaintiffs' message or viewpoint. *Frye* also easily dispenses with Plaintiffs' claim that because what was conveyed in the video is at issue, the restrictions are not content-neutral. The court rejected the very same claims there, citing the premise in *Hill* that "[t]he principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the *message* it coveys." *Id.* at 790 (quoting *Hill*, 530 U.S. at 719) (emphasis added). The court reasoned

that "the police officers narrowly tailored the restrictions to serve a significant governmental interest and left open alternative channels of communicating their message." *Id.* at 790.

**E.**     **Plaintiffs Were Not Engaged In Expressive Conduct.**

Plaintiffs contend that playing the videos was "expressive conduct" because the videos, themselves, are protected, there is no need for "explanatory speech," and the videos are "no different" than picket signs. (Pl. Opp., p. 9). Each point is meritless. First, Plaintiffs make no meaningful attempt to substantively distinguish the holdings in Defendants' case law in their chief motion papers (Doc. No. 44, pp. 7-8), that the need for explanatory speech demonstrates that conduct is non-expressive. Instead, Plaintiffs cite to *Texas v. Johnson*, 491 U.S. 397 (1989), and *Clark v. Comm'ty for Creative Non-Violence*, 468 U.S. 288 (1984), to support their argument that "[c]ontent and intent inform whether conduct is expressive." (Pl. Opp., p. 9). Yet, despite the relevance of context, the expressive element must be apparent. *Johnson* invalidated a statute prohibiting flag burning, observing that the American flag is "[p]regnant with expressive conduct," and because the statute "proscribed particular conduct *because* it has expressive elements." *Johnson*, 491 U.S. at 405-06 (emphasis in original). *Clark* discussed "context," but interpreted communicative conduct as that which "would reasonably be understood by the viewer to be communicative." *Clark*, 468 U.S. at 294. *Clark* also recognized that even expressive conduct is subject to time, place, and manner restrictions, and content neutrality is shown when the restriction is not due to "disagreement with the message presented." *Id.* at 293, 295. Neither case lends Plaintiffs' position any support.

Plaintiff's claim that playing videos is "no different" than picketing fails (Pl. Opp., p. 9), because the playing of videos carries no expressive message. Of course, a written message on a picket sign may be entitled to greater protection than these videos because it likely would include

protected speech. Even Plaintiffs' cited authority, *Texas v. Johnson*, recognizes that "[t]he government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word." *Johnson*, 491 U.S. at 406.

Plaintiffs decline to respond to the analogy posed in Defendants' chief motion papers, that their entire thesis would permit them to stand in the Discovery Green playground and blast their videos in the faces of playing children, or to show videos of murdered and tortured humans to the children, or to display a dead animal carcass in Discovery Green to prove their point. Instead, it appears that Plaintiffs are intently focused solely on the fact that their objectionable conduct involves an audiovisual medium projecting intellectual property protected by the First Amendment. Plaintiffs, it appears, believe this fact alone allows them to engage in conduct that is as disruptive or contrary to Discovery Green's purpose simply because it involves visual media. However, they cite to no case law that cloaks their actions in First Amendment protection merely because playing a video is part of it. Plaintiffs' premise fails in its entirety.

**F.**     **Plaintiffs Are Not Under an Unconstitutional Prior Restraint (Responding to Point III).**

Plaintiffs disagree with Defendants that their prior restraint claim is duplicative. (Pl. Opp., p. 12). However, Defendants' underlying premise is that there is no First Amendment violation regardless of whether the Court finds Discovery Green to be a limited public forum or a traditional public forum, and that therefore, the restrictions on Plaintiffs' conduct is permissible. Plaintiffs believe that there are separate "doctrinal principles and factual allegations" supporting their prior restraint claim, yet the only facts alleged are that they have been removed from the park for publicly playing videos showing cruelty to animals, and they have been told if they do it again, they will be arrested. The legal rationale on which they rely is the same as every other point in their brief, and relies on the same skewed interpretation of what is at issue here.

At bottom, Plaintiffs' prior restraint claim suffers from the same infirmity that dooms their entire lawsuit; their First Amendment rights have not been infringed upon. They have not been forbidden from communicating, their "speech" has not been regulated and is not up to the "management," and Plaintiffs have not been restrained from "speak[ing] in Discovery Green about the realities of industrial animal practices." (Pl. Opp., p. 13).

