

Andrew Holland
(713) 353-2074 (direct)
Andrew.Holland@wilsonelser.com

July 11, 2024

Honorable Richard W. Bennett (**via CM/ECF**)
United States Magistrate Judge
515 Rusk Street
Houston, TX 77002

      Re:    *Dubash v. City of Houston, et al.*
             Case No. 4:23-cv-03556

Dear Judge Bennett:

This firm represents The City of Houston, Texas, Officer Robert Douglas, Officer Vern Whitworth, Barry Mandel, and Discovery Green Conservancy (hereinafter "the Conservancy") in this lawsuit (collectively, "Defendants"). Please accept this letter as Defendants' response to Plaintiffs' request for a discovery conference, which they filed on July 5, 2024 (Docket No. 73). As Plaintiffs note in their letter, the parties have engaged in extensive efforts to resolve this dispute (in addition to the two telephone calls Plaintiffs note, there was also an additional call between the undersigned and Plaintiff's counsel JT Morris discussing the format of discovery, as well as substantive written correspondence and emails between the parties). However, Defendants agree that the parties are at a stalemate as to the permissible scope of discovery.

**Background**

Discovery Green is a multi-purpose greenspace in the heart of downtown Houston. It is more than just a public park. Discovery Green provides a robust variety of programming and activities, including, for example, concerts, movies, cultural events, ice skating, and dance performances. Discovery Green also hosts numerous events and activities for children, and includes a large playground complex that draws crowds of children. Discovery Green also provides a designated space for speech activity, and allows groups of demonstrators to engage in protests and other such activities provided they comply with Discovery Green rules, and, if necessary, apply for the appropriate permits.

Plaintiffs, as part of an organization they call "Anonymous for the Voiceless," opted to advocate for their cause by standing in certain busy promenade intersections in Discovery Green holding television monitors that silently display videos of torture to, or killing of, animals.[1] This caused

---

[1] Plaintiffs' correspondence describes the videos as "clips" from a documentary. However, based on the allegations and facts developed in this case, the portions they selected depicted violence toward, and killing of, animals. Plaintiffs have never placed the actual videos that they played before the Court.

909 Fannin Street, Suite 3300  •  Houston, Texas 77010  •  p 713.353.2000  •  f 713.785.7780

Alabama • Albany • Atlanta • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston
Indiana • Kentucky • Las Vegas • London • Los Angeles • Miami • Michigan • Milwaukee • Missouri • Nashville • New Jersey • New Orleans
New York • Orlando • Philadelphia • Phoenix • San Diego • San Francisco • Sarasota • Stamford • Virginia • Washington, DC • Wellington • White Plains

wilsonelser.com

concern for parents who complained to Discovery Green staff that their children were being subjected to these disturbing videos without any meaningful way to avoid them. Some expressed that their children were going to have nightmares as a result of seeing the footage. Indeed, one location Plaintiffs selected was near the only restroom facilities in Discovery Green, which are close to the playground. Plaintiffs' video displays were also inconsistent with the programming at Discovery Green, which consists of activities not compatible with publicly displaying violence against animals in the middle of a busy footpath. As a result, Discovery Green staff asked Plaintiffs to either stop showing the videos or to leave Discovery Green.

Importantly, as has been reflected in evidence submitted in opposition to Plaintiffs' pending motion for a preliminary injunction, as well as exhibits attached to the Complaint itself, the Conservancy made clear that Plaintiffs were free to advocate for their cause. The Conservancy was not objecting to the content of their speech, their message, or their viewpoint. Rather, Plaintiffs were told they could remain and continue their advocacy but were simply asked to stop publicly displaying videos depicting violence against animals. In fact, one employee encouraged Plaintiffs to participate in Discovery Green's Earth Day events in order to have a better audience for their cause (albeit without the videos depicting violence). Plaintiffs have not availed themselves of such an opportunity. Instead, Plaintiffs have sued under 42 U.S.C. § 1983 and the Texas Religious Freedom Restoration Act.

All defendants have filed motions to dismiss pursuant to FED.R.CIV.P. 12(b)(6), which are pending before the Court. Discovery pertaining to the named Police Officers has been stayed by the Court pending the determination of arguments they raised in support of dismissal based on qualified immunity grounds.

