United States District Court
Southern District of Texas
**ENTERED**
August 26, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DARAIUS DUBASH AND FARAZ HARSINI, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 4:23-cv-3556 |
| CITY OF HOUSTON, *et al.*, | § § | |
| Defendants. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court are Plaintiffs Daraius Dubash ("Dubash") and Faraz Harsini's ("Harsini") (collectively, "Plaintiffs") Motion for Preliminary Injunction (ECF No. 13) and Motion to Modify Order Granting Motion to Stay (ECF No. 64), Defendants Discovery Green Conservancy (the "Conservancy"), Robert Douglas ("Douglas"), City of Houston (the "City"), Barry Mandel ("Mandel"), and Vern Whitworth's ("Whitworth") (collectively, "Majority Defendants") Motion to Dismiss for Failure to State a Claim (ECF No. 44), and Defendant Houston Downtown Park Corporation's (the "Park Corporation") Motion to Dismiss for Failure to State a Claim (ECF No. 46).[1]  Based on a review of the motions, arguments, and relevant law, the Court

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 65).

**RECOMMENDS** Plaintiffs' Motion for Preliminary Injunction (ECF No. 13) be **DENIED AS MOOT,** Plaintiffs' Motion to Modify Order Granting Motion to Stay (ECF No. 64) be **DENIED AS MOOT**, Majority Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 44) be **GRANTED**, and Park Corporation's Motion to Dismiss for Failure to State a Claim (ECF No. 46) be **GRANTED**.

## I. Background

Plaintiffs filed this action on September 20, 2023, against the City, the Park Corporation, the Conservancy, Douglas, Whitworth, and Mandel (collectively, "Defendants"). (ECF No. 1). Plaintiffs "are co-organizers of the Houston Chapter of Anonymous for the Voiceless, an animal rights advocacy group." (*Id.* at ¶ 32). The Park Corporation "is incorporated to aid and act on behalf of the City to accomplish the City's governmental purposes consisting of the acquisition, development, operation, and maintenance of [Discovery Green Park (the "Park")], open space, and related facilities and amenities." (ECF No. 1-1 at 2). Plaintiffs allege the City acquired the land for the Park in 2002 and 2004. (ECF No. 1 at ¶ 49). On December 15, 2004, the City conveyed the Park's land to the Conservancy via special warranty deed. (ECF No. 1-2). The same day, the Conservancy conveyed the Park's land to the Park Corporation via special warranty deed. (ECF No. 1-3). Thereafter, the Park Corporation and

2

Conservancy entered into an Operating Agreement, effective August 29, 2006, where the Park Corporation "exclusively engages the Conservancy as an independent contractor to operate, manage, maintain, and repair the Park" pursuant to the Operating Agreement.  (ECF No. 46-1 at 5).[2]  Among other things, the Conservancy, through the Operating Agreement, has the exclusive right to establish rules and regulations for the Park so long as it complies with applicable laws.  (ECF No. 46-1 at 6).

This case stems from four animal rights advocacy demonstrations in the Park, in which the fourth demonstration resulted in the arrest of Dubash. (ECF No. 1 at ¶¶ 83–146).   Dubash alleges he helps organize these demonstrations in part because he "is a follower of the Vedantic stream of Hinduism, who believes in *ahimsa* (non-violence) and that his religion requires him to advocate for animal rights."  (*Id.* at ¶ 12).  Harsini "is an esteemed biomedical scientist whose research has led him to advocate for an end to industrial animal production for the good of animals and humanity."  (*Id.* at ¶ 13).

---

[2] The Court can consider the Operating Agreement, although it was not attached to the Complaint, because it was referenced in the Complaint and is central to assessing *Monell* liability.  (ECF No. 1 at ¶ 61); *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) ("But because the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

Plaintiffs' organized demonstrations are called "Cubes of Truth." (*Id.* at ¶ 33). The Cubes of Truth "consists of two small teams: the 'Cube Team,' which displays a video, and the 'Outreach Team,' which interacts with interested passersby." (*Id.* at ¶ 34). Plaintiffs allege "[t]he Cube Team typically consists of one or two members dressed in black and wearing the 'Guy Fawkes mask,'" which is "widely understood as an international symbol for anonymous protest, and as expressing support for protest more broadly." (*Id.* at ¶¶ 35–36). The videos displayed by the Cube Team are clips from the documentary called "Dominion," which includes footage of industrial animal agriculture. (*Id.* at ¶ 37). For instance, Plaintiffs allege the specific content includes "killing male chicks at birth who offer no economic value" and "keeping pregnant pigs in small cages where they can only sit or stand, but not turn around." (*Id.* at ¶ 39). Additionally, Plaintiffs allege "[m]embers do not hand out literature, unless a passerby has engaged in a conversation with an Outreach Team member, in which case the member may pass out a QR code that links to a website with more information about animal treatment." (*Id.* at ¶ 41).

The first three Cubes of Truth in the Park occurred on November 13, 2021, April 16, 2022, and June 18, 2022, where different Park staff and Houston Police officers asked Plaintiffs to leave, and they complied. (*Id.* at ¶¶ 84–102). The fourth Cube of Truth in the Park occurred on July 23, 2022. (*Id.*

4

at ¶ 103).  Plaintiffs claim they were "officially" again asked to leave the Park at the direction of Mandel, the Park president at the time such events transpired.[3]  (*Id.* at ¶ 127).  Dubash alleges he was subsequently detained and arrested by Douglas and Whitworth.  (*Id.* at ¶¶ 140–42).  Dubash claims he was unlawfully arrested for exercising his First Amendment rights but acknowledges that he was formally charged with criminal trespass.  (*Id.* at ¶¶ 143, 148).

Plaintiffs assert claims of (1) First Amendment violation for prohibiting free speech in a traditional public forum (Count 1); (2) First Amendment violation for prior restraint (Count 2); (3) First Amendment violation as a *Monell* claim[4] for policy, practice, or custom (Count 3); (4) direct and retaliatory First Amendment Violation (Count 4); and (5) unlawful private delegation (Count 8).  (*See* ECF No. 1).  Dubash independently asserts claims for (1) First Amendment violation for restricting the free exercise of religion (Count 5); (2) violation of the Texas Religious Freedom Restoration Act ("TRFRA") by

---

[3] Mandel served as Conservancy president "from 2010 until summer 2023," but is no longer the Conservancy President.  (*Id.* at ¶ 19).

[4] Plaintiffs erroneously assert a "*Monell* claim" against the City. *Monell* is not a claim, it is a municipal liability test that identifies three elements a plaintiff must prove to establish municipal liability under § 1983.  *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  Additionally, Plaintiffs only address *Monell* liability or municipal liability with respect to the City.  (*See* ECF No. 1).  However, the Court will address *Monell* liability or municipal liability to each applicable Defendant.

restricting the free exercise of religion (Count 6); and (3) Fourth Amendment violation for false arrest and unconstitutional seizure (Count 7).  (*See id.*).

## II.    Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss, a court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pleaded facts.  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010).  In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and rarely granted.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

However, a court is not bound to accept legal conclusions couched as factual allegations.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Although all reasonable inferences will be resolved in favor of a plaintiff, a plaintiff must plead "specific facts, not mere conclusory allegations."  *Tuchman v. DSC*

6

*Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994); *see also Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018) ("Although a complaint does not need detailed factual allegations, the allegations must be enough to raise a right to relief above the speculative level . . . .") (internal quotations omitted)). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Firefighters' Ret. Sys.*, 894 F.3d at 669 (quoting *Iqbal*, 556 U.S. at 678). "The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint." *Santerre v. Agip Petroleum Co., Inc.*, 45 F. Supp. 2d 558, 568 (S.D. Tex. 1999) (internal quotations omitted).

To determine whether to grant a Rule 12(b)(6) motion, a court may only look to allegations in a complaint to determine their sufficiency. *Id.*; *Atwater Partners of Tex. LLC v. AT & T, Inc.*, No. 2:10-cv-175-TJW, 2011 WL 1004880, at *1 (E.D. Tex. Mar. 18, 2011). "A court may, however, also consider matters outside the four corners of a complaint if they are incorporated by reference, items subject to judicial notice, matters of public record, orders, items appearing in the record of a case, and exhibits attached to a complaint whose authenticity is unquestioned." *Joubert on Behalf of Joubert v. City of Houston*, No. 4:22-cv-3750, 2024 WL 1560015, at *2 (S.D. Tex. Apr. 10, 2024).

## III.  Discussion

There are four motions pending before the Court: (1) Plaintiffs' Motion for Preliminary Injunction; (2) Plaintiffs' Motion to Modify Order Granting Motion to Stay; (3) Majority Defendants' Motion to Dismiss for Failure to State a Claim; and (4) the Park Corporation's Motion to Dismiss for Failure to State a Claim.[5]  (ECF Nos. 13, 44, 46, 64).  Each motion is addressed in turn, starting with the Motions to Dismiss.

