**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DARAIUS DUBASH and | ) | |
| DR. FARAZ HARSINI, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | CASE NO. 4:23-cv-03556 |
| CITY OF HOUSTON, TEXAS; | ) | |
| HOUSTON DOWNTOWN PARK | ) | |
| CORPORATION; OFFICER ROBERT | ) | |
| DOUGLAS (# 7943), in his individual | ) | |
| capacity; OFFICER VERN WHITWORTH | ) | |
| (# 7595), in his individual capacity; | ) | |
| DISCOVERY GREEN CONSERVANCY | ) | |
| f/k/a HOUSTON DOWNTOWN PARK | ) | |
| CONSERVANCY; and BARRY MANDEL, | ) | |
| in his individual capacity. | ) | |
| | ) | |
| *Defendants.* | | |

**PLAINTIFFS' OBJECTIONS TO THE MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE [ECF 78]**

# TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF PROCEEDING ............................. 1

STATEMENT OF THE ISSUES ...................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................. 2

OBJECTIONS AND ARGUMENT .................................................................. 4

I.  The Recommendation Largely Overlooks Plaintiffs' Plausible Claims of a
    Content- and Viewpoint-Based Prior Restraint ......................................... 4

II. Plaintiffs Properly Allege the Conservancy Is a State Actor .................... 4

    A.  The Recommendation improperly raises an issue Defendants did not. ............. 5

    B.  The Conservancy is a state actor because it acts jointly with the City and Park
        Corporation to operate a public park. ............................................. 6

    C.  The Conservancy is also a state actor because it carries out an exclusive public
        function. .......................................................................... 7

III. Plaintiffs Properly Allege That Barry Mandel, the Conservancy's Former
     President, Was a State Actor. ...................................................... 8

IV.  Plaintiffs State Claims for Municipal Liability ..................................... 8

    A.  Plaintiffs allege a policy of granting the Conservancy unfettered discretion. .... 9

    B.  Plaintiffs allege delegation of policymaking authority causing a constitutional
        injury. ............................................................................ 11

    C.  The City and Park Corporation ratified a prior restraint ........................ 12

V.   Plaintiffs Plausibly State a Claim for Failure to Train. .......................... 13

VI.  Qualified Immunity is Not a Basis for Dismissing Plaintiffs' Claims Against
     Officers Douglas and Whitworth Under Any Faithful Application of Rule
     12(b)(6). ........................................................................... 15

    A.  Plaintiffs state a direct First Amendment violation claim. ...................... 16

    B.  The Recommendation makes several errors in concluding probable cause
        existed. ........................................................................... 16

    C.  Plaintiffs state a claim for First Amendment retaliation, probable cause or not...
        ................................................................................... 18

D.   The Recommendation misses qualified immunity's "central concept" of "fair warning.".............................................................................................. 18

VII. Dubash Properly Alleges Violations of the Free Exercise Clause and Texas Religious Freedom Restoration Act. ...................................................... 19

VIII.There is No Basis to Dismiss Plaintiffs' State Law Claims. ................................ 19

IX.  Only Immediate Injunctive Relief Can End a Years-Long Prior Restraint........... 20

CONCLUSION................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Behrghundi v. Save Our City-Mart, Tex.,*
    No. 1:19-cv-402, 2019 WL 7037939 (W.D. Tex. Dec. 20, 2019)................................ 7

*Bigford v. Taylor,*
    834 F.2d 1213 (5th Cir. 1988) ............................................................ 17

*Bose Corp. v. Consumers Union of U.S., Inc.,*
    466 U.S. 485 (1984)........................................................................ 3

*Byrum v. Landreth,*
    566 F.3d 442 (5th Cir. 2009) ............................................................. 20

*Chiu v. Plano Indep. Sch. Dist.,*
    339 F.3d 273 (5th Cir. 2003) ............................................................. 4

*Connick v. Thompson,*
    563 U.S. 51 (2011)......................................................................... 14

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen,*
    952 S.W.2d 454 (Tex. 1997) .............................................................. 20

*Covington v. City of Madisonville, Texas,*
    812 F. App'x 219 (5th Cir. 2020)........................................................ 12

*Davidson v. City of Stafford,*
    848 F.3d 384 (5th Cir. 2017) ............................................................. 16

*Evans v. Newton,*
    382 U.S. 296 (1966)........................................................................ 7

*Fry v. Napoleon Cmty. Sch.,*
    580 U.S. 154 (2017)........................................................................ 13

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021).................................................................... 19

*Gonzalez v. Trevino,*
    144 S. Ct. 1663 (2024).................................................................... 18

*Greenlaw v. United States,*
    554 U.S. 237 (2008)........................................................................ 5

*Hernandez v. W. Tex. Treasures Est. Sales,*
    *L.L.C.,* 79 F.4th 464 (5th Cir. 2023)................................................... 2

*Hobart v. City of Stafford,*
    No. 4:09-CV-3332, 2010 WL 3894112 (S.D. Tex. Sept. 29, 2010) ......................................... 11

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ........................................................................................................ 19

*Iancu v. Brunetti,*
    588 U.S. 388 (2019) .......................................................................................................... 4

*Kinney v. Weaver,*
    367 F.3d 337 (5th Cir. 2004) .......................................................................................... 19

*Lindke v. Freed,*
    601 U.S. 187 (2024) ........................................................................................................ 13

*Littell v. Hous. Indep. Sch. Dist.,*
    894 F.3d 616 (5th Cir. 2018) ..................................................................................... 14, 15

*Loper Bright Enterprises v. Raimondo,*
    144 S. Ct. 2244 (2024) ...................................................................................................... 5

*Manhattan Cmty. Access Corp. v. Halleck,*
    139 S. Ct. 1921 (2019) ...................................................................................................... 6

*Mink v. Knox,*
    613 F.3d 995 (10th Cir. 2010) ........................................................................................ 17

*Nat'l Rifle Ass'n of Am. v. Vullo,*
    602 U.S. 175 (2024) .......................................................................................................... 3