Plaintiffs allege separately that there are "no 'narrow, objective, and definite standards to guide' 'the management' in administering the park on behalf of the City and the Park Corporation." (Pl. Opp., p. 13 [quoting *SEIU, Local 5 v. City of Houston*, 595 F.3d 588 (5th Cir. 2010)]). This allegation also fails. As discussed, the City has no obligation to provide any guidance to the Conservancy. Regardless, the Operating Agreement with the HDPC requires the Conservancy to comply with all applicable laws (Doc. 44-2, p. 6, ¶ 4.2), and to establish reasonable rules that are, *inter alia*, "non-discriminatory to the full extent required by Applicable Laws" (Doc. 44-2. p. 6, ¶ 4.3). Furthermore, the Park Rules provide objective standards guiding all patrons' use of the park, as discussed in Defendants' chief motion papers (see Doc. 44-1, Rules §§ 0.3; 2.1.1; 2.1.44).

Lastly on this point, to the extent that Plaintiffs believe that the directives concerning the videos were not sufficiently objective, such a theory is belied by the fact that Plaintiffs were unquestionably told that they were free to speak about their topic. If their contention is that the Rules afforded officials too much discretion in determining what speech is permissible, the claim is undermined by the Seventh Circuit's opinion in *Milestone v. City of Monroe*, 665 F.3d 774 (7th Cir. 2011), cited in Defendants' chief motion papers (Doc. No. 44, p. 12), where the court explicitly rejected a similar argument. In that case, the court disagreed that a code of conduct unconstitutionally allowed personnel to eject "any person who disagrees with the director's decisions," because the rules addressed not "*what* the Center's patrons say, . . . . but focuses on *the*

*manner* in which they say it." *Milestone*, 665 F.3d at 783 (emphasis in original). Plaintiffs decline to discuss or distinguish *Milestone*. Its holding decisively supports Defendants' restrictions here.

## G.     Plaintiffs' Argument that the Complaint Alleges Facts Sufficient To Assert A *Monell* Claim Is Undermined By the Complaint's Own Allegations (Responding to Point IV).

Plaintiffs' Complaint affirmatively alleges that Discovery Green welcomes demonstrators of disparate viewpoints, and lists a variety of those demonstrations it has hosted, agreeing that it "has long served as a locus of protest on matters of public concern for the Houston area," (Doc. 1, pp. 14-15, ¶¶ 68-77, 80). Plaintiffs even admit that the City, its Mayor, and its Police Department have been supportive of demonstrators, have set up protest zones, and have never interfered with speakers, despite objections to the "content of their speech." (Doc. 1, pp. 14-15, ¶¶ 73, 76, 77, 81).

Yet, despite pleading what is clearly an official policy of *facilitating and encouraging* robust demonstration and protest, Plaintiffs contend, somehow, that because Plaintiffs have been told not to play violent videos of animal cruelty in Discovery Green, the very same Defendants are subject to *Monell* liability because of a custom or policy of discrimination. This claim is baseless.

Initially, as discussed above, the City has no oversight responsibility for the actions of the Conservancy and its employees. *Miniex*, discussed in Defendants' chief motion papers and mentioned above (but disregarded in Plaintiffs' opposition papers) held that the City could not be responsible for a separate city agency's alleged violations of the law absent a showing that the City "wished for [the agency] to take actions violating" the law in question there. *Miniex*, at *10.

Even if the City somehow had oversight authority here, Plaintiffs' arguments in their opposition papers fail to surmount the fact that the Complaint pleads no facts in s upport. First, Plaintiffs misconstrue what a "policy" is for purposes of *Monell* liability. They claim that the offending "policy" at issue here is permitting the Conservancy to "carry out the public function of maintaining rules of use for Discovery Green" without providing appropriate criteria to prevent

infringement of the First Amendment. (Pl. Opp., p. 14). However, the policy must be one directly related to the violation in question, not just a benign policy of operation. *See*, *e.g.*, *Mendoza v. Round Rock Indep. Sch. Dist.*, 854 Fed.Appx. 612, 613 (5th Cir. 2021) (unpub. order)(plaintiff failed to allege that school board "had an official policy of violating students' rights . . . .").

Plaintiffs' "moving force" and failure-to-train arguments are easily dispensed with by Supreme Court and Fifth Circuit precedent. In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Harris*, 489 U.S. at 388. The Court explicitly held that that rule was "most consistent with [the Court's] admonition in *Monell*, and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981), that a municipality can be liable under § 1983 only where its policies are the 'moving force behind the constitutional violation.' Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 388-89.