**Plaintiffs' Discovery Requests**

The dispute between the parties focuses largely on the topical scope and breadth of the documents Plaintiffs have requested. As noted, this case is about two plaintiffs being asked to stop displaying videos displaying violence. Plaintiffs have raised no issues of systemic discrimination by Defendants. Nor have they alleged or shown facts demonstrating that there was true viewpoint discrimination against them. Yet, Plaintiffs seek wide-ranging discovery concerning the Conservancy's and the City's practices on largely unbounded topics. For instance, Plaintiffs have asked for all communications regarding animal rights protests, and all communications that reference protests or demonstrations in Discovery Green or city parks that involve video displays, and communications concerning "Depictions of violence" in Discovery Green or city parks. They have also asked for all communications concerning requests to hold protests, demonstrations, cultural events, or religious events at Discovery Green, and correspondence with those parties concerning the reasons for the decision of whether to approve those requests. Plaintiffs likewise seek, in addition to the current rules and regulations, draft and proposed sets of the rules governing Discovery Green, as well as communications about their creation. Plaintiffs seek all complaints from the public that any event (not just Plaintiffs' demonstrations) was inappropriate or offensive, as well as all correspondence discussing such complaints. Plaintiffs also ask for wide swaths of reports and communications concerning free speech in Houston public parks, in contexts that extend well beyond what is asserted here.

Plaintiffs' requests likewise seek, for instance, correspondence with the Conservancy discussing its "operations," and "cooperation for particular events." They also seek inspections, audits, reports, or recommendations about Discovery Green from the City, as well as documents and communications discussing the process for establishing rules concerning use of Discovery Green and "comparing" Discovery Green to other Houston public parks.

Plaintiffs have proposed email search terms. Defendants will, of course, perform email searches based on appropriate, agreed-upon terms. However, much like the rest of their discovery, Plaintiffs widen the scope of their proposed search terms far beyond what is relevant here. The extent of those search terms largely aligns with the Requests for Production at issue here.

In essence, despite this being a factually narrow dispute, Plaintiffs are asking not only the Conservancy, but also the City of Houston, whose Parks and Recreation Department manages hundreds of parks and green spaces, to provide sweeping discovery about practices and communciations concerning training, policies, and procedures citywide related to First Amendment activities and complaints, despite the factually specific nature of the underlying claim. Indicative of the the boundless nature of the discovery to which Plaintiffs believe they are entitled, Plaintiffs previously served (and later withdrew) Requests for Admission on the City, the Conservancy, and Mr. Mandel, which consisted of 290 requests, 346 requests, and 303 requests for admission, respectively, for a total of 939 discrete requests for admission. Plaintiffs' requests for production seek documentation that is predominantly irrelevant to the claims here (for instance, a response to some of the requests could encompass such items as invoices the Conservancy receives from food vendors), and would require the production of documents and emails that extend vastly beyond the claims here.

In short, Defendants have produced multiple documents and are proceeding in good faith with this case, including their discovery obligations. Yet, "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Plaintiffs speculatively ask Defendants to scour potentially thousands of records in hopes that some evidence of discriminatory animus against them may be unearthed. Their requests exceed the bounds of appropriate discovery.

For these reasons, Defendants respectfully ask that Plaintiffs' discovery be curtailed in scope commensurate with the reasonable needs of this case or, alternatively, that Defendants be permitted to file a motion for protection. Defendants have kept this correspondence within the three-page limit set forth in Rule IV of your Honor's Court Procedures and, therefore, have not submitted the discovery requests or responses, or any of the parties' correspondence. If the Court wishes to see any of those documents, Defendants would be happy to provide them.

Thank you for the Court's consideration.

Respectfully submitted,

s/ Andrew S. Holland
Andrew S. Holland

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

CERTIFICATE OF SERVICE

      I, Andrew S. Holland, certify that today, July 11, 2024, I filed the within correspondence for filing and service upon all attorneys who have appeared.

                                          s/ Andrew S. Holland
                                          ANDREW S. HOLLAND