### A.  The Conservancy, Douglas, the City, Mandel, and Whitworth's Motion to Dismiss for Failure to State a Claim

#### 1.  Qualified Immunity

Plaintiffs assert a § 1983 claim against Douglas and Whitworth for a direct and retaliatory First Amendment violation.  (ECF No. 1 at ¶ 221).  Additionally, Dubash asserts a § 1983 claim against Douglas and Whitworth for a Fourth and Fourteenth Amendment violation for false arrest and unconstitutional seizure.  (*Id.* at ¶ 260).  Douglas and Whitworth argue they are entitled to qualified immunity for each § 1983 claim.  (ECF No. 44 at 31).

"Qualified immunity shields a government official from liability based on his performance of discretionary functions."  *Mote v. Walthall*, 902 F.3d 500,

---

[5] Plaintiffs request oral argument in their response (ECF No. 53) to Defendants' Motions to Dismiss.  The Court denies Plaintiffs' request for oral argument.

505 (5th Cir. 2018) (quotations omitted). To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (quotations omitted). "A right is clearly established only if the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* (quotations omitted). "A court may consider either prong of the qualified immunity analysis first." *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

First, the Court will address whether Dubash has established Douglas and Whitworth violated the Fourth Amendment. Dubash alleges Douglas and Whitworth arrested and detained him "against his will and without probable cause." (ECF No. 1 at ¶ 260). Further, Dubash alleges Douglas and Whitworth understood detaining and arresting him was based on the content of his speech and no probable cause existed to be detained and arrested for trespassing. (*Id.* at ¶¶ 262, 268).

"The Fourth Amendment ensures that '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause.'" *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181 (5th Cir.

9

2009) (quoting *New York v. Burger*, 482 U.S. 691, 699 (1987)). "'The Fourth Amendment is concerned with ensuring that the scope of a given detention is reasonable under the totality of the circumstances.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 691 (5th Cir. 2017) (quoting *United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) (en banc)). Further, "[p]robable cause exists where the facts and circumstances within the officer's knowledge at the time of the arrest 'are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004)).

Here, Dubash alleges he was detained and arrested on July 23, 2022. (ECF No. 1 at ¶ 103). Dubash argues that his detainment and arrest occurred "solely on the basis of the content of his speech," however, the police report[6] and Plaintiff's recitation of the events supports the notion that he was arrested for criminal trespass. (ECF No. 1 at ¶¶ 127, 137, 149; ECF No. 44-3 at 1). A person has committed criminal trespass if he "enters or remains on or in

---

[6] The Court takes judicial notice of the police report. *See Roberts v. Wal-Mart La. LLC*, No. 15-cv-0119, 2016 WL 6561523, at *3 (W.D. La. Nov. 2, 2016) ("[T]hree of the documents considered by the Court (the arrest warrants, affidavit, and police report) are matters of public record that can be judicially noticed in considering a 12(b)(6) motion."); *see also Tye Shields, Plaintiff, v. City of Houston, Defendant.*, No. 4:24-cv-01291, 2024 WL 3448017, at *2 (S.D. Tex. July 17, 2024) (granting defendant's request that judicial notice be taken of public records, including Houston Police Department offense reports).

10

property of another without effective consent or []he enters or remains in a building of another without effective consent and []he (1) had notice that the entry was forbidden or (2) received notice to depart but failed to do so." *Cano v. Vickery*, No. 16-cv-392, 2018 WL 4567169, at *4 (S.D. Tex. Sept. 24, 2018) (quoting *Summerville v. Allied Barton Sec. Servs.*, 248 S.W.3d 333, 338 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

According to the police report, Dubash "refused to leave the property when [Park manager Floyd Logan Willis] and Houston Police Officer asked him to leave." (ECF No. 44-3 at 4). With respect to Dubash's detention, Douglas and Whitworth stated they were under the impression that the Park was privately owned, and they detained Dubash after park security and a park manager asked Dubash "several times to leave the park . . . but he refused." (*Id.* at 7–8). Dubash alleges Douglas and Whitworth told him the Park was a private park, but that Dubash subsequently showed them property records depicting the Park as public. (ECF No. 1 at ¶¶ 120–21). After Dubash showed Douglas and Whitworth the Park's property records, Dubash alleges Douglas and Whitworth explained they believed the Park was privately managed and the management had the right to say who could be on the property. (*Id.* at ¶ 122). Further, Dubash alleges Douglas and Whitworth were told "*Private park security has determined that this is now criminal trespass.*" (*Id.* at ¶ 137)

11

(emphasis added).  Because Douglas and Whitworth believed the Park was privately managed, they maintain they detained Dubash for his refusal to leave, constituting criminal trespass.  (ECF No. 44-3 at 7–8); *see Turner*, 848 F.3d at 691 ("Courts consider only the information available to the officer[s] at the time of the decision to stop a person." (quotations omitted)); *see also Saldana v. Garza*, 684 F.2d 1159, 1165 (5th Cir. 1982) ("Certainly we cannot expect our police officers to carry surveying equipment and a Decennial Digest on patrol; they cannot be held to a title-searcher's knowledge of metes and bounds or a legal scholar's expertise in constitutional law.").

When viewed in light of the totality of the circumstances, Dubash's initial detention was not objectively unreasonable given clearly established law and the information available to Douglas and Whitworth at the time Dubash was detained.  *See Bodzin v. City of Dall.*, 768 F.2d 722, 725–26 (5th Cir. 1985) (holding there was probable cause to arrest plaintiff for criminal trespass on public property when the "officers observed Bodzin on a site that the manager said was private property, and heard Bodzin refuse to leave after being told that he was not welcome"); *see also Scott v. Santos*, No. 22-cv-01088, 2023 WL 8167059, at *4 (W.D. Tex. Oct. 31, 2023), *appeal dismissed*, No. 23-cv-50853, 2024 WL 2272413 (5th Cir. Feb. 26, 2024) ("Kohl's is a private entity and entitled to exclude individuals from its private property.  Thus, the Court also

finds Scott has failed to 'make out a violation of a constitutional right' under the first prong of the qualified immunity inquiry [when the officers issued him a criminal trespass warning].").

Further, Douglas and Whitworth only detained Dubash for criminal trespass until another officer, Officer Ta, effectuated his arrest. (ECF No. 44-3 at 7). However, even if Douglas and Whitworth were the arresting officers, they have alleged facts that support probable cause to arrest Dubash for criminal trespass. *See Bodzin*, 768 F.2d at 725–26; *see also Cano*, No. 16-cv-392, 2018 WL 4567169, at *4 ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (citation and quotations omitted)). As such, the Court recommends Dubash's Fourth Amendment claim against Douglas and Whitworth be dismissed because they are entitled to qualified immunity.

Next, the Court will discuss whether Plaintiffs have established Douglas and Whitworth committed a direct and retaliatory First Amendment violation. Douglas and Whitworth argue Plaintiffs fail to establish a First Amendment violation and even so, Douglas and Whitworth believed the Park to be private in nature because it was privately managed, allowing Plaintiffs to be removed from the Park. (ECF No. 44 at 32–34). Plaintiffs argue that a reasonable

officer would understand that "threatening or arresting a peaceful advocate in a public park based on the content of his speech . . . violates the First Amendment." (ECF No. 53 at 36).

When an officer has probable cause—or reasonably believes they have probable cause—to arrest a plaintiff for criminal trespass, as opposed to their speech, a plaintiff's First Amendment violation claim fails. *Cano*, 2018 WL 4567169, at *6 ("If [probable cause] exists, any argument that the arrestee's speech as opposed to her criminal conduct was the motivation for her arrest must fail, no matter how clearly that speech may be protected by the First Amendment." (citation and quotations omitted)). "The Fifth Circuit [notes] even where a citizen believes that she has been subject to a retaliatory detention or arrest, if there was reasonable suspicion or probable cause for an officer to seize the citizen, 'the objectives of law enforcement take primacy over the citizen's right to avoid retaliation.'" *Id.* (quoting *Keenan v. Tejeda*, 290 F.3d 252, 261–62 (5th Cir. 2002)).