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539 (1976) .......................................................................................................... 4

*Nieves v. Bartlett,*
    139 S. Ct. 1715 (2019) .................................................................................................... 18

*Paz v. Weir,*
    137 F. Supp. 2d 782 (S.D. Tex. 2001) ........................................................................... 11

*Peña v. City of Rio Grande City,*
    879 F.3d 613 (5th Cir. 2018) .......................................................................................... 11

*Piotrowski v. City of Houston,*
    237 F.3d 567 (5th Cir. 2001) .......................................................................................... 11

*Polnac v. City of Sulphur Springs,*
    555 F. Supp. 3d 309 (E.D. Tex. 2021) ........................................................................... 16

*Ratliff v. Aransas County., Texas*,
948 F.3d 281 (5th Cir. 2020) ......................................................................... 11

*Reed v. State*,
762 S.W.2d 640 (Tex. App. 1989) ................................................................. 18

*Sanders-Burns v. City of Plano*,
594 F.3d 366 (5th Cir. 2010) ......................................................................... 13

*Se. Promotions, Ltd. v. Conrad*,
420 U.S. 546 (1975) .......................................................................................... 9

*Serv. Emps. Int'l Union, Loc. 5 v. City of Houston*,
595 F.3d 588 (5th Cir. 2010) ..................................................................... 9, 10

*Speaks v. Kruse*,
445 F.3d 396 (5th Cir. 2006) ........................................................................... 2

*Thomas v. City of Galveston, Texas*,
800 F. Supp. 2d 826 (S.D. Tex. 2011) ....................................................... 8, 11

*United Nat. Foods, Inc., v. NLRB*,
66 F.4th 536 (5th Cir. 2023) ............................................................................ 5

*United States v. Sineneng-Smith*,
140 S.Ct. 1575 (2020) ...................................................................................... 5

*Wayte v. United States*,
470 U.S. 598 (1985) ........................................................................................ 17

*Webster v. City of Houston*,
735 F.2d 838 (5th Cir. 1984), *aff'd* 739 F.2d 993 (5th Cir. 1984) ............ 12

*Zarnow v. City of Wichita Falls, Tex.*,
614 F.3d 161 (5th Cir. 2010) ......................................................................... 11

**Constitutional Provisions, Rules, and Statutes**

28 U.S.C. § 636(b)(1) ................................................................................... 1, 2

Fed. R. Civ. P. 72(b)(2) ..................................................................................... 2

Tex. Const. art. 2, § 1 ..................................................................................... 20

## STATEMENT OF THE NATURE AND STAGE OF PROCEEDING

Plaintiffs Daraius Dubash and Faraz Harsini filed their Complaint on September 20, 2023 (ECF No. 1), and moved for a preliminary injunction on October 20, 2023 (ECF No. 13). Defendants moved to dismiss on January 5, 2024 (ECF Nos. 44, 46). The United States Magistrate Judge issued his Memorandum and Recommendation on August 26, 2024 (ECF No. 78).

## STATEMENT OF THE ISSUES

Plaintiffs object under 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2) to the Memorandum and Recommendation including the recommendations to (a) dismiss Plaintiffs' claims under Rule 12(b)(6); (b) deny Plaintiffs' preliminary injunction motion (ECF No. 13) as moot; and (c) deny Plaintiffs' Motion to Clarify Order Staying Discovery (ECF No. 64) as moot. Plaintiffs further object to the following conclusions underlying the recommendation:

1.  Plaintiffs did not state First Amendment violations requiring equitable relief based on a viewpoint and content-based prior restraint at Discovery Green, a public park in Houston.

2.  Defendants Discovery Green Conservancy and its former President, Barry Mandel, have not acted under color of state law when censoring Plaintiffs at Discovery Green, despite the Conservancy existing solely to operate a public park that a local government corporation, Defendant Houston Downtown Park Corporation, owns for Defendant City of Houston's benefit.

3.  Plaintiffs did not state claims against the City or Park Corporation, despite detailing constitutional violations through (i) a policy of giving the Conservancy unfettered discretion over expression at the park; (ii) unlawfully delegating constitutional duties to the Conservancy; (iii) ratifying the ongoing prior restraint on Plaintiffs' protected expression; and (iv) providing no First Amendment training to the Conservancy.

4.  Qualified immunity shields Defendants Douglas and Whitworth from Plaintiffs' First Amendment damages claim and Dubash's Fourth Amendment damages claim, even though the

1

allegations show the Officers had every reason to know Discovery Green is a public park, and that their actions violated clearly established law, if not obvious constitutional principles.

5.   Dubash failed to state a free exercise clause claim, despite detailing Defendants unlawfully treating similar secular conduct more favorably than his religiously-motivated proselytization.

6.   Plaintiffs' state-law claims should be dismissed.

This Court reviews *de novo* the memorandum and recommendations to which these objections are made. 28 U.S.C. § 636(b)(1)(C). In evaluating a motion to dismiss, courts "accept all well-pleaded facts as true, construing all reasonable inferences in the light most favorable to the plaintiff." *Hernandez v. W. Tex. Treasures Est. Sales, L.L.C.*, 79 F.4th 464, 469 (5th Cir. 2023). The Court should grant Plaintiffs' preliminary injunction if Plaintiffs show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of the equities favors an injunction; and (4) that an injunction is in the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006).

## SUMMARY OF THE ARGUMENT

Plaintiffs suffer an ongoing deprivation of their First Amendment rights, as Defendants are prohibiting them from speaking in a "dedicated public park" in downtown Houston because their speech is "offensive." Compl. ¶¶ 2, 124–26. The allegations and video evidence show that over eight months, on four separate occasions, Houston Police and Conservancy staff forced Plaintiffs to leave Discovery Green for displaying true images of industrial animal production. *Id.* ¶¶ 83–154. The fourth time, Defendants arrested Dubash for his speech while Defendant Officer Whitworth declared Dubash's First Amendment rights were "up to the management." *Id.* ¶ 133.