As the Fifth Circuit has explained:

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.' 'For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' Deliberate indifference requires a showing of more than negligence or even gross negligence. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity.' 'To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"

*Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (internal citations and brackets omitted).

None of the factors identified in *Davis* is even remotely pled here. First, Plaintiffs allege no pattern of violations. To the contrary, Plaintiffs admit that Discovery Green promotes, not stifles, free expression. Second, there is no "obvious likel[ihood]" that the failure to train would result in an effort to prevent park users, including their children, from being exposed to violent videos while permitting Plaintiffs to express their same message through other means. Third, even if training could have prevented the purported violation, Plaintiffs do not allege facts demonstrating that there was "more than negligence or even gross negligence."

Lastly, to succeed on a "moving force" theory, Plaintiffs must show either a written statement or "widespread practices that are so common and well settled as to constitute customs that fairly represent municipal policy." *Deleon v. Nueces County*, 2023 U.S. App. LEXIS 17523, *3 (5th Cir. Jul. 11, 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 [5th Cir. 2009]). Indeed, the Sixth Circuit has observed that the pattern that constitutes the policy must involve individuals other than the plaintiff. *See Nouri v. County of Oakland*, 615 Fed.Appx. 291, 296 (6th Cir. 2015) (unpub. order) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 432-33 (6th Cir. 2005) ("we have never found notice of a pattern of misconduct (or the pattern itself) solely from the mistreatment of the plaintiff. . . . To do so risks 'collapsing the municipal liability standard into a simple *respondeat superior* standard.'" Internal citation and ellipsis omitted]).

Here, Plaintiffs do not even attempt to genuinely articulate a policy of First Amendment violation. Again, the allegations in their Complaint convey the opposite. In sum, Plaintiffs attempting to show the existence of a *Monell* claim must "plead 'specific facts, not merely conclusory allegations.'" *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (quoting *Elliott*

*v. Perez*, 751 F.2d 1472, 1479 [5th Cir. 1985]). Indeed, the Fifth Circuit has referred to this as a "heightened pleading requirement" that "applies to allegations of municipal custom or policy." *Id.* Plaintiffs' cavalier accusation that the City had a policy of discrimination, and that this caused the alleged violations here, falls woefully short of the pleading standard applicable to their claim.

Plaintiffs' effort to short-circuit their obligation to identify a policymaker also fails. They make the irrational claim that "the City Council and Mayor have ratified" "the Conservancy's and Houston police officers' censorship of Plaintiffs" by "standing behind" the decision (Pl. Opp., p. 15-16). This allegation is conclusory and makes no logical sense. Plaintiffs do not plead that the City Council or Mayor even knew about their interactions with Discovery Green employees. Plaintiffs argue that the City "delegated" authority to the Conservancy, which should permit *Monell* liability against the City. For the reasons articulated in Defendants' chief motion papers,[2] there was no unlawful delegation of authority to the Conservancy. However, insofar the Conservancy was a company that *managed* Discovery Green, Plaintiffs make no arguments as to why that changes the *Monell* analysis. They nevertheless fail to allege a policymaker, a custom or policy, or how the custom or policy resulted in a violation of their rights.

Lastly, Plaintiffs make no arguments in response to the Conservancy's point in its chief motion papers (see Doc. No. 44, pp. 19-20) that it, too, can only be held liable if Plaintiffs establish a custom or policy of discriminatory conduct. *See Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978). For the reasons already expressed, the Conservancy and the City are entitled to dismissal because Plaintiffs fail to assert a *Monell* claim against either of them.

---

[2] Plaintiffs argue that the City did not address the claim that the City improperly delegated authority to the Conservancy. However, the City clearly did so. (See. Doc. No. 44, pp. 22-23). In any event, the Complaint makes no separate allegation concerning the delegation of authority that warrants a different *Monell* analysis here.

**H.**     **Under Either a Direct or Retaliation Theory, Plaintiffs Are Entitled To No Damages (Responding to Plaintiffs' Point V).**

Plaintiffs fail to show that they are entitled to damages in their claims against the Officers or Barry Mandel. Initially, Plaintiffs are incorrect that Defendants do not seek dismissal of the entire Fourth Count. Plaintiffs' damages theory against the Officers and Mr. Mandel necessarily relies upon a theory of retaliation. There is no "direct" claim against them because Plaintiffs have not alleged that the Officers—as separate from the other defendants—intend to enforce the prohibition on the animal cruelty videos in the future.