Although Plaintiffs allege threatening Plaintiffs and arresting Dubash is an "obvious First Amendment violation," Plaintiffs fail to address the information available to Douglas and Whitworth at the time of the detention and arrest. (ECF No. 53 at 37). As previously discussed, Douglas and Whitworth believed the Park was private in nature because a park manager

14

and park security informed them "that there was a protester[—]with offensive material and graphic video being shown on a tv screen to young children playing in the *private park property*[—]refusing to leave." (ECF No. 44-3 at 7; *see id.* at 8) (emphasis added). Because Douglas and Whitworth believed the Park was privately owned, they had probable cause to believe Plaintiffs were committing criminal trespass and were entitled to detain or arrest them for their conduct, rather than their speech. *See Ashcraft v. City of Vicksburg*, 561 F. App'x 399, 401 (5th Cir. 2014) (holding plaintiff "has not demonstrated that she had a clearly established 'right' to be free from a retaliatory arrest that was otherwise supported by probable cause"). As such, the Court recommends Plaintiffs' First Amendment claim against Douglas and Whitworth be dismissed because they are entitled to qualified immunity.

## 2.   1983 Claims

Section 1983 provides a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights. 42 U.S.C. § 1983. Importantly, § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To prevail on a § 1983 claim, a plaintiff must establish two elements:

(1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

## a.   The City

Plaintiffs' Complaint appears to assert two theories of municipal liability: the City (1) had multiple unconstitutional policies, practices, and/or customs, and (2) failed to adequately train the Conservancy staff. While Plaintiffs need not offer proof of their allegations at this stage, they "still must plead facts that plausibly support each element of § 1983 municipal liability under" each of their theories.[7] *Pena v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citing *Iqbal*, 556 U.S. at 678).

### i.     Policy, Practices, and Custom

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). To establish a § 1983 claim against a municipality, "a plaintiff must demonstrate three

---

[7] It seems Plaintiffs attempt to assert a ratification claim under § 1983 in their response (ECF No. 53 at 25) to Defendants' Motions to Dismiss (ECF Nos. 44, 46). However, Plaintiffs do not assert a ratification claim in their Complaint. (*See* ECF No. 1). Because Plaintiffs are alleging a ratification claim for the first time in their response, the Court will not consider such a claim at the motion to dismiss stage. *See Atwater Partners of Tex. LLC,* 2011 WL 1004880, at *1 ("When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal.").

elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose moving force is the policy or custom." *Shumpert v. City of Tupelo*, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted). "[U]nder § 1983, local governments are responsible only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted) (emphasis in original). "[I]n other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.

The City argues "Plaintiffs have failed to identify a policymaker, or articulate that there is a custom or policy sufficient to articulate a claim against the City." (ECF No. 44 at 9).

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Cox v. City of Dall., Tex.*, 430 F.3d 734, 748–49 (5th Cir. 2005)). "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'" *Id.* (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). "He or she must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762,

17

769 (5th Cir. 1984) (en banc)).  "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988).  "'Actual or constructive knowledge of [a] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority.'"  *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.2d at 842).  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law."  *City of St. Louis*, 485 U.S. at 124 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

Plaintiffs allege "[t]he City, directly and through Park Corp[oration], has delegated final rule-making authority for use of [the Park] to the Conservancy."  (ECF No. 1 at ¶ 62).  With respect to delegation, "[a] city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) 'it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role.'"  *Zarnow*, 614 F.3d at 167 (5th Cir. 2010) (quoting *Bennett*, 728 F.2d at 769).

> "[T]he delegation of policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the delegee. . . .  The governing body must expressly or

> impliedly acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent or board."

*Webster*, 735 F.2d at 841 (quoting *Bennett*, 728 F.2d at 769).

Plaintiffs appear to argue final policymaking authority was delegated via express delegation.  (ECF No. 1 at ¶¶ 62–63).  Plaintiffs cite to a section of the "Park Rules, Discovery Green, Discovery Green Conservancy" which states:

> The Discovery Green Conservancy has been charged with developing rules and regulations governing use of Discovery Green (Park Rules) to maintain a safe environment for the general public, to protect the Park from damage, to provide opportunities for conventions and tourism, and to ensure equitable access to the Park for Houstonians and visitors. The Park Rules are described in detail in the following four sections. Summaries of the Park Rules are posted at entries and within the Park.

Discovery Green Conservancy*, Park Rules: Discovery Green* § 0.1 (July 17, 2014),       https://www.discoverygreen.com/wp-content/uploads/2023/06/Park-Rules.pdf[8] ("Park Rules").  Although neither the City nor the Park Corporation are named in this specific section, Plaintiffs cite to the Park website in their

---

[8] Plaintiffs cite to the Park Rules PDF in their Complaint, but do not attach it as an exhibit.  (*See* ECF No. 1).  For efficiency and ease of locating cited materials, the Court will reference ECF No. 44-1 rather than the PDF when citing the Park Rules.  Further, the Court can consider the Park Rules, although it was not attached to the Complaint, because it was referenced and cited in the Complaint and is central to assessing *Monell* liability.  (ECF No. 1 at ¶ 2 n.1); *see In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

Complaint, which states, "[t]he City . . . purchased the remainder of the land in 2004 and created the framework for the park's construction and operations, including the role of the new organization, [the] Conservancy which incorporated in 2004" and "[the Park] exemplifies a successful public-private partnership between the City . . . and [the] Conservancy, the nonprofit 501(c)(3) organization that operates and maintains the park."[9] *Our History*, Discovery Green, https://www.discoverygreen.com/history/. [https://perma.cc/87CM-BH7H]; (ECF No. 1 at ¶¶ 45, 50 & nn.5, 7). Plaintiffs provide the Park Corporation's Articles of Incorporation, which state the Park Corporation "is incorporated to aid and act on behalf of the City to accomplish the City's governmental purposes" of the Park. (ECF No. 1-1 at 2). Further, Plaintiffs reference the Operating Agreement between the Conservancy and Park Corporation where the Park Corporation "exclusively engages the Conservancy as an independent contractor to operate, manage, maintain, and repair the Park" pursuant to the Agreement. (ECF No. 46-1 at 5).

---

[9] The Court may take judicial notice of a fact that "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(c). The Court may take judicial notice of a party's own website. *See Gemstar Grp. USA, Inc. v. Ferragamo USA, Inc.*, No. 08-cv-1822, 2008 WL 4858363, *7 n.40 (S.D. Tex. Nov. 10, 2008) (taking judicial notice of defendant's website). As such, the Court takes judicial notice of the Park's website.

Accepting these allegations and supporting documents as true, it can be reasonably inferred that it was the City, directly and through the Park Corporation, who delegated final policymaking authority for use of the Park to the Conservancy. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Even so, Plaintiffs need not identify a "individual policymaker," as the City argues. (ECF No. 44 at 22). "[T]he specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dall., Tex.*, 826 F.3d 280, 284 (5th Cir. 2016). Accordingly, to survive a motion to dismiss, a plaintiff need "only to plead facts—facts which establish that the challenged policy was promulgated or ratified by the city's policymaker" and a plaintiff's "complaint d[oes] not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme." *Id.* at 285. Because this case is at the motion to dismiss stage, Plaintiffs need not identify a specific policymaker for the Conservancy, but Plaintiffs must allege sufficient facts to establish the policy was promulgated or ratified by the

Conservancy.  Plaintiffs do not allege a theory of ratification.  Thus, the Court will determine if Plaintiffs have sufficiently established a policy.

Plaintiffs' Complaint alleges multiple policies:

- "As a matter of city policy, the City . . . through the Houston Downtown Park Corporation, delegated final authority to make rules about the use of Discovery Green to Discovery Green Conservancy. The Conservancy itself proclaims that it 'has been charged with developing rules and regulations governing use of Discovery Green.'"[10] (ECF No. 1 at ¶ 171).

- "Defendants' acts, policies and practices, and enforcement of the same against Plaintiffs, violate the Free Speech Clause of the First Amendment of the United States Constitution, as applied through the Fourteenth Amendment."[11]  (*Id.* at ¶ 176).

- "Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the immediate, irreparable, and ongoing harm to their First Amendment rights from Defendants' unconstitutional acts, practices, and policies."  (*Id.* at ¶ 180).

---

[10] This allegation goes towards the policymaker element rather than the official policy or custom element.

[11] It is unclear which policy and practices Plaintiffs are referring to here.  The Court refrains from making assumptions as to what "of the same" means.  (*Id.*).

22

- "The prior restraint is a rule and policy attributable to the City of Houston, the Houston Downtown Park Corporation, and Discovery Green Conservancy." (*Id.* at ¶ 191).

- "The content- and viewpoint-based prior restraint on Plaintiffs' wearing of Guy Fawkes masks and showing the video *Dominion* in a public park is a rule and policy created and maintained by a final policymaker, Discovery Green Conservancy." (*Id.* at ¶ 206).

- "The City also created, maintained, and continues to maintain a policy of giving Discovery Green Conservancy authority to carry out the public function of maintaining rules of use for Discovery Green. The City has done so despite providing no narrow, objective, or definite criteria to ensure the Conservancy does not infringe the First Amendment." (*Id.* at ¶ 209).