Plaintiffs have stated Section 1983 claims for First and Fourth Amendment violations and related state law claims, including an ongoing prior restraint that only an injunction can remedy. As Plaintiffs allege, Defendants made clear Plaintiffs risk arrest if they return to peacefully share

their message in the public park.

Three major errors underscore why the Court should reject the Recommendation to dismiss Plaintiffs' claims. *First*, the Recommendation errs by *sua sponte* concluding the Conservancy and its officers have not acted "under color of state law," disregarding the sole purpose for which the City formed the Park Corporation and for which the Conservancy exists—to create and operate a public park. *Second*, the Recommendation imposes an erroneous bar to pleading municipal liability, requiring Plaintiffs to detail incidents beyond what the pleading rules require and without discovery, while not crediting the allegations detailing City and Park Corporation policies and decisions responsible for the violation of Plaintiffs' rights. And *third*, rather than accept Plaintiffs' allegations that they provided the officers proof that Discovery Green is a government-owned public park, the Recommendation credits only the Defendant Officers' "belief" that Discovery Green is private in affording them qualified immunity.

In short, the Recommendation conflicts with a core principle—the government "cannot do indirectly what [it] is barred from doing directly." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 190 (2024). To that end, its reasoning would allow local governments to contract around First Amendment obligations in the most revered public forums, leaving Americans no recourse when they are silenced and jailed for exercising their expressive liberties in those forums.

As reviewing courts must guard against "forbidden intrusion on the field of free expression" in "cases raising First Amendment issues," *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 499 (1984), Plaintiffs respectfully request that the Court reject the Recommendation, deny Defendants' motions to dismiss, and preliminarily enjoin a prior restraint that has stifled Plaintiffs' protected expression for over a year.

## OBJECTIONS AND ARGUMENT[1]

**I.    The Recommendation Largely Overlooks Plaintiffs' Plausible Claims of a Content- and Viewpoint-Based Prior Restraint.**

The Recommendation overlooks Plaintiffs' allegations and video evidence showing Defendants have imposed a prior restraint on Plaintiffs for over a year even though they peacefully display only true industrial animal practices—all because Defendants find the "content" of the documentary clips "offensive." *E.g.,* Compl. ¶¶ 37, 99, 111, 114, 124, 126, 129, 149, 155–165, 169–204; *see also* ECF No. 53 at 8–13 (explaining why Counts I and II state First Amendment violations). In fact, only once does the Recommendation acknowledge how Defendants insist the documentary clips are "offensive." ECF No. 78 at 14–15. It also passes over Defendants fixating on the clips' "content." And rather than accept Plaintiffs' detailed allegations about the City's grant of boundless discretion to the Conservancy resulting in an impermissible prior restraint (*e.g.,* Compl. ¶¶ 133, 141, 160, 164–65, 167, 187, 190, 192, 196), the Recommendation labels Plaintiffs' allegations "conclusory." ECF No. 78 at 52–53.

All of that is error. Plaintiffs state plausible claims for two presumptive First Amendment violations. First, a prior restraint. *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 284 (5th Cir. 2003). And second, viewpoint discrimination based on a state actor's belief that speech is "offensive." *Iancu v. Brunetti*, 588 U.S. 388 (2019). The Court should refuse to dismiss Counts I and II for these "serious and least tolerable" First Amendment infringements. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (discussing prior restraints); *see also Iancu*, 588 U.S. at 399 (Alito, J., concurring) ("Viewpoint discrimination is poison to a free society.").

**II.    Plaintiffs Properly Allege the Conservancy Is a State Actor**

The Recommendation errs by concluding the Court should dismiss the Complaint for

---

[1] Plaintiffs incorporate fully by reference their opposition to Defendants' motions to dismiss. ECF No. 53.

"fail[ing] to allege that the Conservancy was acting under color of law." ECF No. 78 at 41. This error is threefold: Defendants did not move to dismiss over state action; Plaintiffs allege more than enough to show joint action between the Conservancy and the governmental entities; and by operating a public park, the Conservancy performs a traditional governmental function.

### A.  The Recommendation improperly raises an issue Defendants did not.

The Recommendation impermissibly raises the state action issue, because as it acknowledges, "[t]he Conservancy does not address this element in their Motion to Dismiss." ECF No. 78 at 34, 41 n. 13. "In our adversarial system . . . we follow the principle of party presentation." *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020). This principle mandates that "the parties . . . frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). Thus, it "was improper for [the court] to cross the bench to counsel's table and litigate the case for" Defendants. *See United Nat. Foods, Inc., v. NLRB*, 66 F.4th 536, 546 (5th Cir. 2023) (granted, vacated, and remanded in light of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024)). And as Plaintiffs explain below, they allege two plausible state action theories. That distinguishes their lawsuit entirely from the frivolous theory an unsophisticated *pro se* litigant asserted in *Thomas v. State*, which the Recommendation relies on to raise the state action issue *sua sponte*. ECF No. 78 at 34 n. 12 (citing 294 F. Supp. 3d 576 (N.D. Tex. 2018), *report and recommendation adopted,* 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018)).[2]

---

[2] Because Plaintiffs' state action theory was not "wholly insubstantial and frivolous" the issue does not go to the Court's jurisdiction and the Recommendation had no need to consider it *sua sponte*. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Hallinan v. Fraternal Ord. of Police of Chicago Lodge No. 7*, 570 F.3d 811, 821 (7th Cir. 2009) (holding that a "colorable" state action claim is not jurisdictional but instead an element of a 1983 claim).

**B. The Conservancy is a state actor because it acts jointly with the City and Park Corporation to operate a public park.**

Even if the Court considers the state action issue, Plaintiffs plausibly allege the Conservancy is a state actor through "the government act[ing] jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). From the park's inception, the City structured Discovery Green as a public park. *E.g.*, Compl. ¶¶ 49–52, 54–55, Ex. B. The City formed a local government corporation, the Park Corporation, to own the park on the City's behalf. *Id.* ¶¶ 2, 53, 56–57, Ex. C. And the City intended the non-profit Conservancy to operate Discovery Green. *Id.* ¶¶ 4, 16, 54–55, Ex. B. In sum, the Park Corporation and Conservancy exist solely to operate a public park on the City's behalf.