*Davidson v. City of Stafford*, 848 F.3d 384 (5th Cir. 2017), the case Plaintiffs rely upon in support of their argument that a direct theory of liability exists, does not support their claim. While *Davidson* recognized an "as-applied violation" in addition to a retaliation theory, that concept was discussed because the plaintiff contended that he "intends to continue protesting the Clinic and that Defendants intend to continue enforcing sections 38.02 and 42.03 in an unconstitutional manner." *Davidson*, 848 F.3d at 398. That was not a claim for damages against police officers.

In any event, Defendants have argued throughout that Plaintiffs' First Amendment rights were not violated. Accordingly, there can be no claim against the Officers or Mr. Mandel in any First Amendment context. Further, the Officers had probable cause to make the arrest, as discussed in Defendants' chief motion papers. This Court recently reaffirmed that "[p]robable cause to arrest 'is not a high bar.' . . . It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Villarreal v. City of Laredo*, 2024 U.S. App. LEXIS 1533, *13 (5th Cir. Jan. 23, 2024) (en banc).

Plaintiffs contend that the Officers lacked probable cause because the basis for the arrest was the content of their videos and the Officers mistaken belief that Discovery Green was private despite Dubash's collection of documents that apparently stated the contrary (Pl. Opp., pp. 19-20).

Yet, police officers need not rely on a suspect's own claims that he is innocent. Plaintiffs insist that the Officers, faced with Discovery Green management advising that the property was public, should have instead read Dubash's stack of documents, and should have inferred from "signs" and "rules" that the Conservancy lacked a basis to have Plaintiffs removed or arrested. (Pl. Opp., p. 30). Again, the standard applied to the officers is that there was "a probability or substantial chance of criminal activity." *Villarreal*, at *13. "An officer who has sufficient cause to believe a property is private has no duty to investigate further into the boundaries of the property. . . . 'Once he has probable cause, an officer is not ordinarily required to continue to investigate or seek further corroboration.'" *Spears v. City of Tucson*, 125 F.Supp.3d 903, 912 (D.Ariz. 2015) (quoting *Ewing v. City of Stockton*, 588 F.3d 1218, 1227 [9th Cir. 2009]).

## I.       Plaintiffs Do Not Plead a Fourth Amendment Claim (Responding to Point VI).

Plaintiffs' Fourth Amendment claim fails. As discussed, Plaintiffs had no protected constitutional right to continue to play videos depicting animal cruelty in Discovery Green. Thus, the Conservancy was within its rights to ask that they be removed, and the Officers were entitled to heed the request. Plaintiffs cite to state precedent for the premise that Texas law does not permit trespassing statutes to be enforced "for the primary purpose of suppressing speech." (Pl. Opp., p. 24 [quoting *Reed v. State*, 762 S.W.2d 640, 644 (6th Ct. Apps.—Texarkana 1988, pet. den.), *cert. den.*, *sub nom*, *Harris v. Texas*, 493 U.S. 922 (1989)]). Yet, the same case recognizes that "[a] general trespass statute may be constitutionally applied, *even to those who trespass in order to communicate*," so long as it is not discriminatory or used for the purpose of suppressing speech. *Reed*, 762 S.W.2d at 644 (emphasis added); *see also Price v. Dallas Area Rapid Traps. Police Dep't*, 2019 U.S. Dist. LEXIS 133480, **14-15 (N.D. Tex. Jul. 8, 2019) (plaintiff's use of profanity and derogatory language on DART property, attempt to ride train without active pass,

refusal to depart train or DART property after being told to do so, and possession of marijuana, provided officers with probable cause to arrest for criminal trespass and possession of marijuana).

Plaintiffs contend that the Officers should not have ignored evidence that, they claim, "dissipated probable cause." (Pl. Opp., p. 25 [quoting *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988)]). However, *Bigford* involved facts that presented a clear likelihood that an allegedly stolen truck was not, in fact, stolen, including that the VI and license plates had not been reported stolen, and that the truck was obviously in bad condition, suggesting it had no value suggesting it was stolen. *Bigford*, 834 F2d at 1219. Here, by contrast, the Officers had reason to believe that the privately managed park was, indeed, private, even if open to the public. Likewise, the mere fact that property is public does not preclude trespass charges categorically. *See Price*, *supra.*

**J.**      **Plaintiffs Fail To Show That The Officers Are Not Entitled To Qualified Immunity (Responding to Point VII).**

Plaintiffs' arguments focus on the same refrain discussed throughout: that Dubash was arrested "based on the content of his speech." (Pl. Opp., p. 26). Their entire argument is strapped inextricably to their distorted narrative that they were targeted because of viewpoint discrimination and the content of their speech. Despite their efforts to frame this case as being about viewpoint censorship, it is actually about reasonable place and manner restrictions. Plaintiffs cite to case law supporting the premise that an officer cannot arrest an individual based on the "content" of his speech in a First Amendment context. (Pl. Opp., p. 28 [citing *Bailey v. Iles*, 87 F.4th 275, 286-90 (5th Cir. 2023). Yet, as exhaustively discussed, that does not remotely resemble the facts here.