- "Defendants' policy of unfettered discretion in deciding when to restrict speech is not a generally applicable rule." (*Id.* at ¶ 241).

- "Under Defendants' standardless policy, the Conservancy has, and has exercised, final discretion to allow frightening masks for Halloween thrills and Dia de los Muertos while banning the non-frightening and widely-understood masks Plaintiffs use at Cubes of

23

Truth for promoting non-violence to animals or proselytizing religion." (*Id.* at ¶ 242).

- "Defendants' inconsistent enforcement of its policies undermines any purported interest." (*Id.* at ¶ 244).

Official policy exists in two forms. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow*, 614 F.3d at 168. Second, it may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (quoting *Piotrowski*, 237 F.3d at 579). Proof of existence of a custom or policy can be shown by "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees" or where "a final policymaker took a single unconstitutional action." *Zarnow*, 614 F.3d at 169. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Id.* "Consistent with the commonly understood meaning of custom, proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy." *Paz v. Weir*, 137 F. Supp. 2d 782, 799 (S.D. Tex. 2001).

24

The "policy" that Plaintiffs allege is "conclusory and devoid of critical factual enhancement." *Verastique v. City of Dall., Tex.*, No. 23-cv-10395, 2024 WL 3325881, at *3 (5th Cir. July 8, 2024).  For instance, most of Plaintiffs' allegations regarding policy merely state Defendants' policy violates the First Amendment, that prior restraint is a policy, and there is a policy of "unfettered discretion."  (ECF No. 1 at ¶¶ 176–244).  None of these general and conclusory allegations cite to formal statements established by the Conservancy.  Simply alleging that there is a policy, without pointing to a formal policy statement is not adequate.  *See Zarnow*, 614 F.3d at 169 ("Because no formal directive exists concerning the police department's 'plain view' practices, our analysis turns on the second form of policy.")  Also, to the extent Plaintiffs allege a policy of "unfettered discretion," Plaintiffs are mistaken because the Park Rules and the Operating Agreement state that the rules and regulations of the Park must comply with applicable state laws, federal laws, and Houston ordinances. (ECF No. 46-1; ECF No. 44-1 at 7).  Because Plaintiffs point to no formal policy statement, other than the express delegation of policymaking authority, they must demonstrate the City's liability by establishing a pattern of unconstitutional conduct.  *See Peterson*, 588 F.3d at 847.

"Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the

attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Zavala v. Harris Cnty., Tex.*, No. 22-cv-20611, 2023 WL 8058711, at *2 (5th Cir. Nov. 21, 2023) (internal quotations omitted).  Further, "[a] pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (quoting *Est. of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).  It is not the Court's responsibility to infer that problems are reoccurring; rather, it is Plaintiff's burden to show a pattern of violations.  *Sligh v. City of Conroe, Tex.*, 87 F.4th 290, 303 (5th Cir. 2023).

Plaintiffs point to no pattern of unconstitutional conduct outside of the incidents that give rise to their alleged injuries, which is insufficient.  *See Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020) ("[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' [Plaintiffs] must do more than describe the incident that gave rise to his injury." (citation omitted)).  Further, the only other instances Plaintiffs reference are contrary to showing a pattern of unconstitutional conduct, such as alleging "[n]o Houston police officer or other city official arrested or interfered with protestors of the NRA convention based on the content of their

speech" and "[n]o Houston police officer or other city official arrested or interfered with speakers at Rainbow on the Rink based on the content of their speech, despite the complaints." (ECF No. 1 at ¶¶ 77, 81). "The incidents to which [Plaintiffs] point[] do not have the requisite similarity to be deemed a custom, adopted as official policy, and are not analogous to the facts." *Zavala*, 2023 WL 8058711, at *2. As such, Plaintiffs fail to articulate a custom or policy against the City.

### ii.        Failure to Train

To establish *Monell* liability based on a municipality's failure to train or supervise,

> a plaintiff must "prove that (1) the [municipality] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."

*Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting *Pena*, 879 F.3d at 623). "To show deliberate indifference, a plaintiff . . . must allege a 'pattern of similar constitutional violations by untrained employees'" or "through the single-incident exception." *Id.* (quoting *Connick*, 563 U.S. at 62). If plaintiffs do not allege a pattern, it is "possible to establish deliberate indifference through the single-incident exception." *Id.* "Without notice that

27

a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Id.* at 61.

Plaintiffs' Complaint alleges multiple occasions where the City failed to train the Conservancy's staff:

- "In granting Discovery Green Conservancy authority to carry out the public function of maintaining rules of use for Discovery Green, the City provided no training to Discovery Green Conservancy and its staff (either directly or through the Park Corporation) about the First Amendment protections for speech at a public park like Discovery Green." (ECF No. 1 at ¶ 211).

- "That failure to provide training was a proximate cause for the violations of Plaintiffs' First Amendment rights, including the pattern of four incidents in which untrained Discovery Green Conservancy staff excluded Plaintiffs from speaking at Discovery Green because of the content and viewpoint they expressed." (*Id.* at ¶ 212).

28

- "Even now, the City has provided no training to Discovery Green Conservancy staff despite knowing of the past First Amendment violations (including Ms. Dubash's arrest) and the ongoing prior restraint against Plaintiffs' speech at Discovery Green park." (*Id.* at ¶ 214).

- "By providing no training for Discovery Green Conservancy staff on First Amendment protections for speech at public parks, the City was deliberately indifferent to Plaintiffs' constitutional rights." (*Id.* at ¶ 215).

Here, Plaintiffs' failure to train theory is centered around their allegation that the City provided no training to Conservancy staff concerning First Amendment protections for speech. (*See* ECF No. 1). To establish deliberate indifference on this theory, Plaintiffs allege a "pattern of four incidents in which untrained Discovery Green Conservancy staff excluded Plaintiffs from speaking at Discovery Green." (*Id.* at ¶ 212). Although a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983, Plaintiffs cannot establish a pattern of similar constitutional violations by untrained employees by relying only on facts that give rise to the Complaint here. *See Connick*, 563 U.S. at 60. "[A] claim against

29

a municipality [can] not survive when 'the complaint's only specific facts appear in the section laying out the events that gave rise to th[e] action,' and thus rejected as conclusory the plaintiff's assertion that there was a 'persistent, widespread practice' of tolerating the use of excessive force." *Morales v. Carrillo*, No. 19-cv-217, 2021 WL 664854, at *17 (W.D. Tex. Feb. 19, 2021) (quoting *Ratliff v Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (finding plaintiffs failed to identify a pattern of similar violations for a failure to train claim by applying the "unofficial custom as policy" standard); *see also Macias, v. Dewitt Cnty. Tex.*, No. 2:23-cv-00043, 2023 WL 11053038, at *12 (S.D. Tex. Dec. 15, 2023), *report and recommendation adopted as modified sub nom. Macias v. Tex.*, No. 2:23-cv-00043, 2024 WL 1174178 (S.D. Tex. Mar. 18, 2024) (stating that to establish deliberate indifference by showing a pattern of similar constitutional violations by untrained employees, "the complaint must detail prior incidents beyond those events giving rise to the action").  Further, when disregarding the instances that give rise to this action, Plaintiffs allegations are contrary to showing a pattern of similar constitutional violations.  (*See* ECF No. 1).  For instance, Plaintiffs allege "[n]o Houston police officer or other city official arrested or interfered with speakers at Rainbow on the Rink based on the content of their speech, despite the complaints" and "[n]o Houston police officer or other city official arrested or interfered with

protestors of the NRA convention based on the content of their speech." (*Id.* at ¶¶ 77, 81). These allegations are inapposite to Plaintiffs' assertion that there is a pattern of similar constitutional violations.

Although Plaintiffs allege the City provided "no training," the single-incident exception does not apply because Plaintiffs allege that the City provided no training regarding the First Amendment, rather than a complete failure to train. *See Est. of Davis ex rel. McCully*, 406 F.3d at 386 (explaining that the Fifth Circuit has found liability under the single-incident exception "for a single incident when the county 'failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness,' while also noting that 'there is a difference between a complete failure to train . . . and a failure to train in one limited area." (citation omitted)); *see also Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 483 (5th Cir. 2021) ("The single-incident exception is generally reserved for those cases in which the government actor was provided no training whatsoever." (citation and quotations omitted)). The Court also emphasizes the single-incident exception is a narrow exception that the Fifth Circuit has been reluctant to expand. *Id.* at 385.