In fact, the Conservancy defines Discovery Green Park as "a dedicated public park owned by the Houston Downtown Park Corporation and operated under contract by the Conservancy."[3] The City Council formed the Park Corporation "to *aid and act on behalf* of the City [of Houston] to accomplish the City's governmental purposes consisting of the acquisition, development, operation and maintenance of a new *public park* . . . ." Compl. Ex. A, Houston Downtown Park Corporation, Articles of Incorporation, art. IV (emphasis added). Likewise, the deed from the Conservancy to the Park Corporation restricts Discovery Green's land to "be used *solely* as an urban public park of high quality." Compl. Ex. C, Special Warranty Deed, § 2(b)(i) (emphasis added). And City police officers enforce park rules and Conservancy decisions. Compl. ¶¶ 61, 83–94, 104–52, 207.

What's more, the Park Corporation and Conservancy maintain a written Operating Agreement, outlining the Conservancy's role as a joint actor with the Park Corporation and City.

---

[3] *Park Rules: Discovery Green* § 1.2.2(p) (emphasis added).

ECF No. 44 Ex B; ECF No. 46 Ex. A ("Operating Agreement").[4] Not only does the Operating Agreement obligate the Conservancy to the governmental Park Corporation, but it also obligates the Conservancy to the *City.* For instance, the Operating Agreement empowers the City's mayor to approve the Conservancy's park rule changes. *Id.* § 4.3. And as Plaintiffs allege, the mayor has worked with the Conservancy before to facilitate expression at Discovery Green. Compl. ¶¶ 74–77.

The Recommendation errs by not taking these allegations in the light most favorable to Plaintiffs and concluding that Plaintiffs failed to establish "a sufficiently close nexus between the State and the challenged action of the regulated entity." ECF No 78 at 38. Taking Plaintiffs' allegations as true, the "nexus" could not be closer, and the Conservancy is a state actor.

### C. The Conservancy is also a state actor because it carries out an exclusive public function.

The Recommendation accepts that a "private entity can qualify as a state actor . . . when the private entity performs a traditional, exclusive public function." ECF 78 at 35 (quoting *Behrghundi v. Save Our City-Mart, Tex.*, No. 1:19-cv-402, 2019 WL 7037939, at *4 (W.D. Tex. Dec. 20, 2019)). The Conservancy meets that role in operating a *public* park, and the Recommendation errs concluding otherwise. "Mass recreation through the use of parks is plainly in the public domain." *Evans v. Newton*, 382 U.S. 296, 302 (1966). And Plaintiffs allege how the Conservancy "fulfills a public function of administering a public park, on behalf of the City and the Park Corporation and for their benefit," Compl. ¶¶ 45–66,  and was given "authority to carry out the public function of maintaining rules of use for Discovery Green." *Id.* ¶ 209.

---

[4] The Recommendation correctly concluded the Complaint incorporates the Operating Agreement by reference. ECF No. 78 at 3 n. 2.

### III.  Plaintiffs Properly Allege That Barry Mandel, the Conservancy's Former President, Was a State Actor.

The Recommendation also errs in concluding *sua sponte* and on the merits that the Conservancy's former president, Defendant Mandel, did not act under color of state law. *Cf.* ECF No 78 at 34 ("Mandel does not address this element in his Motion to Dismiss"), *Id.* at 43 ("[T]he Court deems it necessary to evaluate, as Mandel is a private individual."); ECF No. 44 Mandel knew that he ran a public park, and censored speech he did not like while acting under color of law. The Complaint expressly lays out that "Mandel and the Conservancy, acting on behalf of the City in administering a public park, deemed Plaintiffs' speech offensive and knowingly censored it as a result." Compl. ¶154; *see also* ¶ 153. He censored it by deploying Houston police officers. *Id.* at ¶¶ 116–45, 151. Further, the Complaint states, "[t]he content and viewpoint of Plaintiffs' message was the motivating factor in Mandel's demands, made under the color of state law . . ." and specifies other purportedly disruptive or offensive speech Mandel allows. *Id.* ¶ 225. The Complaint also makes clear that "Mandel . . . knew that Discovery Green is a public park" *Id.* ¶ 220. Taken as true, these allegations show Mandel acted under color of law.

### IV.  Plaintiffs State Claims for Municipal Liability.

Plaintiffs offer far more than the "minimal factual allegations" and "general facts" that are required to state claims for municipal liability against the City and Park Corporation. In fact, Plaintiffs allege and "provide fair notice" to the City and Park Corporation of at least two specific City and Park Corporation policies. *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011). First, Plaintiffs detail a policy of giving unfettered discretion to the Conservancy to regulate speech at Discovery Green, by formal policy and by delegation of policymaking authority. Second, they detail how the City and Park Corporation ratified a prior restraint on displaying the film *Dominion* and wearing a Guy Fawkes mask inside Discovery Green. The

Recommendation errs by concluding otherwise and imposing a pleading standard at odds with precedent.

**A. Plaintiffs allege a policy of granting the Conservancy unfettered discretion.**

Plaintiffs allege the City and Park Corporation gave "Discovery Green Conservancy authority to carry out the public function of maintaining rules of use for Discovery Green," while not imposing any constitutionally required limits on that authority. Compl. ¶ 209; *see also* ¶¶ 63–64, 149, 190. The City and Park Corporation have a duty to uphold the First Amendment in Discovery Green as they carry out their "governmental … functions," *Id.* ¶¶ 15, 59, 61, including setting "narrow, objective, and definite standards" that do not restrict speech on its content or viewpoint. *See id.* ¶¶ 172, 187*; Serv. Emps. Int'l Union, Loc. 5 v. City of Houston*, 595 F.3d 588, 596 (5th Cir. 2010). And so giving the Conservancy "unbridled discretion over a forum's use" alone violates the First Amendment. *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975).