Plaintiffs ignore the Officers' argument in their chief motion papers that, at the very least, the underlying legal issues surrounding Plaintiffs' conduct were of a level of complexity that officers are not expected to parse them out at the scene. (Doc. 44, pp. 27-28). Despite Plaintiffs' attempts at portraying the case as a simple fact pattern of a city menacingly censoring hapless

protestors in a city park because it disagrees with their message, the reality is that Plaintiffs were engaged in conduct that, at best, must be analyzed via the Supreme Court's well-established non-expressive-versus-expressive-conduct, and time-place-and-manner rubrics. An Officer need not possess "a legal scholar's expertise in constitutional law." *Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982). Plaintiffs likewise do not appear to argue that an officer can *never* arrest a person for trespassing on public property. Here, Defendants have clearly established that Plaintiffs were subjected to reasonable time, place, and manner restrictions. At the very least, that fact permitted the Officers to rely on Discovery Green management and arrest Dubash for refusing to leave. Lastly, the fact that the Officers were entitled to rely on statements from Discovery Green's management that it was a private park equally apply to the Officers' qualified immunity arguments.

**K.**      **Dubash Fails To Show a Free Exercise Violation (Responding to Point VIII-A).**

Dubash fundamentally fails to allege a Free Exercise violation. In their chief motion papers, Defendants noted the established Supreme Court axiom that a plaintiff will not state a Free Exercise claim if the policy at issue is a "neutral and generally applicable rule." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2422 (2022). Dubash contends that the restriction at issue here is not generally applicable because it permits individualized exemptions "based on the circumstances." (Pl. Opp., p. 3 [quoting *Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1877 (2021)]). Plaintiffs' selection from *Fulton* omits the critical portion of the quoted sentence: "A law is not generally applicable if it 'invites' the government to consider *the particular reasons for a person's conduct* by providing '"a mechanism for individualized exemptions."'" *Fulton*, 141 S.Ct. at 1877 (quoting *Employment Div. v. Smith*, 494 U.S. 872, 884 [1990]) (emphasis added). Plaintiffs' "particular reasons" for showing their video are irrelevant here. Moreover, there is no

"mechanism" for "individualized exemptions" in *any* context. Plaintiffs do not contend that some individuals are permitted to show videos of violence against animals under other circumstances.

Dubash also contends that the conduct here is "similar to secular conduct that is permitted." (Pl. Opp., p. 33 [citing *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2423 (2022)]). Yet, here, his co-plaintiff wished to engage in the very same conduct *for secular reasons*. Dubash contends that playing videos depicting animal cruelty is "similar" to "other demonstrations." (Pl. Opp., p. 33). However, he fails to explain how playing videos showing cruelty to animals is even arguably similar to "a mass protest against the NRA's annual convention and 'Rainbow on the Rink,' an LGBTQ celebration involving performances by local drag queens and a dance party." (*Id.*). He also contends that the restriction is subject to strict scrutiny because it is based on "the offensive character of a religious exercise." (Pl. Opp., p. 34). Once again, this was nothing more than a time, place, and manner restriction concerning the playing of videos showing animal cruelty.

**L.      Dubash Has Not Shown a Texas RFRA Violation (Responding to Point VIII-B).**

Dubash's arguments as to his TRFRA claim are meritless. He first claims that the burdens placed on his religion are "significant" because he was "arrested [ ] for exercising his religion." (Pl. Opp., p. 34 [emphasis omitted]). Dubash claims that Defendants "mischaracterize" the provisions of TRFRA but, in fact, it is Dubash who does so. Dubash incorrectly focuses on the purported significance of the consequences of refusing to obey a police officer's order, rather than the effects that the restriction had on his actual alleged religious exercise itself. As discussed in Defendants chief motion papers, the Fifth Circuit is clear that a regulation will not amount to a "substantial burden on religious freedom if it 'merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise

generally allowed.'" *Hill v. Cruz*, 2006 U.S. Dist. LEXIS 69094, *4 (S.D.Tex. Sep. 26, 2006)

(quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 [5th Cir. 2004])

Dubash claims that *Hill*, cited in Defendants' chief motion papers, does not stand for the

principle that "government actions do not create a substantial burden if they are generally

applicable." (Pl. Opp., p. 35). Yet, Dubash cannot dispute the fact that in accordance with *Hill*,

Dubash must show that the *restriction* is a substantial burden, not the penalty imposed for refusing

to follow an officer's order.[3] Dubash disagrees with Defendants' contention that he is not

substantially burdened because he "prefers" to proselytize by way of videos depicting animal

cruelty. (Pl. Opp., p. 35). However, courts' interpretations of "substantial burden" support

Defendants' arguments. The Sixth Circuit recently observed that while RLUIPA does not define

"substantial burden," the law's legislative history suggested that it should be no broader than the

Supreme Court's articulation of that concept in Free Exercise claims. *See Living Water Church of*

*God v. Charter Twp. Meridian*, 258 Fed.Appx. 729, 733 (6th Cir. 2007) (unpub. order). The court

reasoned that while the Supreme Court has generally found a substantial burden where the

individual was forced to "choose between 'following the precepts of her religion and forfeiting

benefits' or when the action is question placed 'substantial pressure on an adherent to modify his

behavior and to violate his beliefs,'" there was *no* substantial burden when "although the action

encumbered the practice of religion, it did not pressure the individual to violate his or her religious

beliefs." *Living Water Church of God*, 258 Fed.Appx. at 734.

Against the backdrop of the *Living Water Church of God* analysis, the purported impact on

Dubash's religious practice hardly amounts to a substantial burden. He does not contend in his

---

[3] *Cruz* and *Adkins* considered claims under the federal Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The Fifth Circuit has made clear that "[c]laims under the TRFRA may be resolved by consideration of case law applying RLUIPA and its predecessor, the Religious Freedom Restoration Act of 1993." *McFaul v. Valenzuela*, 684 F.3d 564, 576 (5th Cir. 2012).

opposition papers that the restriction is pressuring him to violate his religious beliefs. Indeed, even if the Court assumed that carrying monitors playing videos of animal cruelty was a requirement of his beliefs, there are abundant high traffic locations in Houston where he can do that.  Dubash's point that "censoring protected speech is not a compelling government interest" is addressed in the context of Plaintiffs' First Amendment claims. There was no censorship of their speech, and in any event, the stated purpose here—protecting children from being subjected to the videos—is a compelling government interest. *See Frye*, 375 F.3d at 791 n.2 (quoting *Olmer*, 192 F.3d at 1180).

**M.**      **Plaintiffs' Attempt to Show Unlawful Delegation Fails (Responding to Point IX).**

Plaintiffs argue that the City has control over Discovery Green as evidenced by the fact that City police officers arrested Dubash (Pl. Opp., p. 36). This argument is illogical; police officers make arrests on property that are not City-controlled ubiquitously. The authority to arrest does not stem from "control" over the property where the arrest is made. Plaintiffs cannot meaningfully dispute the fact (in fact, the concede) that HDPC, not the City, owns the property. For the reasons discussed, the City does not maintain control over the property because it does not own it. Once again, *Miniex* dispenses with this claim.

In any event, Plaintiffs ignore the fact that the Conservancy's management of Discovery Green is subject to an Operating Agreement that requires all rules to comply with federal and state law. *Cf. Railroad Comm'n v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992) (improper legislative delegation claim rejected where legislature set reasonable standards to guide the entity to which power is delegated, and "Texas courts have upheld standards which are quite broad.").

**CONCLUSION**

For the foregoing reasons, and those already expressed, Defendants respectfully request that the Court grant their motion, and dismiss the Complaint for failure to state a claim.

Respectfully submitted,

s/ Andrew S. Holland
**Andrew S. Holland**
TX Bar No. 24134330
Fed. Bar No. 3860674
Andrew.holland@wilsonelser.com
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
909 Fannin St., Suite 3300
Houston, TX 77010
713-353-2000 tel
713-785-7780 fax

**Attorneys for Defendants City of Houston, Texas, Officer Robert Douglas (# 7943), Officer Vern Whitworth (# 7595), Discovery Green Conservancy, and Barry Mandel**

CERTIFICATE OF SERVICE

I, Andrew S. Holland, certify that today, February 19, 2024, I filed the within Reply Memorandum of Law with CM/ECF, for filing and service upon all attorneys who have appeared.

s/ Andrew S. Holland
ANDREW S. HOLLAND