Even so, Plaintiffs do not provide any information about the training that City did or did not provide. *See Macias,* 2023 WL 11053038, at *12 ("Plaintiffs

have no specific allegations in the Second Amended Complaint about what
training is provided by Live Oak County and/or Coastal Plains, how it is
inadequate, what additional training should be required, how supervision or
discipline is inadequate or how Live Oak County and/or Coastal Plains were
deliberately indifferent in adopting or developing its training, supervision and
discipline procedures."). Rather, Plaintiffs provide conclusory statements that
a failure to train regarding the First Amendment caused the constitutional
violations. *See Ratliff*, 948 F.3d at 285 ("Ratliff's complaint states in conclusory
fashion that a 'deficiency in training actually caused Defendants Scudder and
Sheffield to violate Plaintiff's constitutional rights.' But, absent specific
allegations supporting a plausible causation inference, this legal conclusion
does not state a claim for relief and warrants dismissal under Rule 12(b)(6).").

Absent a pattern or applicability of the single-incident exception, the
claim fails on the deliberate indifference prong. *Garcia v. Harris Cnty.*, No. 22-
cv-198, 2022 WL 2230469, at *3 (S.D. Tex. June 2, 2022), *report and
recommendation adopted*, No. 22-cv-198, 2022 WL 2222972 (S.D. Tex. June 21,
2022). Plaintiffs fail to sufficiently allege multiple unconstitutional policies,
practices, and/or customs implemented by the City or that the City failed to
adequately train the Conservancy staff. Thus, the Court recommends
Plaintiffs' § 1983 claims against the City be dismissed. *See Zarnow*, 614 F.3d

32

at 171 ("Because we are affirming the court's finding that Zarnow has not established a 'custom or policy' of the City, we too need not consider the moving force factor.").

### b.    Conservancy

The Conservancy is alleged to have violated (1) Plaintiffs' First Amendment right by prohibiting speech in a traditional public forum (Count 1), (2) Plaintiffs' First Amendment right for prior restraint (Count 2), (3) Dubash's First Amendment right to free exercise of religion (Count 5), and (4) the TRFRA (Count 6).  (ECF No. 1 at ¶¶ 169–258).  Plaintiffs allege § 1983 constitutional violations against the Conservancy are First Amendment violations (Count 1, Count 2, and Count 5).  The Conservancy seeks dismissal under Rule 12(b)(6).  (ECF No. 44 at 8).

"'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

33

Plaintiffs must allege that the Conservancy is acting under the color of state law for a § 1983 claim to survive.[12]  *See id.*  As alleged by Plaintiffs, the Conservancy is a "501(c)(3) organization in Houston, Texas" and the "Conservancy is . . . an unaccountable private organization." (ECF No. 1 at ¶¶ 16, 277).  "For purposes of § 1983, a party is a state actor either 'because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'" *Julapalli v. Boom*, No. 4:23-cv-02061, 2024 WL 3030120, at *2 (S.D. Tex. May 31, 2024), *report and recommendation adopted*, No. 4:23-cv-02061, 2024 WL 3029514 (S.D. Tex. June 17, 2024) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).  "If the Fourteenth Amendment is not to be displaced, . . . its ambit cannot be a simple line between States and people operating outside formally governmental organizations, and the deed of an ostensibly private organization or individual is to be treated sometimes as if a

---

[12] The Conservancy does not address this element in their Motion to Dismiss (ECF No. 44), but the Court deems it necessary to evaluate, as the Conservancy is a private entity. "A court may *sua sponte* dismiss on its own Rule 12(b)(6) motion for failure to state a claim as long as the plaintiff has notice and an opportunity to respond." *Thomas v. State*, 294 F. Supp. 3d 576, 619 (N.D. Tex. 2018), *report and recommendation adopted*, No. 3:17-cv-0348, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006).  "Plaintiff receives notice and an opportunity to respond based on "[t]he fourteen-day time frame for filing objections to a recommended dismissal . . . ." *Id.* (quoting *Fantroy v. First Fin. Bank. N.A.*, 2012 WL 6764551, at *7 (N.D. Tex. Dec. 10, 2012)).

State had caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).

"[T]o act under color of law does not require that the accused be an officer of the state." *Rosborough*, 350 F.3d at 460 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quotations omitted)).

> A private entity can qualify as a state actor in a few limited circumstances—including, for example, "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity."

*Behrghundi v. Save Our City-Mart, Tex.*, No. 1:19-cv-402, 2019 WL 7037939, at *4 (W.D. Tex. Dec. 20, 2019) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019)).

Here, construing Plaintiffs' Complaint leniently, Plaintiffs appear to rely on the first of these circumstances, "when the private entity performs a traditional, exclusive public function." *Id.* For instance, Plaintiffs allege "[t]he City controls and is responsible for public streets, sidewalks, and parks in the city. Houston also authorizes and oversees various municipal departments, such as the Houston Police Department and the City's Parks and Recreation Department." (ECF No. 1 at ¶ 14). Further, Plaintiffs allege the "Conservancy fulfills a public function of administering a public park, on behalf of the City

and the Park Corporation and for their benefit" and "[t]he City also created, maintained, and continues to maintain a policy of giving [the] Conservancy authority to carry out the public function of maintaining rules of use for Discovery Green." (*Id.* at ¶¶ 67, 209). None of these allegations supports Plaintiffs' position that the Conservancy can be sued under § 1983 because they fail to sufficiently allege the Conservancy is acting under color of state law. "'[T]o qualify as a traditional, exclusive public function within the meaning of our state-action precedents, the government must have *traditionally and exclusively* performed the function.'" *Behrghundi*, 2019 WL 7037939, at *5 (quoting *Manhattan Cmty. Access Corp.*, 587 U.S. at 809 (emphasis in original)). "Very few functions fall under that category." *Id.* (quoting *Manhattan Cmty. Access Corp.*, 587 U.S. at 809) (quotations omitted)); *see also Wanzer v. Rayford*, No. 20-cv-00779, 2021 WL 3081311, at *3 (W.D. Tex. July 21, 2021) ("While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." (citation and quotations omitted)). For instance, courts have identified functions such as running elections and operating a company town as traditionally and exclusively state functions, but have rejected "running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal

36

defendants, resolving private disputes, and supplying electricity." *Manhattan Cmty. Access Corp.*, 587 U.S. at 809–10.

Plaintiffs cite no authority for the position that the Park Corporation acting as an independent contractor for a government corporation "to operate, manage, maintain, and repair the Park" is a traditional *and* exclusive function of the government.  (*See* ECF No. 1).  Plaintiffs do not even attempt to establish that the Conservancy acted under color of state law other than asserting conclusory statements, such as "[a]t all relevant times, each Defendant acted under color of state law," and "[t]he content and viewpoint of Plaintiffs' message was the motivating factor in Mandel's demands, made under the color of state law." (ECF No. 1 at ¶¶ 20, 225).  As such, Plaintiffs fail to allege the Conservancy was fulfilling a traditional and exclusive state function.

To the extent Plaintiffs intended to allege the second circumstance, when the government compels the private entity to take a particular action, Plaintiffs' allegations fall short.  "The state compulsion (or coercion) test holds the state responsible 'for a private decision only when [the state] has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  The Complaint contains no

factual allegations that the City or Park Corporation exerted coercive power or provided significant encouragement for the Conservancy or Mandel's decision to allegedly violate Plaintiffs' constitutional rights.  (*See* ECF No. 1).  As such, the Conservancy or Mandel's decision as the President of the Conservancy, in allegedly violating Plaintiffs' rights, is not fairly attributable to the City or Park Corporation under the state compulsion test.  (*See id.*); *see Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 551 (5th Cir. 2005).

With respect to the third circumstance, when the government acts jointly with the private entity, Plaintiffs' allegations fall short again.  "The '[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.'" *Cornish*, 402 F.3d at 550 (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982)).  "To make the requisite showing of state action by a regulated entity, [Plaintiffs] must establish 'a sufficiently close nexus between the State and *the challenged action* of the regulated entity.'" *Id.* (quoting *Blum*, 457 U.S. at 1004 (emphasis in original)).