Plaintiffs allege this policy with sufficient particularity to survive a motion to dismiss. For instance, Plaintiffs allege none of the written deeds and agreements between the City, Park Corporation, and Conservancy include any guidance to the Conservancy about upholding the First Amendment at Discovery Green. *E.g.,* Compl. Exs. A–C; ECF No. 44 Ex B; ECF No. 46 Ex. A. The Conservancy's Operating Agreement is a written document the City and Park Corporation adopted, showing a policy of unfettered discretion. Compl. ¶ 61. The Conservancy exists solely to operate a "public park," ECF No. 44 Ex. B, at 4, 8, and has a broad charge to "develop[] rules and regulations governing use of Discovery Green." Compl. ¶ 171. Neither the City nor the Park Corporation placed restrictions cabining or channeling the Conservancy's discretion regarding expressive activity in the park. Indeed, none of the deeds and agreements among the City, Park Corporation, and Conservancy include *any* guidance to the Conservancy about upholding the First Amendment at Discovery Green. *See* Compl. Exs. A–C; Operating Agreement. This silence is

conspicuous, given how detailed these agreements are in other respects. *See, e.g.,* ECF No.44 Ex. B, at 48 (dictating where the Conservancy should place porta potties during events).[5]

The Recommendation reasons that because the Park Rules and the Operating Agreement "state that the rules and regulations of the Park must comply with applicable state laws, federal laws, and Houston ordinances," the government entities did not grant unfettered discretion. ECF No. 78 at 25. But neither document prescribes in any way *how* park rules must comply with constitutional standards, and thus neither meaningfully limits the Conservancy's rulemaking authority. Park Rules Section 1.1.5 merely notes that the rules "are in addition to, and not in lieu of, any Federal or State laws, rules or regulations, or any City of Houston Ordinances." That is no limit on the Conservancy's power. And the Operating Agreement merely requires park rules and regulations to "be non-discriminatory" and "comply with all Applicable Laws," ECF No. 44 Ex. B, at 6, 40. Those are hardly the "narrow, objective, and definite criteria" the Constitution requires. *Serv. Emps. Int'l Union, Loc. 5*, 595 F.3d at 596.

Underscoring this policy is joint censorship between at least three Conservancy officials, a park security officer, and three Houston police officers targeting Plaintiffs' speech they found "offensive." Compl. ¶¶ 83–154. This included Officers Douglas and Whitworth leaving Dubash's arrest "up to the management" at four times during the events of July 23, 2022. *Id.* ¶¶ 103–54.

The Recommendation casts off these allegations, reasoning Plaintiffs must show additional incidents "outside of the incidents that give rise to their alleged injuries." ECF No. 78 at 26. But there is no requirement at the pleading stage that Plaintiffs point to additional incidents outside the Complaint to allege an actionable policy. As explained, this is not a case of Plaintiffs alleging a

---

[5] In addition, Plaintiffs sent a letter to the City and Park Corporation outlining their mistreatment, but neither remedied the ongoing constitutional violation. Not only is that evidence of ratification, *see infra* Section IV.C, but also "evidence of a pre-existing policy." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 794 (S.D. Tex. 2013).

"single incident" with allegations "conclusional and utterly devoid of 'factual enhancements.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018). *See also Ratliff v. Aransas County., Texas*, 948 F.3d 281, 284–85 (5th Cir. 2020). Plaintiffs' allegations offer significant "factual enhancements" that defeat Defendants' motions to dismiss. *Peña*, 879 F.3d at 622.

Requiring Plaintiffs to include these additional allegations is particularly inappropriate at the motion to dismiss stage. At the pleading stage, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies." *Thomas*, 800 F. Supp. 2d at 842. As a result, "providing proof of a pattern of constitutional violations is exceedingly difficult." *Hobart v. City of Stafford*, No. 4:09-CV-3332, 2010 WL 3894112, at *5 (S.D. Tex. Sept. 29, 2010). Thus, plaintiffs are only required to allege "minimal factual allegations," *Thomas*, 800 F. Supp. 2d at 842–43, or "even general facts which point to prior violations." *Hobart*, 2010 WL: 3894112 at *5.

But rather than provide deference to Plaintiffs' *Monell* claims at the pleading stage, the Recommendation relies on summary judgment or trial standards of proof as reflected by its reliance on summary judgment and trial cases. *See, e.g., Paz v. Weir*, 137 F. Supp. 2d 782 (S.D. Tex. 2001) (summary judgment); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (summary judgment); *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001) (reviewing trial verdict). This was error. And if adopted, it would make it prohibitively difficult for civil rights plaintiffs to allege Section 1983 claims against local governments.

**B. Plaintiffs allege delegation of policymaking authority causing a constitutional injury.**

Plaintiffs also state a municipal liability claim through alleging how the City, itself and through the Park Corporation, "delegated final policymaking authority over use of Discovery Green park" to the Conservancy, including the authority to make rules about use of Discovery Green for expressive activities. Compl. ¶ 206. The Recommendation acknowledges Plaintiffs

"sufficiently alleged" this theory and the "Park Corporation does not dispute" it. ECF No. 78 at 50. Yet it errs in requiring Plaintiffs to allege a policy "other than the express delegation of policymaking authority" to survive dismissal. *Id.* at 54. In all cases, giving the Conservancy unbridled discretion to restrict speech alone flouts the First Amendment. *See supra*, Section IV.A.

Even if Plaintiffs are required to plead a policy or practice the Conservancy ratified, they have done so—the Conservancy is imposing a viewpoint-based prior restraint on "(1) 'depicting the truth of industrial animal production' through the film *Dominion*, and (2) 'wearing a 'Guy Fawkes' mask' associated with Anonymous." Compl. ¶ 158; *see also* ¶¶ 164–65, 184–204, 206–09. That prior restraint is attributable to the City and Park Corporation through their delegation of policy-making authority. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curium), *aff'd* 739 F.2d 993 (5th Cir. 1984) (en banc) (concluding an official policy under *Monell* can be a policy made by "an official to whom the lawmakers have delegated policy-making authority").