Here, the Complaint also contains no allegations that the City or Park Corporation willfully participated, or was a joint participant, in the Conservancy or Mandel's decision to allegedly violate Plaintiffs' constitutional rights.  (*See* ECF No. 1).  The only state actors that Plaintiffs allege contributed

38

to the constitutional violations are Houston Police Officers.  However, "[c]ourts have routinely held that 'a private actor does not take joint action under color of state law and thereby become liable under § 1983 merely by furnishing information to police officers who then act upon that information.'"  *Polacek v. Kemper Cnty., Miss.*, 739 F. Supp. 2d 948, 953 (S.D. Miss. 2010) (quoting *Givens v. Main Street Bank*, No. 5:08-cv-25, 2009 WL 1120599, *8 (N.D. W. Va. Apr. 24, 2009)); *see Lockhead v. Weinstein*, 24 Fed. App'x 805, 806 (9th Cir. 2001) ("[M]ere furnishing of information to police officers does not constitute joint action under color of state law which renders a private citizen liable under § 1983."); *How v. City of Baxter Springs*, No. 06-cv-3022, 217 Fed. App'x 787, 793 (10th Cir. 2007) ("[A]bsent more, causing the state, or an arm of the state, to initiate a prosecution or serve process is insufficient to give rise to state action."); *Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989) ("[P]rivate parties are not state actors when they merely call on the law for assistance, even though they may not have grounds to do so. . . . There must be a conspiracy, an agreement on a joint course of action in which the private party and the state have a common goal.") (quoting *Gramenos v. Jewel Cos.*, 797 F.2d 432, 435 (7th Cir. 1986)); *Kahermanes v. Marchese*, 361 F. Supp. 168, 171 (E.D. Pa. 1973) ("The deliberate giving of false information by an individual to a police officer

to cause the arrest of another does not give rise to a cause of action under the Civil Rights Acts.").

Here, there is no allegation the Houston Police Officers were aware of any improper motive on the part of the Conservancy, which might suggest that the deputies were knowingly facilitating the Conservancy's alleged vendetta. *See id.* at 954; *cf. Givens*, 2009 WL 1120599 at *9 (holding that complaint was sufficient to state § 1983 claim against private individual where it charged that the plaintiff's arrest was based on "falsified information prepared by" both the arresting officer and the putative complainants (defendants), and alleged that the officer knew the information was false).  On the contrary, Plaintiffs allege that Houston Police Officers believed the Park to be privately owned when asking them to leave.  (ECF No. 1 at ¶¶ 85, 88, 91, 96, 120, 122).  Further, Douglas and Whitworth believed the Park to be privately owned and, thus, believed they had the authority to arrest Dubash for criminal trespass.  (*Id.* at ¶¶ 122, 137–38).  As such, the joint participation test is not applicable.

40

Plaintiffs fail to allege that the Conservancy was acting under color of state law.[13]  *See Behrghundi*, 2019 WL 7037939, at *5.  Again, the Court emphasizes that Plaintiffs simply allege, "[a]t all relevant times, each Defendant acted under color of state law."  (ECF No. 1 at ¶ 20).  Without more, this conclusory allegation falls far below the bar of alleging a private entity is acting under the color of state law and the Court will not search through Plaintiffs' forty-six-page Complaint to piece together a color of law argument for Plaintiffs beyond what the Court has already done.  *See Cornish*, 402 F.3d at 548–49 ("[W]e will not strain to find inferences favorable to the plaintiff[]." (citation and quotations omitted)).

To the extent the Conservancy may be acting under the color of state law, Plaintiffs' allegations do not speak to any of the applicable tests the Court must consider in determining whether the Conservancy acted under the color of state law.  *See Reese v. Robertson*, No. 3:22-cv-01002, 2023 WL 8720723, at *4 (N.D. Tex. Nov. 16, 2023), *report and recommendation adopted*, No. 3:22-cv-

---

[13] The Court acknowledges the Conservancy argues the constitutional violation prong of a § 1983 claim is not met, namely the alleged First Amendment violations.  However, the Court need not address that prong because Plaintiffs fail to sufficiently allege the Conservancy was acting under color of state law.  *See Lewis v. Cont'l Airlines, Inc.*, 80 F. Supp. 2d 686, 707 (S.D. Tex. 1999) ("Lewis cannot prevail against Tisdel and Continental on his federal constitutional claim, as the required element of state action is absent. Therefore, Lewis's § 1983 claim must be rejected."); *see also Julapalli v. Boo*m, No. 4:23-cv-02061, 2024 WL 3030120 (S.D. Tex. May 31, 2024), *report and recommendation adopted*, No. 4:23-cv-02061, 2024 WL 3029514 (S.D. Tex. June 17, 2024).

01002, 2023 WL 8719452 (N.D. Tex. Dec. 15, 2023) ("To the extent Heartland could be a private security company and Saenz is a private citizen employed by Heartland, Reese's allegations do not speak to any of the applicable tests the Court must consider to determine whether these Defendants acted under color of state law.  Specifically, Reese does not include sufficient factual detail for the Court to reasonably infer that the alleged conduct of these Defendants is in any way fairly attributable to the State.").  Accordingly, the Court recommends Plaintiffs' § 1983 claims against the Conservancy be dismissed for failure to allege the Conservancy was acting under color of law.

### c.    Mandel

Plaintiffs assert a § 1983 claim against Mandel for a direct and retaliatory First Amendment violation (Count 4).  (ECF No. 1 at ¶ 221). Mandel seeks dismissal under Rule 12(b)(6).  (ECF No. 44 at 8).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Rosborough*, 350 F.3d at 460 (quoting *West*, 487 U.S. at 48).  As alleged by Plaintiffs, Mandel is "sued in his individual capacity, is a resident of Texas and was the president of [the] Conservancy from 2010 until summer

2023."[14]   (ECF No. 1 at ¶ 19).  "For purposes of § 1983, a party is a state actor either 'because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.'"  *Julapalli*, 2024 WL 3030120, at *2 (quoting *Lugar*, 457 U.S. at 937).

"[T]o act under color of law does not require that the accused be an officer of the state."  *Rosborough*, 350 F.3d at 460 (quoting *Adickes*, 398 U.S. at 152 (quotations omitted)).

> A private entity can qualify as a state actor in a few limited circumstances—including, for example, "(i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity."

*Behrghundi*, 2019 WL 7037939, at *4 (quoting *Manhattan Cmty. Access Corp.*, 587 U.S. at 809).

Here, Plaintiffs allege that Mandel was acting under color of state law throughout their Complaint but fail to add supporting allegations.   For

---

[14] Mandel does not address this element in his Motion to Dismiss (ECF No. 44), but the Court deems it necessary to evaluate, as Mandel is a private individual.  "A court may *sua sponte* dismiss on its own Rule 12(b)(6) motion for failure to state a claim as long as the plaintiff has notice and an opportunity to respond."  *Thomas*, 294 F. Supp. 3d at 619 (citing *Carroll*, 470 F.3d at 1177).  "Plaintiff receives notice and an opportunity to respond based on "[t]he fourteen-day time frame for filing objections to a recommended dismissal . . . ."  *Id.* (quoting *Fantroy*, 2012 WL 6764551, at *7).

instance, Plaintiffs allege "each Defendant acted under color of state law," "content and viewpoint of Plaintiffs' message was the motivating factor in Mandel's demands, made under the color of state law," and "the First Amendment prohibits an individual acting under the color of state law from excluding speakers from a public park." (ECF No. 1 at ¶¶ 20, 225, 233). Within the Complaint, there are no allegations that Mandel performed a traditional, exclusive public function. To the extent that Plaintiffs intended Mandel to be sued as a state actor by virtue of being the Conservancy President, Plaintiffs are unsuccessful. As established, Plaintiffs failed to sufficiently allege that the Conservancy acted under color of state law.

Moreover, the Complaint contains no factual allegations that the City or Park Corporation exerted coercive power or provided significant encouragement over Mandel's decision to allegedly violate Plaintiffs' constitutional rights. (*See* ECF No. 1). As such, the Mandel's decision in allegedly violating Plaintiffs' constitutional rights is not fairly attributable to the City or Park Corporation under the state compulsion test. (*Id.*); *see Cornish*, 402 F.3d at 551.

Finally, the Complaint contains no allegations that the City or Park Corporation willfully participated, or was a joint participant, in Mandel's decision to allegedly violate Plaintiffs' constitutional rights. (*See* ECF No. 1).

44

The only state actors that Plaintiffs allege contributed to the constitutional violations are Houston Police Officers. However, as established, there is no allegation the Houston Police Officers were aware of any improper motive on the part of the Conservancy or Mandel, which might suggest that the deputies were knowingly facilitating the Conservancy or Mandel's alleged vendetta. *See id.* at 954; *cf. Givens*, 2009 WL 1120599 at *9 (holding that complaint was sufficient to state § 1983 claim against private individual where it charged that the plaintiff's arrest was based on "falsified information prepared by" both the arresting officer and the putative complainants (defendants), and alleged that the officer knew the information was false). On the contrary, Plaintiffs allege that Houston Police Officers believed the Park to be privately owned when asking them to leave. (ECF No. 1 at ¶¶ 85, 88, 91, 96, 120, 122). Further, Douglas and Whitworth believed the Park to be privately owned and thus, believed they had the authority to arrest Dubash for criminal trespass. (*Id.* at ¶¶ 122, 137–38). As such the joint participation test is not applicable.