### C.  The City and Park Corporation ratified a prior restraint.

Plaintiffs also sufficiently allege that in addition to being responsible for the prior restraint through delegating authority to the Conservancy, the City and Park Corporation are liable for ratifying it. The Recommendation concludes Plaintiffs have not asserted "a ratification claim in their complaint" and refused to consider it. ECF No. 78 at 16 n. 7. This is error at the motion to dismiss stage. *See Covington v. City of Madisonville, Texas*, 812 F. App'x 219, 229 (5th Cir. 2020) ("[W]e likewise conclude that [the plaintiff's] ratification assertions, though cursorily stated, are sufficient to survive Rule 12(b)(6) attack.").

Although the Complaint does not use the word "ratification," Plaintiffs' allegations suffice to show actionable ratification. Above all, the City and Park Corporation ratified the Conservancy's actions when they received Plaintiffs' notice letters that "identified the specific prior restraints the

City was imposing," but failed to respond. Compl. ¶¶ 158–59, 192. The City's failure to act is particularly conspicuous. For instance, it "confirmed receipt of the letter, but never responded, indicating its approval of the content bans." *Id.* ¶ 159. And despite the City's mayor intervening before to protect First Amendment rights in Discovery Green, the mayor has not here. *Id.* ¶¶ 74–77. Instead, City police enforced on at least three separate occasions the Conservancy's unconstitutional censorship of Plaintiffs' showing *Dominion* and wearing Guy Fawkes masks. *Id.* ¶¶ 83–154. Thus, the Recommendation errs by overlooking these allegations and instead requiring Plaintiffs use "particular labels and terms" like "ratification." *Fry v. Napoleon Cmty. Sch.,* 580 U.S. 154, 169 (2017); *see also Lindke v. Freed*, 601 U.S. 187, 197 (2024) ("[T]he distinction between private conduct and state action turns on substance, not labels.").

In short, Plaintiffs' allegations at this stage are enough to show the City and the Park Corporation are responsible for the viewpoint-driven prior restraint that prohibits Plaintiffs' constitutionally protected expression in Discovery Green.

## V.  Plaintiffs Plausibly State a Claim for Failure to Train.

The Complaint sufficiently alleges (1) that a local government's "training policy procedures were inadequate," (2) that the government "was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy caused" Plaintiffs' constitutional injury. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); Compl. ¶¶ 64, 211–15. The Recommendation errs, in turn, by demanding Plaintiffs allege details about training Defendants provided, when Plaintiffs specifically allege the City, Park Corporation, and Conservancy provided *no* First Amendment training, as the Conservancy staffs' unconstitutional actions reflect.

The allegations satisfying the pleading standards for failure to train include:

- the City and Conservancy provided no First Amendment training to staff tasked with operating Discovery Green (Compl. ¶¶ 64, 211, 213);

13

- a pattern of four incidents where Conservancy staff stifled Plaintiffs' protected speech at the park and the City's continued refusal to train staff (*id.* ¶¶ 83–137, 154, 214);

- the Conservancy's decision to bar speech based on content and viewpoint that they disagreed with was a "highly predictable consequence," *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018), of the City's failure to train the Conservancy about the need to respect First Amendment rights (*see id.* ¶ 212); and

- had the City trained the Conservancy on First Amendment rights in a public park, Conservancy staff likely would not have infringed Plaintiffs' constitutional rights by censoring speech they found "offensive." (*id.* ¶¶ 212, 216).

*Cf. Littell*, 894 F.3d at 624 (describing the elements of a *Monell* failure to train claim). And so the Recommendation errs by finding that: (1) "Plaintiffs cannot establish a pattern of similar constitutional violations by untrained employees by relying only on facts that give rise to the Complaint here" (ECF No. 78 at 29); (2) "Plaintiffs do not provide any information about the training that City did or did not provide" (*id.* at 31); and (3) Plaintiffs' allegations do not support a "plausible causation inference" (*id.* at 32).

As to (1), nothing in *Connick*, on which the Recommendation primarily relies, says that a pattern may not "rely[] only on facts that give rise to the Complaint."[6] *See generally Connick v. Thompson*, 563 U.S. 51, 60 (2011). For (2), Plaintiffs cannot describe training Defendants never provided; instead, the Complaint asserts that "[e]ven now, the City has provided *no* training to Discovery Green Conservancy staff despite knowing of the past First Amendment violations

---

[6] But *Connick* does emphasize the importance of ensuring municipalities had notice of training deficiencies. *Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). And Mr. Dubash put the City and the Park Corporation on notice that their training was deficient by mailing them letters outlining the several instances where his constitutional rights were violated. Compl. ¶ 155.

(including Ms. [sic] Dubash's arrest) and the ongoing prior restraint against Plaintiffs' speech at Discovery Green park," and that ought to satisfy the pleading standard. Compl. ¶ 214 (emphasis added). On (3), the Recommendation misses Plaintiffs' alleged examples where Defendants preferred other speech to show that Conservancy staff and Houston Police discriminated against Dubash and Harsini's speech based on its viewpoint—something they would have known the Constitution forbid had the City trained them on their First Amendment obligations. *E.g., id.* ¶¶ 78–81 (detailing Defendants' support for an LGBTQ celebration at Discovery Green despite parents complaining the event was inappropriate).

Plaintiffs' allegations establish Defendants failed to train decisionmakers and employees on the basics of First Amendment law, and that is more than enough for Plaintiffs' failure to train claim to survive the motions to dismiss. *Littell*, 894 F.3d at 624–25.

## VI. Qualified Immunity is Not a Basis for Dismissing Plaintiffs' Claims Against Officers Douglas and Whitworth Under Any Faithful Application of Rule 12(b)(6).