To the extent Mandel may be acting under the color of state law, Plaintiffs' allegations do not speak to any of the applicable tests the Court must consider in determining whether Mandel acted under the color of state law. *See Reese*, 2023 WL 8720723, at *4 ("To the extent Heartland could be a private security company and Saenz is a private citizen employed by Heartland,

Reese's allegations do not speak to any of the applicable tests the Court must consider to determine whether these Defendants acted under color of state law. Specifically, Reese does not include sufficient factual detail for the Court to reasonably infer that the alleged conduct of these Defendants is in any way fairly attributable to the State.").   Accordingly, the Court recommends Plaintiffs' § 1983 claim against Mandel be dismissed for failure to allege Mandel was acting under color of law.[15] *See Behrghundi*, 2019 WL 7037939, at *5; *see also Cornish*, 402 F.3d at 548–49 ("[W]e will not strain to find inferences favorable to the plaintiff[]." (citation and quotations omitted)).

### 3.   State Law Claims

Dubash alleges the City, the Conservancy, and the Park Corporation violated the TRFRA.  (ECF No. 1 at ¶¶ 249–58).  Plaintiffs allege the City is liable for unlawful private delegation.  (*Id.* at ¶¶ 272–79).

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) *the district court has dismissed all claims over which it has original jurisdiction*, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

---

[15] The Court acknowledges Mandel argues the constitutional violation prong of a § 1983 claim is not met, namely the alleged First Amendment violations.  However, the Court need not address that prong because Plaintiffs fail to sufficiently allege Mandel was acting under color of state law.  *See Lewis*, 80 F. Supp. 2d at 707; *see also Julapalli*, 2024 WL 3030120.

28 U.S.C. § 1367(c) (emphasis added). "When federal law claims that serve as the basis for subject matter jurisdiction are dismissed and only state law claims grounded on supplemental jurisdiction remain, a district court has broad discretion to dismiss the state law claims." *Price v. Jefferson Cnty.*, 470 F. Supp. 2d 665, 694 (E.D. Tex. 2006). "Moreover, in the Fifth Circuit, the 'general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.'" *Id.* (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992)).

Because the Court recommends the federal claims be dismissed, the Court declines to exercise supplemental jurisdiction over the state law claims. *See Youngblood v. City of Galveston, Tex.*, 920 F. Supp. 103, 107 (S.D. Tex. 1996). The Court recommends the state law claims—TRFRA violation and unlawful private delegation—be dismissed.

### B.   Park Corporation's Motion to Dismiss

The Park Corporation is alleged to have violated (1) Plaintiffs' First Amendment right by prohibiting speech in a traditional public forum (Count 1), (2) Plaintiffs' First Amendment right for prior restraint (Count 2), (3) Dubash's First Amendment right to free exercise of religion (Count 5), and (4) the TRFRA (Count 6). (ECF No. 1 at ¶¶ 169–258). The Park Corporation seeks

dismissal under Rule 12(b)(1) and Rule 12(b)(6). (ECF No. 46 at 6). The basis of the Park Corporation's 12(b)(1) argument is that the Court lacks subject matter jurisdiction because the allegations in the Complaint are insufficient to invoke federal jurisdiction. (*Id.* at 12).

### 1.    1983 Claims

To prevail upon a § 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley*, 726 F.3d at 638. While Plaintiffs need not offer proof of their allegations at this stage, they "still must plead facts that plausibly support each element of § 1983 municipal liability under" each of their theories. *Pena*, 879 F.3d at 621 (citing *Iqbal*, 556 U.S. at 678).

"Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell*, 436 U.S. at 689. As alleged, the Park Corporation is a government corporation created by the City; thus, the Park Corporation is treated as a municipal entity for the purposes of § 1983 claims. (ECF No. 1-1 at 2; ECF No. 46 at 10). Plaintiffs' alleged § 1983 constitutional violations against the Park Corporation are First Amendment violations (Count 1, Count 2, and Count 5).

### a.  Policy, Practices, and Custom

Plaintiffs' Complaint appears to assert the Park Corporation is liable for unconstitutional policies, practices, and/or customs with respect to their First Amendment violation for prohibiting speech in a traditional public forum and First Amendment violation for prior restraint.  (ECF No. 1 at ¶¶ 171, 176, 180, 191).  The Park Corporation argues "[t]here are no factual allegations that [the Park Corporation] is a policymaker, or that [the Park Corporation] has an official policy which was a 'moving force' in violation of the Plaintiffs' constitutional rights."  (ECF No. 46 at 15).

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  *Monell*, 436 U.S. at 691.  To establish a § 1983 claim against a municipality, "a plaintiff must demonstrate three elements: a policymaker; an official policy [or custom]; and a violation of constitutional rights whose moving force is the policy or custom."  *Shumpert*, 905 F.3d at 316 (internal quotation marks omitted).

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality."  *Zarnow*, 614 F.3d at 167 (citing *Cox*, 430 F.3d at 748–49).  With respect to delegation, "[a] city's governing body

may delegate policymaking authority (1) by express statement or formal action or (2) 'it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role.'" *Zarnow*, 614 F.3d at 167 (quoting *Bennett*, 728 F.2d at 769).

Here, accepting Plaintiffs' allegations as true, Plaintiffs have sufficiently alleged at this stage of litigation that the City directly and through the Park Corporation expressly delegated final policymaking authority to the Conservancy. Specifically, the Park Corporation delegated final policymaking authority via the Operating Agreement and the Park Rules. (ECF No. 46-1; ECF No. 44-1). The Park Corporation does not dispute the delegation of final policymaking authority claim, other than by simply stating "[t]he only reference to [the Park Corporation] in Count 1 is a bare recitation that the City's delegation of rule-making authority to the Conservancy was done through [the Park Corporation] – nothing more." (ECF No. 46 at 14). As such, it can be reasonably inferred from the facts asserted and documents referenced by Plaintiffs, accepted as true, that the City, directly and through the Park Corporation, has delegated final rule-making authority of the Park to the Conservancy.

As discussed, because this case is at the motion to dismiss stage, Plaintiffs need not identify a specific policymaker; however, Plaintiffs must

50

allege sufficient facts to establish the policy was promulgated or ratified by the Conservancy.  *See Groden*, 826 F.3d at 284.  Plaintiffs do not allege a theory of ratification; thus, the Court will determine if Plaintiffs have sufficiently established a policy.

As to a policy, Plaintiffs' allegations against the Park Corporation with respect to these § 1983 claims include:

- "As a matter of city policy, the City of Houston, through the . . . Park Corporation, delegated final authority to make rules about the use of Discovery Green to [the] Conservancy.  The Conservancy itself proclaims that it 'has been charged with developing rules and regulations governing use of Discovery Green.'"[16]  (ECF No. 1 at ¶ 171).

- "Defendants' acts, policies and practices, and enforcement of the same against Plaintiffs, violate the Free Speech Clause of the First Amendment of the United States Constitution, as applied through the Fourteenth Amendment."[17]  (*Id.* at ¶ 176).

---

[16] This allegation goes towards the policymaker element rather than the official policy or custom element.

[17] Again, it is unclear which policy and practices Plaintiffs are referring to here.  The Court refrains from making assumptions as to what "of the same" means.

- "Plaintiffs have no adequate legal, administrative, or other remedy by which to prevent or minimize the immediate, irreparable, and ongoing harm to their First Amendment rights from Defendants' unconstitutional acts, practices, and policies." (*Id.* at ¶ 180).

- "The prior restraint is a rule and policy attributable to the City of Houston, the Houston Downtown Park Corporation, and Discovery Green Conservancy." (*Id.* at ¶ 191).

- "Defendants' policy of unfettered discretion in deciding when to restrict speech is not a generally applicable rule." (*Id.* at ¶ 241).

- "Under Defendants' standardless policy, the Conservancy has, and has exercised, final discretion to allow frightening masks for Halloween thrills and Dia de los Muertos while banning the non-frightening and widely-understood masks Plaintiffs use at Cubes of Truth for promoting non-violence to animals or proselytizing religion." (*Id.* at ¶ 242).

- "Defendants' inconsistent enforcement of its policies undermines any purported interest." (*Id.* at ¶ 244).

52

- "Defendants' policy and enforcement is not the least religiously restrictive means of furthering any compelling interest." (*Id.* at ¶ 245).

Official policy exists in two forms. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow*, 614 F.3d 161, 168 (5th Cir. 2010). Second, it may "arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson*, 588 F.3d at 847 (quoting *Piotrowski*, 237 F.3d at 579.