The Court should reject the Recommendation's conclusion that qualified immunity is grounds to dismiss Plaintiffs' First and Fourth Amendment damages claims against Officers Douglas and Whitworth (Counts 4 and 7). Instead of first focusing on Plaintiffs' protected expression, the Recommendation wrongly reasons the Officers did not violate any First or Fourth Amendment right because they "believed" the park is "private," giving them probable cause to arrest Dubash for "trespass." ECF No. 78 at 11–12, 14–15. But an officer's subjective views matter not for probable cause—objective facts and circumstances do.

Taking Plaintiffs' allegations as true, there is only one conclusion: Any reasonable officer would have known Discovery Green is a public park where the First Amendment prevails over a state actor's whims. And because Supreme Court, Fifth Circuit, and relevant Texas law would have given that reasonable officer fair warning he could not arrest or threaten Plaintiffs for peaceful

advocacy in a public park—even if the officer found the advocacy "offensive"—the Officers are not entitled to qualified immunity.

### A. Plaintiffs state a direct First Amendment violation claim.

Ejecting people from a public park for protected speech—whether by arrest or threat of arrest—violates the First Amendment. *See* Section I, supra; *see also Davidson v. City of Stafford*, 848 F.3d 384, 398 (5th Cir. 2017) (reversing summary judgment against public protestor's First Amendment as-applied and retaliation claims). The allegations and video evidence show the *only* reason Officers Douglas and Whitworth arrested Dubash and threatened Harsini was because the Officers, along with Mandel and park staff, found the "content" of Plaintiffs' videos "offensive." Compl. ¶¶ 109–111, 114, 117, 124, 126, 129; Exs. G1–G3. In fact, they invoked no park rule or conduct independent of Plaintiffs' protected expression. *Id*. ¶¶ 94, 128. In sum, the only basis for arrest and threatening arrest was Plaintiffs' protected expression.

Yet the Recommendation writes off those allegations and video proof. Instead, it largely accepts the police report stating Dubash was "arrested for criminal trespass." ECF No. 78 at 10. That is error. Above all, it fails to take Plaintiffs' allegations as true and grant them reasonable inferences. Just considering the report is improper because the Complaint does not reference it. Indeed, if information in a public record is "subject to reasonable dispute," courts may not use it for the truth of the matter asserted when deciding a 12(b)(6) motion. *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 326 (E.D. Tex. 2021); *cf.* Fed. R. Evid. 201(b).

### B. The Recommendation makes several errors in concluding probable cause existed.

Because the Officers arrested Dubash only for what the First Amendment protects, they had no probable cause for trespass. Officers "may not base [their] probable cause determination on an 'unjustifiable standard,' such as speech protected by the First Amendment." *Mink v. Knox*, 613 F.3d 995, 1003–04 (10th Cir. 2010) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

That alone is reason to reject the Recommendation's conclusions that the Officers had probable cause and have qualified immunity on Counts 4 and 7. *See* ECF No. 78 at 11–15.

The Recommendation accepts probable cause is an *objective* standard, based on whether "the facts and circumstances within the officer's knowledge at the time of the arrest" suffice "for a reasonable person to conclude" the suspect committed a crime. *Id.* at 10 (citations omitted). Still, the Recommendation turns the tables on probable cause, fixating on the Officers' *subjective* "belief" that Discovery Green is a private park rather than objective facts. ECF No. 78 at 11–14.

Based on the objective facts Plaintiffs allege, no police officer could reasonably think Discovery Green is anything but a public park where the First Amendment limits his authority. Prominent park signs, the park rules, the Discovery Green website, and even its chartering deed leave no doubt the park is public. Compl. ¶¶ 16, 53, 56, 59, 108. More to the point, Dubash showed the Officers information confirming the park is public before they arrested him for "offensive" expression. *Id.* ¶ 108, Ex. G-1 (Video of July 23, 2022).

The Recommendation largely ignores these allegations, let alone take them as true and in the most favorable light to Plaintiffs.[7] *See* ECF No. 78 11–15. It also overlooks the Officers' duty, at the very least, to investigate the information Dubash provided them about Discovery Green being public. *E.g., Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988) (instructing officers "may not disregard facts tending to dissipate probable cause"). Finally, the Recommendation ignores clearly established Texas law instructing police they cannot enforce the state criminal trespass statute to discriminate against speech or when "used for the primary purpose of suppressing

---

[7] The Recommendation also hints that Douglas and Whitworth are entitled to qualified immunity because they "only detained Dubash" until "another officer…effectuated his arrest." ECF No. 78 at 13. That's wrong for two reasons. First, video evidence shows the Officers leading Dubash away in handcuffs, to a park office where he sat handcuffed in a chair for hours. Compl. ¶¶ 140, 142, Ex. G-3 at13:00–15:00. That's an arrest. *Kaupp v. Texas*, 538 U.S. 626, 629 (2003); *see also* ECF No. 53 at 34. Second, whether for a detention or for an arrest, officers need probable cause. *Id.*

speech." *E.g., Reed v. State*, 762 S.W.2d 640, 644 (Tex. App. 1989) (citing cases); *see also* ECF No. 53 at 24–25. And taking the allegations as true, the Officers knew park staff wanted the Officers to trespass Plaintiffs because they found Plaintiffs' "content" "offensive." *E.g.*, Compl. ¶¶ 116–17, 124–29. These objective facts and circumstances show the Officers lacked probable cause.

### C. Plaintiffs state a claim for First Amendment retaliation, probable cause or not.

Two errors compound the Recommendation's flawed analysis of Plaintiffs' First Amendment retaliation claim. First, the Recommendation fails to mention two recent Supreme Court decisions holding that when a plaintiff alleges objective evidence of police singling out a speaker for arrest, probable cause is no bar to a retaliatory arrest claim. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019); *Gonzalez v. Trevino*, 144 S. Ct. 1663, 1667 (2024); *see also* ECF No. 53 at 23 (discussing *Nieves* and *Gonzalez*). Here, Dubash alleges examples of Discovery Green hosting protests and other protected expression that might offend many, but did not lead to arrest or ejection from the park. Compl. ¶¶ 69-82. That's enough to state a retaliatory arrest claim under *Nieves* and *Gonzalez*.