Plaintiffs' policy allegations are extremely similar to the allegations evaluated under the City's municipal liability. As discussed, the "policy" that Plaintiffs allege are "conclusory and devoid of critical factual enhancement." *Verastique*, 2024 WL 3325881, at *3. Most of Plaintiffs' allegations regarding policy merely state Defendants' policy violates the First Amendment, that prior restraint is a policy, and there is a policy of "unfettered discretion." (ECF No. 1 at ¶¶ 176–244). None of these general and conclusory allegations cite to formal statements established by the Conservancy. Simply alleging that there is a policy, without pointing to a formal policy statement is not sufficient. *Zarnow*, 614 F.3d at 169 ("Because no formal directive exists concerning the police department's 'plain view' practices, our analysis turns on the second

53

form of policy.")  Also, to the extent Plaintiffs allege a policy of "unfettered discretion," Plaintiffs are mistaken because the Park Rules and the Operating Agreement state that the rules and regulations of the Park must comply with applicable state laws, federal laws, and Houston ordinances.  (ECF No. 46-1; ECF No. 44-1 at 7).  Because Plaintiffs point to no formal policy statement, other than the express delegation of policymaking authority, they must demonstrate the Park Corporation's liability by establishing a pattern of unconstitutional conduct.  *See Peterson*, 588 F.3d at 847.

Plaintiffs point to no pattern of unconstitutional conduct outside of the incidents that give rise to their alleged injuries, which is insufficient.  *See Ratliff*, 948 F.3d at 285 ("[P]lausibly to plead a practice 'so persistent and widespread as to practically have the force of law,' [Plaintiffs] must do more than describe the incident that gave rise to his injury." (citation omitted)).  Further, the only other instances Plaintiffs reference are contrary to showing a pattern of unconstitutional conduct, such as alleging "[n]o Houston police officer or other city official arrested or interfered with protestors of the NRA convention based on the content of their speech" and "[n]o Houston police officer or other city official arrested or interfered with speakers at Rainbow on the Rink based on the content of their speech, despite the complaints."  (ECF No. 1 at ¶¶ 77, 81).  "The incidents to which [Plaintiffs] point[] do not have the

54

requisite similarity to be deemed a custom, adopted as official policy, and are not analogous to the facts." *Zavala*, 2023 WL 8058711, at *2. As such, Plaintiffs fail to allege a policy or custom implemented by the Park Corporation.

### b. Failure to Train

Plaintiffs' Complaint appears to assert the Park Corporation is liable for failure to train Conversancy staff with respect to their First Amendment violation for restricting free exercise of religion (Count 5). (ECF No. 1 at ¶ 211).

To establish *Monell* liability based on a municipality's failure to train or supervise,

> a plaintiff must "prove that (1) the [municipality] failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."

*Hutcheson*, 994 F.3d at 482 (quoting *Pena*, 879 F.3d at 623). "To show deliberate indifference, a plaintiff . . . must allege a 'pattern of similar constitutional violations by untrained employees.'" *Id.* (quoting *Connick*, 563 U.S. at 62).

Plaintiffs only reference Park Corporation once under Count 5 by alleging,

> [i]n granting [the] Conservancy authority to carry out the public function of maintaining rules of use for Discovery Green, the City provided no training to [the] Conservancy and its staff (either directly or through the Park Corporation) about the First Amendment protections for speech at a public park like Discovery Green.

(ECF No. 1 at ¶ 211). Plaintiffs' assertion that "the City provided no training to [the] Conservancy and its staff (either directly or through the Park Corporation)" is without factual support and does not sufficiently allege the "pattern of similar constitutional violations by untrained employees" necessary to satisfy the deliberate indifference prong. *Hutcheson*, 994 F.3d at 482 (internal quotations omitted).

To the extent Plaintiffs attempt to allege the Park Corporation provided "no training," the single-incident exception does not apply because Plaintiffs allege that the Park Corporation provided no training with regard to the First Amendment, rather than a complete failure to train. *See Est. of Davis ex rel. McCully*, 406 F.3d at 386 (explaining that the Fifth Circuit has found liability under the single-incident exception "for a single incident when the county 'failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness,' while also noting that 'there is a difference

between a complete failure to train . . . and a failure to train in one limited area." (citation omitted)); *see also Hutcheson*, 994 F.3d at 483 ("The single-incident exception is generally reserved for those cases in which the government actor was provided no training whatsoever." (citation and quotations omitted)).

Even so, Plaintiffs do not provide any information about the training the Park Corporation did or did not provide. *See Macias,* 2023 WL 11053038, at *12 ("Plaintiffs have no specific allegations in the Second Amended Complaint about what training is provided by Live Oak County and/or Coastal Plains, how it is inadequate, what additional training should be required, how supervision or discipline is inadequate or how Live Oak County and/or Coastal Plains were deliberately indifferent in adopting or developing its training, supervision and discipline procedures.").   Rather, Plaintiffs provide a conclusory statement that a failure to train regarding the First Amendment caused the constitutional violations. *See Ratliff*, 948 F.3d at 285 ("Ratliff's complaint states in conclusory fashion that a 'deficiency in training actually caused Defendants Scudder and Sheffield to violate Plaintiff's constitutional rights.' But, absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6).").

Absent a pattern or applicability of the single-incident exception, the claim fails on the deliberate indifference prong. *Garcia*, 2022 WL 2230469, at *3. Plaintiffs fail to sufficiently allege multiple unconstitutional policies, practices, and/or customs implemented by the Park Corporation or that the Park Corporation failed to adequately train the Conservancy staff. Thus, the Court recommends Plaintiffs' § 1983 claims against the Park Corporation be dismissed. *See Zarnow*, 614 F.3d at 171 ("Because we are affirming the court's finding that Zarnow has not established a 'custom or policy' of the City, we too need not consider the moving force factor.").

## 2.    Violation of the TRFRA

Dubash alleges the City, the Conservancy, and the Park Corporation violated the TRFRA. (ECF No. 1 at ¶¶ 249–58). As discussed, the Court recommends the federal claims be dismissed; thus, the Court declines to exercise supplemental jurisdiction over the state law claims. *See Youngblood*, 920 F. Supp. at 107. The Court recommends the state law claim against the Park Corporation—TRFRA violation—be dismissed.[18]

---

[18] Because the Court recommends dismissal of Plaintiffs' federal claims against the Park Corporation under the 12(b)(6) standard and dismissal of Plaintiffs' state claims pursuant to 28 U.S.C. § 1367(c)(3), the Court need not address the Park Corporations 12(b)(1) argument.

58

### C. Plaintiffs' Motion to Modify Order Granting Motion to Stay

Plaintiffs filed a Motion to Modify Order Granting Motion to Stay "until the [C]ourt rules on the qualified immunity arguments in the [Majority] Defendants'" Motion to Dismiss. (ECF No. 64 at 1). Because the Court recommends Plaintiffs' § 1983 claims be dismissed, state claims be dismissed, and Douglas and Whitworth be entitled to qualified immunity in this Memorandum and Recommendation, Plaintiffs' Motion to Modify Order Granting Motion to Stay is rendered moot. As such, the Court recommends Plaintiffs' Motion to Modify Order Granting Motion to Stay (*id.*) be denied as moot.

### D. Plaintiffs' Motion for Preliminary Injunction

Plaintiffs filed a Motion for Preliminary Injunction requesting the Court "enjoin and prohibit [the Conservancy, the Park Corporation, the City,] and their officers, agents, servants, employees, and those persons in active concert or participation with them, from" the following:

> 1. imposing or enforcing content-based or viewpoint-based restrictions, rules, or restraints (including those based on speech being "offensive") against images of industrial animal practices and other protected images of animal treatment, masks worn by those engaged in expressive lawful activity, and speech concerning the treatment of animals, in [the Park] and the public areas around [the Park].

> 2. substantially burdening Plaintiff . . . Dubash's sincerely held religious beliefs by preventing him from lawfully sharing the message of ahimsa by engaging in speech and expressive conduct in [the Park] and the public areas around [the Park].

(ECF No. 13 at 2).

Because the Court recommends Plaintiffs' § 1983 claims be dismissed, and state claims be dismissed in this Memorandum and Recommendation, Plaintiffs' Motion for Preliminary Injunction is rendered moot. As such, the Court recommends Plaintiffs' Motion for Preliminary Injunction (*id.*) be denied as moot.

## IV.   Conclusion

Based on the foregoing, the Court **RECOMMENDS** Plaintiffs' Motion for Preliminary Injunction (ECF No. 13) be **DENIED AS MOOT**, Plaintiffs' Motion to Modify Order Granting Motion to Stay (ECF No. 64) be **DENIED AS MOOT**, Majority Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 44) be **GRANTED**, and Park Corporation's Motion to Dismiss for Failure to State a Claim (ECF No. 46) be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time

period mentioned shall bar an aggrieved party from attacking the factual

findings and legal conclusions on appeal.

     **SIGNED** in Houston, Texas on August 26, 2024.

_____

Richard W. Bennett
United States Magistrate Judge