Second, by focusing only on Dubash's arrest, the Recommendation fails to address *Harsini's* First Amendment retaliation claim. The Court should refuse to dismiss Harsini's claim for that alone. Even more, Harsini plausibly alleges retaliation, pointing to multiple threats of arrest in response to exercising his First Amendment rights. Compl. ¶ 127, Ex. G-3 at 15:40–46.

### D. The Recommendation misses qualified immunity's "central concept" of "fair warning."

While the Recommendation focuses on the first prong of qualified immunity—whether the Officers violated the Constitution—its framing of qualified immunity merits an objection. The Fifth Circuit has affirmed the "central concept" of the "clearly established" standard is "fair warning." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). As Plaintiffs explain, the Officers had more than fair warning that

arresting Dubash and threatening Harsini for peacefully advocating on a public issue in a public park violates the Constitution, underscoring why qualified immunity is no ground for dismissal. ECF No. 53 at 30. The Recommendation simply misses this point. ECF No. 78 at 9.

## VII. Dubash Properly Alleges Violations of the Free Exercise Clause and Texas Religious Freedom Restoration Act.

The Court should also reject the recommendation of dismissal because it does not address the merits of Dubash's religious exercise claims. In a nutshell, the Complaint alleges Defendants burdened his exercise of proselytizing *ahimsa* in the Vedantic tradition, Compl. ¶¶12, 23–35; that their policies and actions triggered strict scrutiny because they were not generally applicable, *Id.* ¶¶ 86, 89, 98, 107–14, 127; *cf. Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021); and that their actions neither advance a compelling interest nor are not narrowly tailored. *See generally* ECF No. 53 at 32–34. For his Free Exercise Clause claim under Section 1983, the above discussions of state action, governmental policy, and failure to train apply, underscoring why Dubash's plausibly alleges a Free Exercise Clause claim. For the same reasons, Dubash plausibly alleges a TRFRA claim against the City and Park Corp. *See generally* ECF No. 53 at 34–36. The Court should reject the Recommendation's dismissal of these claims.

## VIII. There is No Basis to Dismiss Plaintiffs' State Law Claims.

Because the Court should uphold Plaintiffs' federal claims, it should reject the recommendation to dismiss Plaintiffs' pendant state law claims alleging TRFRA violations and unlawful private delegation, Compl. ¶¶ 249–58, 272–79; ECF No. 78 at 46–47. Instead, the Court should also uphold Dubash's Texas TRFRA claim and Plaintiffs' unlawful private delegation claim. Indeed, the Recommendation's conclusion that the Conservancy is not a state actor—yet is entrusted with governmental power to define the acceptable speech and religious exercise in a *public park*, and punish those it deems unworthy—demonstrates the City unlawfully delegates

19

power to a private entity. *Contra Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 469 (Tex. 1997); Tex. Const. art. 2, § 1.

## IX.   Only Immediate Injunctive Relief Can End a Years-Long Prior Restraint.

Because the Recommendation errs in concluding Plaintiffs' federal claims warrant dismissal, it also errs it concluding that Plaintiffs' preliminary injunction motion (ECF No. 13) is moot. Thus, the Court should grant Plaintiffs' motion for a preliminary injunction. Defendants' opposition stands on the same flawed legal arguments they make moving to dismiss. *See* ECF No. 41. What's more, Plaintiffs' detailed declarations and high-quality video of key interactions—including Dubash's arrest—satisfy their burden. ECF No. 15, Exs. A-H; ECF No. 16.

Thus, the Court should enter the preliminary injunction Plaintiffs seek, because they show a substantial likelihood of succeeding on the merits; infringement of First Amendment rights is always irreparable injury; and Defendants' ongoing ban of their expression and religious exercise only hinders the deep-rooted public interest in ensuring public parks remain open to expression. *See Byrum v. Landreth*, 566 F.3d 442, 445, 451 (5th Cir. 2009) (reversing and remanding for entry of preliminary injunction to protect plaintiffs' First Amendment rights); ECF No. 15 at 13–25.

### CONCLUSION

Plaintiffs respectfully request that this Court reject the Recommendation (ECF No. 78) to (1) dismiss Plaintiffs' claims under 12(b)(6) and for lack of supplemental jurisdiction; (2) deny Plaintiffs' preliminary injunction motion (ECF No. 13) as moot; and (3) deny Plaintiffs' Motion to Clarify Order Staying Discovery (ECF No. 64) as moot. Plaintiffs also request that this Court deny Defendants' motions to dismiss (ECF Nos. 44 and 46) and grant Plaintiffs' preliminary injunction motion.

Dated: September 9, 2024

Respectfully submitted,

/s/ John Greil

John Greil (TX 24110856)
Steven T. Collis (TX 24122632)
Law and Religion Clinic
University of Texas School of Law
727 E. Dean Keaton St.
Austin, TX 78705
(512) 475-9090
John.greil@law.utexas.edu
Steven.collis@law.utexas.edu

/s/ JT Morris

 JT Morris (TX 24094444)
Gabe Walters*
Foundation for Individual Rights and
Expression
700 Pennsylvania Ave., SE
Suite 340
Washington, DC 20003
(215) 717-3473
jt.morris@thefire.org
gabe.walters@thefire.org

Daniel Ortner*
Foundation for Individual Rights and
Expression
510 Walnut St., Suite 1250
Philadelphia, PA 19106
(215) 717-3473
daniel.ortner@thefire.org

*Admitted pro hac vice

ATTORNEYS FOR PLAINTIFFS

## **CERTIFICATE OF SERVICE**

I certify that on September 9, 2024, I electronically filed the foregoing using the Court's CM/ECF system, which will notify and serve all counsel of record of this filing.

/s JT Morris